Albert P. Barker, ISB #2867
**BARKER ROSHOLT & SIMPSON LLP**
1010 W. Jefferson, Suite 102
P.O. Box 2139
Boise, ID 83701-2139
Telephone: (208) 336-0700
Facsimile: (208) 344-6034
E-mail: apb@idahowaters.com

William L. Greene
**LEONARD, STREET AND DEINARD**
   Professional Association
150 S. Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone:  (612) 335-1500
Facsimile:  (612) 335-1657
Email:  william.greene@leonard.com

*Attorneys for Defendant R.D. Offutt Company*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 4:10-MD-02186-BLW<br><br>**DEFENDANT R.D. OFFUTT CO.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

Defendant R.D. Offutt Company ("R.D. Offutt") does not belong in this case.  The First Amended Class Action Complaints ("Complaints") filed on behalf of the direct and indirect purchasers ("Plaintiffs") challenge the legality of activities undertaken by *other* potato growers that were members of regional and national cooperatives.  Those "member growers," asserting immunity from antitrust liability under the Capper-Volstead Act, allegedly agreed to manage the supply of potatoes for the purpose of elevating the price.  Plaintiffs contend that the Capper-Volstead Act does not apply, and, therefore, that the supply management activities of the cooperatives and their members violated the antitrust laws.  If the cooperatives and their members prevail on their well-supported motion to dismiss on immunity grounds, then the

claims against the other defendants, including R.D. Offutt, necessarily fail as well. *See* Section IV, *infra*.

However, regardless of whether the defendant cooperatives and their members are entitled to Capper-Volstead immunity, R.D. Offutt must be dismissed from this case. Unlike most of the defendants, R.D. Offutt is not alleged to have joined any of the cooperatives at issue in these lawsuits. R.D. Offutt is also not alleged to have "signed on" to the supply management programs allegedly implemented by those cooperatives. The few factual allegations that do refer to R.D. Offutt are benign – they do not remotely suggest that R.D. Offutt participated in the alleged supply management activities or that R.D. Offutt agreed with anyone to reduce the supply of potatoes. Because Plaintiffs have failed to allege a plausible claim against R.D. Offutt, R.D. Offutt's motion to dismiss should be granted.

## BACKGROUND

Plaintiffs allege that, beginning in 2004, several prominent Idaho-based potato growers determined to control and stabilize the supply of potatoes through the use of agricultural cooperatives.[1] (1st Am. Class Action Compl., Doc. 39, hereinafter "DP Compl.," at ¶¶ 39-40, 162-63; 1st Am. Class Action Compl., Doc. 63, hereinafter "IP Compl.," at ¶¶ 74, 205.) Those growers asserted that their actions were protected from antitrust scrutiny by the Capper-Volstead Act, which permits farmers to "act together in associations . . . in collectively processing, preparing for market, handling, and marketing" their produce. 7 U.S.C. § 291. (*See* DP Compl. ¶¶ 4, 165; IP Compl. ¶¶ 4, 203.) The growers founded United Potato Growers of Idaho, Inc. ("UPGI") and assisted in forming other regional and national cooperatives, including United

---

[1] Nothing herein should be construed to suggest the Complaints state a claim as to any defendant. Further, nothing in this motion should be construed as an admission of any alleged facts, which are merely assumed to be true for the purpose of analyzing the legal sufficiency of the allegations. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

Potato Growers of America, Inc. ("UPGA"), an organization consisting of ten member cooperatives nationwide. (DP Compl. ¶¶ 14, 163, 191; IP Compl. ¶¶ 36, 201, 230.)

According to the Complaints, UPGA and UPGI endeavored to control the supply and fix the price of fresh and process potatoes through a number of mechanisms, including price floors, "shipping holidays" (during which each potato packing operation would shut down for at least one eight-hour shift), acreage reductions, "bid buy-down" programs (paying farmers not to plant), and "secondary market strategies" (*e.g.*, donating potatoes to charities and food banks). (DP Compl. ¶¶ 185-91; IP Compl. ¶¶ 41, 221-24.) Plaintiffs allege that these activities by UPGA and UPGI were not protected by Capper-Volstead immunity and, therefore, were in violation of § 1 of the Sherman Act and state antitrust laws. (DP Compl. ¶¶ 249-322; IP Compl. ¶¶ 271-335.)

Unlike most of the defendants in these lawsuits, R.D. Offutt is not alleged to be a member of any cooperative of potato growers. (*Compare* DP Compl. ¶¶ 115-18, *with id.* ¶¶ 38, 70, 93, 96, 99, 102, 105, 108, 111, 114.) R.D. Offutt is a North Dakota-based grower with approximately 60,000 acres devoted to potatoes. (DP Compl. ¶¶ 115-16; IP Compl. ¶¶ 127, 129.) Although an R.D. Offutt representative allegedly attended a 2004 meeting about the formation of regional and national cooperatives, R.D. Offutt is *not* alleged to have joined such a cooperative or to have "signed on" to the supply reduction agreement supposedly discussed at the meeting. (*See* DP Compl. ¶¶ 172-73; *see also* IP Compl. ¶ 130.)

In addition to growing potatoes, R.D. Offutt also owned potato dehydration plants located in North Dakota, Nevada, and Idaho. (DP Compl. ¶ 316; IP Compl. ¶ 329.) In 2007, R.D. Offutt contributed its dehydration plants to a joint venture then known as North American Foods, LLC, and now known as Idahoan Foods, LLC ("Idahoan Foods"). (DP Compl. ¶¶ 118, 316; IP Compl. ¶¶ 131, 329.) The other participant in the joint venture was United II Potato Growers of Idaho

("United II"), a cooperative of potato growers. (DP Compl. ¶ 120; IP Compl. ¶ 154.) United II allegedly supplies all of the potatoes used by the Idaho and Nevada dehydration plants to manufacture dehydrated potatoes. (DP Compl. ¶ 28; IP Compl. ¶ 47.) According to the Complaints, the joint venture was formed "to create a broad network of potato processing plants with convenient access to markets and to customers." (DP Compl. ¶ 122; IP Compl. ¶ 156.) The Complaints also quote the member-growers as observing that Idahoan Foods provided both an opportunity for vertical integration and "'a reliable market for their dehydrator-grade potatoes.'" (DP Compl. ¶ 318 (quoting CEO of UPGI); IP Compl. ¶ 331 (same).)

## ARGUMENT

Despite their substantial length, the Complaints do not contain any factual, nonconclusory allegations that R.D. Offutt agreed with anyone to control the supply or fix the price of potatoes. Only a handful of each Complaint's more than 300 paragraphs contain factual allegations directed specifically at R.D. Offutt. And those allegations – that an R.D. Offutt representative attended a single UPGI meeting in 2004 and that R.D. Offutt formed a joint venture with United II in 2007 – cannot support the conclusory allegations that R.D. Offutt participated in a conspiracy to reduce the supply of potatoes.

The lack of factual allegations against R.D. Offutt stands in stark contrast to the allegations made against the cooperative defendants that assert immunity under the Capper-Volstead Act. Plaintiffs do not allege that R.D. Offutt joined a cooperative, observed "shipping holidays," participated in "flow control" efforts, reduced its acreage of potatoes, implemented price floors, destroyed its crops, or engaged in any of the supply management activities allegedly initiated by the cooperatives. Under the standards set forth in *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the claims against R.D. Offutt cannot survive.

I.  **To State a Claim Against *R.D. Offutt*, Plaintiffs Must Plausibly Allege That *R.D. Offutt* Joined the Alleged Conspiracy**

The Complaints charge R.D. Offutt with violating § 1 of the Sherman Act, which prohibits conspiracies to restrain trade.  *See* 15 U.S.C. § 1.  To hold a defendant liable under § 1, a plaintiff must show that the defendant had a "conscious commitment to a common scheme" designed to achieve an unlawful objective.  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (quotation omitted).  The indirect purchasers, who cannot recover damages for violations of the Sherman Act, *see Ill. Brick Co. v. Illinois*, 431 U.S. 720, 728-29 (1977), also assert state antitrust, consumer protection, and unjust enrichment claims based on the same alleged conspiracy to reduce the supply of potatoes.

To satisfy the requirements for pleading an antitrust conspiracy, a complaint must allege "plausible grounds to infer an agreement." *Twombly*, 550 U.S. at 556.  Allegations of conspiracy are deficient "if there are 'obvious alternative explanation[s]' for the facts alleged." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322-23 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 567).  Applying this standard, the Ninth Circuit Court of Appeals has held that a § 1 plaintiff must plead "not just ultimate facts (such as a conspiracy), but evidentiary facts" showing an agreement was made.  *Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

Importantly, to state a claim against a *particular* defendant in a conspiracy-based lawsuit, the complaint must include allegations that plausibly suggest *that defendant* participated in the alleged conspiracy.  While Plaintiffs are entitled to have their allegations as to individual defendants considered "in the context of the larger conspiracy alleged," they retain the burden of adequately alleging not only that a conspiracy to restrain trade existed, but also that "*each*

DEFENDANT R.D. OFFUTT CO.'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS                                                                                                     5

*defendant knowingly joined or agreed to participate in the conspiracy.*" *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 161 (D.D.C. 2004) (emphasis added); *accord Hinds County v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009).[2] Thus, even in cases where a complaint is found adequately to allege an agreement among *some* defendants, claims against a particular defendant must be dismissed unless the complaint plausibly alleges that the defendant entered into an unlawful agreement. *See, e.g.*, *Ins. Brokerage*, 618 F.3d at 341 n.44 (dismissing claims against one or more defendants despite finding plausible conspiracy as to other defendants); *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2010 WL 3430833, at *2-5 (D. Vt. Aug. 30, 2010) (same); *Hinds County*, 620 F. Supp. 2d at 512-17 (same); *Jung*, 300 F. Supp. 2d at 162-73 (same); *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905-06 (conducting defendant-by-defendant review of complaint and dismissing claims); *BanxCorp v. LendingTree LLC*, Civ. No. 10-2467, 2011 WL 541807, at *7 (D.N.J. Feb. 7, 2011) (granting motion to dismiss as to some defendants where, in comparison to allegations against other defendants, allegations against successful movants were "threadbare, at best").

## II.     The Allegations Against R.D. Offutt Do Not Suggest R.D. Offutt Agreed with Anyone to Fix Prices or Reduce Supply

In the present case, Plaintiffs have not met the plausibility threshold with respect to R.D. Offutt. Plaintiffs' claims under the Sherman Act and various state laws are based on the alleged conspiracy among cooperatives and potato growers to reduce the supply of potatoes. This conspiracy was allegedly implemented by UPGI using several mechanisms:

(a)     Price floors, which were eventually abandoned;

---

[2] The court that decided *Hinds County* subsequently issued two additional decisions in that case analyzing whether conspiracy claims had been stated against individual moving defendants. *See Hinds County v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348 (S.D.N.Y. 2010); *Hinds County v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378 (S.D.N.Y. 2010).

(b) "Shipping holidays," during which growers shut down packing operations for one or more eight-hour shifts;

(c) Acreage reductions;

(d) A "bid buy-down program," whereby growers were paid not to plant potatoes;

(e) "Secondary market" activities, such as donating potatoes to food banks; and

(f) "Flow control," whereby UPGI conducted marketing calls in an effort to prevent potatoes from being shipped when prices were too low.

(DP Compl. ¶¶ 185-90; IP Compl. ¶¶ 221-27.) Apart from these allegations, the Complaints also state that Idahoan Foods, the joint venture between United II and R.D. Offutt, allowed members of United II to "divert surplus potatoes to a dehydration operation while profiting from vertical integration." (DP Compl. ¶ 123; IP Compl. ¶ 157.)

The claims against R.D. Offutt appear to be based on allegations that (a) R.D. Offutt sent a representative to a 2004 meeting held by the founders of UPGI, and (b) it contributed three dehydration plants to a joint venture with United II. Neither of those allegations suggests R.D. Offutt agreed with anyone to restrict the supply of potatoes.

A. **Conclusory Allegations of "Participation" in a Conspiracy Are Insufficient to State a Claim**

The Supreme Court's decisions in *Twombly* and *Iqbal* are unequivocal: a plaintiff cannot state a claim based on conclusory allegations alone. *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Rather, a plaintiff must allege factual matter that, taken as true, renders the plaintiff's claims "plausible" instead of merely "possible." *See Twombly*, 550 U.S. at 557; *Kelly v. Rite Aid Corp. Group Life Ins. Plan #*

DEFENDANT R.D. OFFUTT CO.'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS                                                                                          7

*502*, No. CV-09-472, 2010 WL 1710008, at *3 (D. Idaho Apr. 26, 2010).  In the antitrust context, terms like "conspiracy" or "agreement" are insufficient to state a claim unless accompanied by factual allegations plausibly suggesting a conspiracy or agreement existed. *Kendall*, 518 F.3d at 1047.

In the present cases, the Complaints allege in conclusory fashion that R.D. Offutt "participated in the supply-restriction and price-fixing scheme as alleged herein"; "participated in the group's price-fixing efforts"; "agreed to the price-fixing scheme alleged herein"; "participated in a joint venture to further aid the potato supply reduction efforts"; and was a "direct participant[] in the supply reduction scheme outlined herein."  (DP Compl. ¶¶ 115, 117, 173, 246; *see also* IP Compl. ¶¶ 128, 130, 268.)  Under *Twombly* and *Iqbal*, these allegations cannot defeat R.D. Offutt's motion to dismiss.  A plaintiff's claim can survive only if, after setting aside such conclusory allegations, the remaining factual allegations "'plausibly suggest an entitlement to relief.'"  *Bauer v. Metro. Life Ins. Co.*, No. 2:08-cv-00284, 2010 WL 2595291, at *4 (D. Idaho June 23, 2010) (quoting *Delta Mech., Inc. v. Garden City Group, Inc.*, 345 F. App'x 232, 234 (9th Cir. 2009)); *see also Ins. Brokerage*, 618 F.3d at 326 (holding that conclusory allegations of agreement "cannot carry plaintiffs' pleading burden").  As discussed more fully below, the factual allegations in the Complaints fall well short of stating a plausible claim against R.D. Offutt.

> **B.   Plaintiff Has Not Pleaded Factual Matter Giving Rise to an Inference That R.D. Offutt Agreed with Anyone to Reduce the Supply of Potatoes**

Setting aside the conclusory allegations of conspiracy noted above, the only remaining allegations against R.D. Offutt are:

- R.D. Offutt is a subsidiary of RDO Holdings Co., a corporation based out of Fargo, North Dakota.  (DP Compl. ¶ 115.)

- R.D. Offutt has approximately 160,000 acres of farming operations and "is one of the nation's largest producers of potatoes with approximately 60,000 acres devoted to potatoes." (DP Compl. ¶ 116; IP Compl. ¶ 129.)

- R.D. Offutt is not only a grower of potatoes, but is also a producer of dehydrated potatoes. It has owned potato dehydration plants in North Dakota, Nevada, and Idaho and has had a production agreement with Idaho Supreme Potatoes, Inc. (DP Compl. ¶ 316; IP Compl. ¶ 329.)

- R.D. Offutt sent a representative to a 2004 meeting convened by Idaho potato growers to discuss the formation of regional and national cooperatives. (DP Compl. ¶¶ 172-73.)[3]

- In 2007, R.D. Offutt contributed dehydration plants to a joint venture with United II. (DP Compl. ¶¶ 28, 118, 316; IP Compl. ¶¶ 47, 131, 329.)

- An employee of R.D. Offutt stated that, with respect to potato processing plants, "there is excess capacity in the industry." (DP Compl. ¶ 125.)

Viewed in the context of the Complaints in their entirety, *see Ins. Brokerage*, 618 F.3d at 326, nothing about these allegations suggests R.D. Offutt agreed with anyone to reduce the supply of potatoes. The entire theory of the Complaints is that certain potato growers attempted to control the supply of potatoes through what they believed were Capper-Volstead-protected agricultural cooperatives. Yet R.D. Offutt is not a member of the cooperatives, and Plaintiffs have alleged no facts suggesting that R.D. Offutt supported or agreed to participate in the cooperatives' alleged supply reduction scheme.

---

[3] Although Plaintiffs vaguely allege that R.D. Offutt "sent representatives to the initial meetings establishing the UPGI" (DP Compl. ¶ 117; IP Compl. ¶ 130), the sections discussing those meetings do not include R.D. Offutt among the many growers that are identified as having been in attendance (*see* DP Compl. ¶¶ 167-70; IP Compl. ¶¶ 205-08).

        1.     *Attending an Informational Meeting for Cooperatives, Without Actually Joining a Cooperative, Does Not Support an Inference of Agreement.*

R.D. Offutt's attendance at the 2004 meeting where grower cooperatives and supply reduction were allegedly discussed does not support an inference that R.D. Offutt agreed to reduce the supply of potatoes. It is well-established that mere attendance at an industry meeting with alleged conspirators is insufficient to support a claim under § 1, as such a meeting represents nothing more than an opportunity to conspire. *See, e.g.*, *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 911 (6th Cir. 2009); *Hinds County v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009); *In re Text Messaging Antitrust Litig.*, No. 08 C 7082, 2009 WL 5066652, at *6-7 (N.D. Ill. Dec. 10, 2009); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) (holding that "even where some competitors have admitted to meeting to fix prices at or near trade shows and conferences, it is not reasonable to infer that another competitor in attendance at the same meeting had done likewise").

Furthermore, the Complaints conspicuously fail to allege that R.D. Offutt agreed to join a cooperative at the November 2004 meeting or at any time thereafter. The Complaints identify a multitude of companies, including most of the defendants in this lawsuit, that agreed to join UPGI or participate in its supply management program. (*See* DP Compl. ¶ 170; IP Compl. ¶ 208.) R.D. Offutt was not one of them. (*See id.*) Therefore, at most, the Complaints suggest that R.D. Offutt may have been invited to join a cooperative but elected not to. Such an allegation lends no support whatsoever to Plaintiffs' claim that R.D. Offutt had a "conscious commitment to a common scheme."

      2.    *Contributing Dehydration Plants to a Vertical Joint Venture Does Not Support an Inference That R.D. Offutt Conspired to Reduce the Supply of Potatoes.*

The allegation that R.D. Offutt formed a joint venture with United II is likewise insufficient to support the conclusory allegations of conspiracy. Although the Complaints allege that certain Idaho-based growers viewed Idahoan Foods as a destination for "surplus" potatoes, there are no allegations that the formation or operation of Idahoan Foods had the effect of reducing the supply of potatoes.

According to the Complaints, Idahoan Foods uses dehydration facilities, several of which were contributed by R.D. Offutt, to manufacture mashed and dehydrated potatoes. (*See* DP Compl. ¶¶ 28, 120, 316; IP Compl. ¶¶ 47, 154, 329.) Also according to the Complaints, the joint venture "was formed 'to create a broad network of potato processing plants with convenient access to markets and to customers.'" (DP Compl. ¶ 122; IP Compl. ¶ 156.) The Complaints do *not* allege that the joint venture does anything to potatoes aside from using them to make processed potato products. There is no allegation, for example, that Idahoan Foods destroys potatoes or otherwise renders them unfit for processing or consumption. Moreover, that two of Idahoan Foods' plants use potatoes supplied by United II (*see* DP Compl. ¶ 28; IP Compl. ¶ 47) has no impact on the aggregate supply of potatoes; if those plants did not buy the process potatoes needed to make dehydrated potatoes from United II, they would have to buy those potatoes from other growers.[4]

---

[4] As discussed in Idahoan Foods' motion to dismiss, merely purchasing goods from a member of an alleged cartel is an insufficient basis to link the purchaser to a price-fixing conspiracy. *See Rick-Mik Ents. v. Equilon Ents.*, 532 F.3d 963, 976 (9th Cir. 2008) (holding that "ordinary sales contract" is insufficient to link defendant to price-fixing conspiracy); *Dairy Farmers*, 2010 WL 3430833, at *4-5 (dismissing claim against company that purchased milk from alleged conspirator).

Unable to allege *how* the formation of Idahoan Foods could actually reduce the supply of potatoes, Plaintiffs rely exclusively on quotations from UPGI and some of its member growers regarding their belief about how the joint venture could advance the cooperative's objectives. (*See* DP Compl. ¶¶ 318-19; IP Compl. ¶¶ 331-32.)  Those quotations, however, do not offer any basis to conclude that the joint venture reduced the supply of potatoes or that R.D. Offutt, by contributing dehydration plants, agreed with anyone to reduce the supply of potatoes.

Because there are no nonconclusory, factual allegations that the formation of Idahoan Foods reduced the supply of potatoes, the allegation that R.D. Offutt contributed its dehydration plants to Idahoan Foods does not suggest that R.D. Offutt had a "conscious commitment to a common scheme designed to achieve an unlawful objective."  *Dairy Farmers*, 2010 WL 3430833, at *5 (quotation omitted).

### III.  R.D. Offutt Is Conspicuously Absent from Factual Allegations Central to the Complaints

The deficiency of the claims against R.D. Offutt is made even more apparent by the fact that Plaintiffs exclude R.D. Offutt from allegations that are central to the Complaints.  According to Plaintiffs, Defendant Albert Wada met with twenty-two other Idaho growers in September 2004 to discuss his plan for stabilizing and raising potato prices through Capper-Volstead-protected cooperatives.  (DP Compl. ¶ 167; IP Compl. ¶ 205.)  After a series of meetings, phone calls, and e-mails, the group of twenty-three growers – including numerous Defendants in these lawsuits – agreed to form UPGI.  (DP Compl. ¶¶ 168-70, IP Compl. ¶¶ 206-08.)  Shortly thereafter, on November 3, 2004, the founders of UPGI met with growers from Colorado, Oregon, Washington, Wisconsin, and California.  (DP Compl. ¶¶ 172-73; IP Compl. ¶¶ 210-11.)  At the meeting, Wada announced UPGI's price-fixing plans to "several hundred potato farmers," many of which "signed on to the supply reduction agreement on the spot."  (DP Compl. ¶ 173; IP

Compl. ¶ 211.) R.D. Offutt is not alleged to have either joined a co-op or signed on to UPGI's supply reduction plan. (DP Compl. ¶ 173; IP Compl. ¶ 211.)

Unable to allege that Wada's presentation moved R.D. Offutt to join UPGI's alleged supply reduction efforts, either by joining a cooperative or signing on to the cooperatives' plan, Plaintiffs are left to group all of the grower-defendants together and allege that they "followed acreage reductions, participated in the bid-buydown program, participated in and utilized information obtained from marketing calls and packing reports, *and/or reduced the domestic supply of potatoes*." (DP Compl. ¶ 246 (emphasis added); IP Compl. ¶ 268 (emphasis added).) This vague and conclusory allegation lends no plausibility to Plaintiffs' claims against R.D. Offutt. *See* discussion, *supra*, at 7-8; *see also Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 960 (S.D. Cal. 1996) (concluding that "plaintiff's shotgun approach is clearly deficient" where complaint alleged that each defendant committed various types of misconduct with disjunctive "and/or"); *Jung*, 300 F. Supp. 2d at 163 (criticizing aggregate pleading as to defendants situated differently from each other).

If Plaintiffs had any basis for alleging that R.D. Offutt agreed to take any of the supply management actions promoted by UPGI and its founders, Plaintiffs would have so alleged. Instead, Plaintiffs resort to smoke and mirrors, using the disjunctive "and/or" to avoid alleging that R.D. Offutt took any of the actions allegedly recommended by the cooperatives. But a disjunctive allegation is only as strong as its weakest link. Here, the weakest link is yet another conclusory allegation that each defendant "reduced the domestic supply of potatoes" in some unidentified way. Plaintiffs' failure to allege any actual misconduct by R.D. Offutt confirms what is obvious from the face of each Complaint: Plaintiffs have no basis for alleging that R.D. Offutt participated in UPGA and UPGI's supply management program. *Cf. Gen-Probe*, 926 F.

Supp. at 960 (noting that "requirements of Rule 11 further buttress" conclusion that "shotgun" approach to pleading is improper).

## IV.     If the Cooperatives and Their Members Are Entitled to Capper-Volstead Immunity, the Claims Against R.D. Offutt Must Likewise Be Dismissed

Plaintiffs' claims against R.D. Offutt are deficient regardless of whether the cooperatives and their members are entitled to immunity under the Capper-Volstead Act.  Nevertheless, should the Court grant the cooperatives' motion to dismiss on immunity grounds, the Court should also dismiss the claims against the other defendants, including R.D. Offutt.  As discussed above, Plaintiffs have not alleged that R.D. Offutt took any action designed to reduce the supply of potatoes.  The sole pretext for suing R.D. Offutt appears to be its interactions with members of the cooperatives.  If the Court concludes that the cooperatives and their members engaged in lawful activity under the Capper-Volstead Act, the claims against R.D. Offutt necessarily fail as well.

## CONCLUSION

The Complaints contain no factual allegations supporting the conclusory assertion that R.D. Offutt participated in a conspiracy to reduce the supply and fix the price of potatoes.  For the foregoing reasons, R.D. Offutt's motion to dismiss for failure to state a claim should be granted.

DATED this 18th day of March, 2011.

          /S/
Albert P. Barker, ISB #2867
**BARKER ROSHOLT & SIMPSON LLP**
1010 W. Jefferson, Suite 102
P.O. Box 2139
Boise, ID 83701-2139
Telephone:  (208) 336-0700
Facsimile:  (208) 344-6034
Email:  apb@idahowaters.com

          William L. Greene
          **LEONARD, STREET AND DEINARD**
            Professional Association
          150 S. Fifth Street, Suite 2300
          Minneapolis, MN 55402
          Telephone: (612) 335-1500
          Facsimile: (612) 335-1657
          Email: william.greene@leonard.com

          Attorneys for Defendant R.D. Offutt Company

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 18th day of March, 2011, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing, as more fully reflected on the Notice of Electronic Filing.

/S/
Albert P. Barker