Christopher E. Ondeck (*pro hac vice*)
Matthew J. McBurney (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: (202) 624-2500
Fax: (202) 628-5116
condeck@crowell.com
mmcburney@crowell.com

Winston V. Beard (ISB No. 1138)
Michael D. Gaffney (ISB No. 3558)
BEARD ST. CLAIR GAFFNEY PA
2105 Coronado Street
Idaho Falls, ID  83404-7495
Telephone: (208) 523-5171
Fax: (208) 529-9732
winston@beardstclair.com
gaffney@beardstclair.com

*Counsel for Defendant Potandon Produce L.L.C.*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO
EASTERN DIVISION**

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION | Case No.: 10-md-02186-BLW |
| THIS DOCUMENT RELATES TO: | **POTANDON PRODUCE L.L.C.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS COMPLAINTS** |
| ALL ACTIONS | |

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

ARGUMENT ..............................................................................................................3

    I.    The Overwhelming Majority of Plaintiffs' Allegations Are Unrelated to
Potandon. ........................................................................................................3

    II.    Plaintiffs' Attempt to Pull Potandon Into the Alleged Conspiracy on
Account of Its Role as Marketing Agent for Some Potato Grower
Defendants Also Fails. ..................................................................................8

    III.    Allegations that Potandon is Owned or Controlled by Other Defendants or
Has Benefited from Their Actions Fail To Make Potandon's Participation
in the Alleged Conspiracy Any More Plausible. ......................................11

        A.    Recent Case Law Makes Clear that Allegations of Ownership,
Control, and Benefits Do Not Suffice to Assert a Valid Antitrust
Claim.................................................................................................. 12

        B.    Corporate Law Principles Reject the Notion that Mere Allegations of
Ownership Are Enough to Assert a Valid Antitrust Claim.......................... 14

    IV.    In the Alternative, the Antitrust Claims Against Potandon Should Be
Dismissed Based on the Immunities Provided by the Capper-Volstead and
Cooperative Marketing Acts. .....................................................................16

        A.    Capper-Volstead Act Immunity Covers Potandon. ..................................... 16

        B.    The Cooperative Marketing Act Separately Immunizes Potandon.............. 17

CONCLUSION..........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AD/SAT v. Associated Press,*
   181 F.3d 216 (2d Cir. 1999) ................................................................ 5

*Allen v. Dairy Farmers of America, Inc.,*
   Case No. 09-cv-230, 2010 WL 3430833 (D. Vt. Aug. 30, 2010) ................................. 12, 13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................ 5, 6

*Copperweld v. Independence Tube,*
   467 U.S. 752 (1984) ................................................................ 14

*Hutchison v. Anderson,*
   950 P.2d 1275 (Idaho Ct. App. 1997) ................................................ 15

*Imperial Constr. Mgmt. v. Laborers Union Int'l,*
   729 F. Supp. 1199 (N.D. Ill. 1990) ................................................ 13

*In re ATM Fee Antitrust Litig.,*
   Case No. 04-cv-2676, 2009 U.S. Dist. LEXIS 83199 (N.D. Cal. Sept. 4, 2009) .................... 13

*In re Cal. Title Ins. Antitrust Litig.,*
   Case No. 08-01341, 2009 WL 1458025 (N.D. Cal. May 21, 2009) ......................... 5

*In re Ins. Brokerage Antitrust Litig.,*
   618 F.3d 300 (3d Cir. 2010) ................................................ 13, 14

*In re Late Fee and Over-Limit Fee Litig.,*
   528 F. Supp. 2d 953 (N.D. Cal. 2007) ................................................ 8

*In re TFT- LCD (Flat Panel) Antitrust Litig.,*
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................ 5, 8

*In Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures*, LLC,
   Case No. 09-4224 , 2010 WL 546376 (C.D. Cal. Feb. 10, 2010) ......................... 10

*Jung v. Ass'n of Am. Med. Colls.,*
   300 F. Supp. 2d 119 (D.D.C. 2004) ................................................ 5

*Kendall v. Visa U.S.A., Inc.,*
   518 F.3d 1042 (9th Cir. 2008) ................................................ 4, 5

*Kinnett Dairies, Inc. v. Dairymen, Inc.,*
   512 F. Supp. 608 (M.D. Ga. 1981) ................................................ 16

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984) ........................................................................................ 10

*N. Cal. Supermarkets, Inc. v. Cent. Cal. Lettuce Producers Coop.*,
    580 F.2d 369 (9th Cir. 1978) ......................................................................... 18

*Phonometrics, Inc. v. Resinter N. Am. Corp.*,
    124 F.3d 229 (Fed Cir. 1997) ........................................................................ 14

*Reno v. Nat'l Transp. Safety Bd.*,
    45 F.3d 1375 (9th Cir. 1995) ......................................................................... 18

*S.E.C. v. PCS Edventures!.Com, Inc.*,
    Case No. 10-cv-433-BLW, 2011 WL 337895 (D. Idaho Jan. 27, 2011) ................ 5

*Tate v. Univ. Med. Ctr. of S. Nev.*,
    637 F. Supp. 2d 892 (D. Nev. 2009) ............................................................... 8

*Thompson Everett, Inc. v. Nat'l Cable Advertising, L.P.*,
    57 F.3d 1317 (4th Cir. 1995) ......................................................................... 9

*Treasure Valley Potato Bargaining Ass'n. v. Ore-Ida Foods, Inc.*,
    497 F.2d 203 (9th Cir. 1974) ......................................................................... 16

*UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing
  & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*,
    48 F.3d 1465 (9th Cir. 1994) ......................................................................... 15

*United States v. Maryland Cooperative Milk Producers, Inc.*,
    145 F. Supp. 151 (D.D.C. 1956) ................................................................... 16

*In re Weddle*,
    353 B.R. 892 (Bankr. D. Idaho 2006) ........................................................... 15

**Statutes**

7 U.S.C. § 455 ....................................................................................... passim

7 U.S.C. § 291 ....................................................................................... passim

**Other Authorities**

Areeda & Hovenkamp, Antitrust Law, Vol. VII  (3d ed. 2010) ………………………………..9

Restatement (Third) or Agency Law §7.01 …………………………………………………….9

**Rules**

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………………1

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Potandon Produce L.L.C. ("Potandon"), through its undersigned counsel, submits this memorandum in support of its motion to dismiss both the direct purchaser plaintiffs' First Amended Class Action Complaint (the "DPC") and the indirect purchaser plaintiffs' First Amended Class Action Complaint (the "IPC," and together with the DPC, the "Complaints") with regard to Potandon for failure to state claims for relief.[1]

## INTRODUCTION

Potandon requests dismissal from the case for four reasons.  First, Potandon is not alleged to be a principal in the conspiracy.  This immediately calls into question why Potandon was named as a defendant and what in the Complaints supports a claim that Potandon was a part of any alleged conspiracy.  At their heart, the Complaints allege an agreement to limit supply by potato growers and their agricultural cooperatives, namely United Potato Growers of Idaho, United Potato Growers of America, and United II Potato Growers of Idaho.  The primary issue is whether supply management by those growers and their cooperatives is covered by the immunities provided by the Capper-Volstead Act.  That is the fundamental question in this case.

In stark contrast, the Complaints also make clear that Potandon is a vendor and service provider downstream in the distribution chain from the principals in the alleged conspiracy. Potandon is alleged to be a peripheral entity at best.  And because Potandon is not a "grower," the overwhelming majority of the allegations in the Complaints which concern only the activities of such "growers" and their cooperatives have nothing to do with Potandon and, therefore, do not

---

[1]  The direct and indirect purchaser plaintiffs are referred to collectively herein as "Plaintiffs."  A comparison of their Complaints as they involve Potandon is set forth at Exhibit A attached hereto, which is provided for the Court's convenience.

in any way advance Plaintiffs' pleading burden with respect to Potandon.  Antitrust pleading requires that Plaintiffs set forth the specific "who, what, when and where" about how Potandon is alleged to have participated in the alleged conspiracy.  Plaintiffs' allegations about the "growers" do not meet that burden with respect to Potandon.

Second, Plaintiffs' allegations that Potandon is an agent for some other defendants are not sufficient under established law to justify retaining Potandon in this case.  Because Plaintiffs are unable to assert that Potandon was a principal in the alleged conspiracy, they are forced to resort to other measures to attempt to draw Potandon, a legitimate downstream business, into the alleged conspiracy.  In particular, Plaintiffs attempt to pull Potandon in on account of its business relationship and contracts with certain potato growers as a marketing agent.  However, as a matter of established antitrust law, those allegations are insufficient to keep Potandon in this case.  There are specific pleading requirements to create antitrust liability for an alleged agent that require a plaintiff to plead that the agent had knowledge of the alleged conspiracy and a conscious commitment to join.  Plaintiffs have not, and cannot, meet that pleading burden with respect to Potandon.

Third, the remaining allegations about Potandon are irrelevant as to whether Potandon participated in the alleged conspiracy.  Unable to meet the pleading standard for including Potandon in the alleged conspiracy as either a principal or agent, as a last resort, Plaintiffs rely on a handful of generalized and conclusory allegations about Potandon relating to its ownership structure, the history of its operations, and the general services it provides.  Those allegations are mere back-fill and do nothing to meet Plaintiffs' burden of specifically pleading how Potandon could have participated in the alleged supply control program.  In fact, Plaintiffs' generic assertions that certain potato growers "owned" or "controlled" Potandon, that Potandon

2

"conspired" with certain potato growers, and that Potandon "benefited" from the alleged conspiracy are exactly the type of non-specific, conclusory allegations that courts have held provide no basis for retaining a defendant in an antitrust case.

Lastly, Potandon is entitled to two separate immunities that provide alternative grounds for dismissal.  First, to the extent the Court finds that the "grower" defendants and their cooperatives are entitled to immunity under the Capper-Volstead Act, Potandon, as a marketing agent, likewise receives the benefit of that statutory immunity.  Second, another statute, the Cooperative Marketing Act, provides a separate and distinct immunity for Potandon regardless of the outcome of any Capper-Volstead motions filed in this case.  The Cooperative Marketing Act immunizes a marketing agent, such as Potandon, from application of the antitrust laws for sharing information among growers and cooperatives.  Therefore, to the extent that Plaintiffs' claims against Potandon are based on allegations of communications between Potandon and any "grower" defendants or their cooperatives, the Cooperative Marketing Act provides immunity to Potandon for such actions and requires its dismissal from this case.

For these reasons, Plaintiffs have failed to adequately allege that Potandon knowingly joined and agreed to participate in any alleged conspiracy and, therefore, Plaintiffs' claims against Potandon should be dismissed in their entirety and with prejudice.

## ARGUMENT

## I.     The Overwhelming Majority of Plaintiffs' Allegations Are Unrelated to Potandon.

The Complaints make clear that, at its heart, this case is about whether growers and the cooperatives they formed are permitted, under the Capper-Volstead Act, to agree to manage the

supply of potatoes they produce.[2]  Therefore, under any fair reading of the Complaints, this case

centers on the activities of the "growers" and their cooperatives.[3]  However, the Complaints also

make clear that Potandon is not one of those "growers" or their cooperatives.[4]  This is a

fundamental problem for Plaintiffs in their attempt to include Potandon as a defendant in this

case.  Allegations that the "growers" and their cooperatives agreed to control the supply of

potatoes should not, and may not, be applied to Potandon, a non-grower.

Thus, the Court must look to the remaining allegations in the Complaints to determine

whether Plaintiffs have plausibly alleged that Potandon, a peripheral defendant, specifically

participated in the alleged conspiracy.  The Complaints do not meet that burden, as they do not

answer the required "basic questions" of "who, did what, to whom (or with whom), where, and

when" with respect to Potandon's claimed involvement in the alleged conspiracy.  *Kendall v.

Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (analyzing the specific allegations with

respect to each defendant and then dismissing the case against all defendants for individualized

reasons without leave to amend).  As a result, the Complaints fail to "plausibly" suggest that

---

[2]  Potandon in no way concedes that Plaintiffs have alleged a legally sufficient antitrust conspiracy with respect to the grower defendants and their cooperatives.

[3]  The DPC contains a concise summary of the alleged conspiracy in Paragraph 3:  "Defendants, including the largest potato growers and shippers in the United States, first came together in 2004 to form regional and nationwide 'cooperatives' - not for the purpose of marketing and selling their potato products collectively (as is the function of a traditional, small-scale cooperative) - but rather for the sole purpose of creating a national vehicle for potato growers and their co-conspirators to conspire together to reduce potato output and fix prices."

[4]  Plaintiffs identify the competing growers that organized themselves into cooperatives for the alleged purpose of instituting supply control initiatives, specifically describing them as such in the defendant-specific background sections found in the Complaints, but Potandon is not alleged to be, and was not, one of those growers.  *See* DPC ¶¶ 35, 68, 92, 95, 98, 101, 104, 107, 110, 113; *see also* IPC ¶¶ 69, 82-83, 95, 101, 106, 110, 113, 117, 121, 125.

Potandon agreed to participate in the alleged conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

It simply does not suffice for Plaintiffs to attempt to lump Potandon into the alleged conspiracy through general allegations against all "defendants" or, even more inapposite, against the "growers." Sufficient detail is needed if Potandon, as a non-grower and legitimate downstream service provider, is going to be forced to incur the tremendous cost and burden of defending an antitrust case. *See S.E.C. v. PCS Edventures!.Com, Inc.*, Case No. 10-cv-433, 2011 WL 337895, at *1-2 (D. Idaho Jan. 27, 2011) (holding that "the tenet that a court must accept as true all of the allegations contained in a complaint . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions") (citations omitted). A plaintiff "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *In re TFT- LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008).[5] Thus, a complaint must include not only legally sufficient allegations that each defendant made a "conscious commitment to a common scheme designed to achieve an unlawful objective," *AD/SAT v. Associated Press*, 181 F.3d 216, 233 (2d Cir. 1999), but also "facts such as a 'specific time, place, or person involved in the alleged conspiracies,' to give a defendant

---

[5] *See also Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 160-61 (D.D.C. 2004) (a plaintiff has the "burden of adequately alleging that a conspiracy to restrain trade existed in the first instance and that each defendant knowingly joined or agreed to participate in the conspiracy") (emphasis added); *In re Cal. Title Ins. Antitrust Litig.*, Case No. 08-01341, 2009 WL 1458025, at *8 (N.D. Cal. May 21, 2009) ("*Jung* does not stand for the proposition that plaintiffs are relieved of their obligation to allege that each defendant agreed to join or participated in the alleged conspiracy.").

seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall*, 518 F.3d at 1047 (quoting *Twombly*, 550 U.S. at 565 n.10).

The required detail is lacking with respect to Potandon.  Not one of the 754 total paragraphs found in the Complaints contains plausible allegations of a conscious commitment by Potandon to participate in any alleged conspiracy.  Although Potandon does not bear an affirmative burden to outline the gaps in the Complaints, for the sake of argument, it identifies below the critical instances where Plaintiffs fail to allege specific details about Potandon.  These omissions must lead to Potandon's dismissal from this case.

First, the Complaints purport to identify which entities participated in the cooperatives alleged to be at the heart of the conspiracy, but Potandon is not alleged to be one of them.  For example, the Complaints allege which entity "played a critical role in the formation" of the cooperatives, but Potandon is not that entity.[6]  The Complaints allege which entities were "founding" members of the cooperatives, but Potandon is not alleged to be one of those founders.[7]  The Complaints allege which entities held management and/or board positions at the cooperatives, but Potandon is not alleged to have held one of those positions.[8]  Finally, the Complaints list which entities allegedly were the original incorporators and initial directors of the cooperatives, but Potandon is not alleged to be one of those incorporators or directors.[9]

Likewise, the Complaints identify which entities allegedly agreed to institute the claimed supply control initiatives underlying the alleged conspiracy, but Potandon is not alleged to be

---

[6]  *See* DPC ¶ 38; *see also* IPC ¶ 73.

[7]  *See* DPC ¶¶ 70, 93, 96, 99, 102, 105, 108, 111, 114; *see also* IPC ¶¶ 72, 84, 96, 98, 103, 107, 111, 114, 118, 122, 126.

[8]  *See* DPC ¶¶ 41, 70, 93, 99, 102; *see also* IPC ¶¶ 72, 84, 103, 107, 111.

[9]  *See* DPC ¶ 194; *see also* IPC ¶ 232.

one of them.  In fact, the Complaints contain affirmative allegations to the contrary.  As one example, while a number of entities are listed as "individuals" or "growers" "who explicitly signed on to the supply reduction and price-fixing scheme alleged herein" or "who . . . signed on to the price-fixing and capacity reduction scheme," Potandon is not included on either list.[10]  Similarly, other "third parties" are alleged to have signed "memorandums of understanding" with the cooperatives, but not Potandon.[11]

Second, the Complaints fail to link Potandon to any of the activities that are said to make up the supply management program at issue in this case.  Beyond a handful of conclusory allegations addressed in Section III below,[12] the Complaints do not assert that Potandon engaged in any of the following activities:

- signing agreements to restrict supply
- acreage reductions
- setting floor prices
- shipping holidays
- information exchanges
- acreage buy-downs
- flow control measures
- audits, aerial photography, and satellite imaging to verify compliance
- filling out "Planting Intention Forms."[13]

These are all details that Plaintiffs allege to support their claims of a conspiracy, but none of them are alleged as to Potandon.  And simply lumping Potandon in with all other "defendants"

---

[10]  *See* DPC ¶ 170; *see also* IPC ¶ 208.

[11]  *See* DPC ¶ 176; *see also* IPC ¶ 214.

[12]  *See* DPC ¶ 80 ("Potandon . . . has conspired with its potato growers to assist in efforts to reduce potato supplies and fix prices . . ."); *see also* DPC ¶ 71 ("During the Class Period, Potandon participated in the supply-restriction and price-fixing scheme as alleged herein."); IPC ¶ 87 (same); DPC ¶ 246 ("Potandon (on behalf of itself and General Mills) [was a] direct participant[ ] in the supply reduction scheme outlined herein . . . "); IPC ¶ 268 (same).

[13]  *See* DPC ¶¶ 162-248 (section entitled "The History and Operation of the Potato Cartel"); *see also* IPC ¶¶ 193-270 (section entitled "Cartel History and Operation").

when describing these purported wrong-doings is not sufficient to assert a viable antitrust claim against Potandon.  *See In re TFT-LCD*, 586 F. Supp. 2d at 1117 ("[G]eneral allegations as to all defendants . . . [are] insufficient to put specific defendants on notice of the claims against them."); *see also Tate v. Univ. Med. Ctr. of S. Nev.*, 637 F. Supp. 2d 892, 898 (D. Nev. 2009) ("allegations directed generally at 'defendants' are insufficient, and amount to nothing more than an impermissible label or conclusion.").[14]

Because the Complaints make clear that Potandon is not a "grower," the numerous allegations made with respect to the activities of the "growers" do not apply to Potandon. Moreover, simply attempting to lump all "defendants" into general allegations of conspiratorial behavior does not work, especially where a downstream vendor, such as Potandon, is differently situated from other defendants.  Case law (and common sense) make clear that more detail is required to make such a vendor's involvement in an alleged conspiracy plausible.  As a result, Plaintiffs fail to adequately allege Potandon's affirmative involvement as a principal in any alleged conspiracy.

## II.     Plaintiffs' Attempt to Pull Potandon Into the Alleged Conspiracy on Account of Its Role as Marketing Agent for Some Potato Grower Defendants Also Fails.

Unable to point to any specific involvement by Potandon in the alleged supply management program, Plaintiffs attempt to link Potandon to the alleged conspiracy through assertions that it served as a marketing agent for certain "grower" defendants.  Being a marketing

---

[14]  *See also In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 956 (N.D. Cal. 2007) (granting motion to dismiss where "the complaint's substantive allegations refer[red] to the defendants in collective terms and [did] not advance individualized allegations about particular defendants" and where the complaint "provide[d] no details as to when, where or by whom this alleged agreement was reached").

agent, however, is an entirely normal and legal business activity.[15]  Nevertheless, Plaintiffs still

seek to use Potandon's role as an "agent" as a hook for including Potandon in the alleged

conspiracy.  In particular, the Complaints allege:

> Potandon sells potatoes and onions to major retailers, club stores, wholesalers,
> produce distributors, and restaurant chains across the United States at the
> direction, on behalf of and/or as the agent of its grower/shippers.

> By combining these sales and marketing functions of its growers, Potandon has
> positioned itself as the largest marketer of potatoes in North America.  Potandon
> controls a 25% share of the Idaho potato market and a 12% share of the total
> national potato market.

DPC ¶¶ 72, 77; IPC ¶¶ 88, 91.  Based on these allegations, Plaintiffs then ask the Court to take a

leap in logic and treat Potandon as a "marketing and shipping agenc[y] working as agent[ ] of

and under the control of individual growers and produce companies."  *See* DPC ¶ 1.

Serving as an agent for an alleged cartel participant does not automatically link that agent

to the cartel and alone does not provide a basis for retaining an agent as a defendant.[16]  There are

well-established pleading requirements for plaintiffs seeking to include a defendant in an alleged

conspiracy on the basis that it acted as an agent for an alleged principal in that conspiracy.  A

plaintiff must allege that the agent:  (1) had "knowledge of its supplier's purpose to restrain

trade," (2) "intended to restrain trade itself rather than simply earn its usual and customary

commission," and (3) "contribute[d] materially to the restraint."  *See* Areeda & Hovenkamp,

---

[15]  Case law makes clear that serving as a marketing/sales agent is a normal and legitimate
business activity.  *See, e.g.*, *Thompson Everett, Inc. v. Nat'l Cable Advertising, L.P.*, 57 F.3d
1317, 1325 (4th Cir. 1995) (holding that defendant sales agents' exclusive contracts with cable
television companies did not violate the antitrust laws and noting that "[t]he cable companies are
free to choose any method of selling air time").

[16]  *See* Restatement (Third) of Agency Law § 7.01 cmt. D ("An agent is not subject to liability
for torts committed by the agent's principal that do not implicate the agent's own conduct; *there
is no principle of* '*respondeat inferior*.'") (emphasis added).

Antitrust Law, Vol. VII at 317 (3d ed. 2010).  A defendant that does not meet each of these requirements "does not share a 'conscious commitment to a common scheme designed to achieve an unlawful objective,' as the Supreme Court has required.'"  *Id.* (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)); *cf. In Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures*, LLC, Case No. 09-4224 , 2010 WL 546376, at *3-4 (C.D. Cal. Feb. 10, 2010) (holding that "[w]hen alleging fraud against multiple defendants, a plaintiff 'must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme" and dismissing claims against one defendant because the complaint failed to "describe each party's role in the alleged conspiracy" and simply failed to "show how [defendant] personally took part in the alleged fraudulent scheme").

Thus, Plaintiffs' allegations about Potandon's role as an agent can be addressed and dispensed with.  The pleading requirements for including an agent in an alleged conspiracy are a matter of black letter law, and Plaintiffs have not met those requirements.  A mere allegation that Potandon served as an agent does not satisfy the relevant test for whether it can be retained as a defendant in this case.  Potandon is not alleged to have had knowledge of any "grower's" alleged intent to restrain trade.  Potandon also is not alleged to have intended to restrain trade rather than simply earn its usual and customary commission by performing its legitimate role as a marketing agent.  And Potandon is not alleged to have directly contributed to the alleged restraint in trade.  Nor can Plaintiffs legitimately make such allegations with respect to Potandon.

In fact, other allegations made about Potandon in the Complaints actually undercut Plaintiffs' attempt to link Potandon to the alleged conspiracy through its role as marketing agent.  Such allegations also undermine the possibility of Plaintiffs being able to amend the Complaints to make the necessary allegations.  In particular, the Complaints describe Potandon as a separate,

10

arms-length marketing agent for a diverse array of growers, only one of which is alleged to have had any connection to the activities described in the Complaints. *See* DPC ¶¶ 71, 73-76, 79; *see also* IPC ¶¶ 86, 89-90.[17]  This makes it even less plausible that Potandon could have served as an instrumentality of only those growers that happen to be defendants in this case or was aware of the alleged conspiracy and actively took steps in furtherance of that conspiracy.

Potandon's role as agent does not provide a hook for including it as a defendant in this case.  And, as a matter of law, Plaintiffs have failed to meet their required burden for pleading as much.  As a result, Plaintiffs have failed to plausibly suggest that Potandon was involved in the alleged conspiracy as a marketing agent.

## III.   Allegations that Potandon is Owned or Controlled by Other Defendants or Has Benefited from Their Actions Fail To Make Potandon's Participation in the Alleged Conspiracy Any More Plausible.

Unable to sufficiently allege that Potandon participated in the alleged conspiracy either directly as a principal or through its actions as a marketing agent, Plaintiffs are left with only a handful of conclusory allegations about Potandon.  These remaining allegations claim that certain "grower" defendants have some ownership interest in Potandon, that they exercise some control over Potandon, and that Potandon somehow benefited from the alleged conspiracy.  *See* DPC ¶ 80 ("Potandon is owned and/or controlled by its suppliers . . . and has directly profited from the price-fixing scheme detailed herein."); *see generally* Exhibit A.  Plaintiffs then jump to an unsupported assertion that "Potandon . . . has conspired with its potato growers to assist in

---

[17]  In these paragraphs, the term "merger" is a misnomer, because Potandon did not "merge" with those growers in a corporate sense, nor does the DPC plead as much.  *See* DPC ¶¶ 73-75.  As the Indirect Class Plaintiffs more accurately describe the situation, Potandon "took over the sales and marketing activities" of those growers, thereby fulfilling the logistical needs of those growers as their agent.  *See* IPC ¶ 89.

efforts to reduce potato supplies and fix prices."   *See id*.  Such allegations are not enough to pull Potandon into the alleged conspiracy.

### A.   Recent Case Law Makes Clear that Allegations of Ownership, Control, and Benefits Do Not Suffice to Assert a Valid Antitrust Claim.

In *Allen v. Dairy Farmers of America, Inc.*, Case No. 09-cv-230, 2010 WL 3430833 (D. Vt. Aug. 30, 2010), a federal court recently dispensed with analogous allegations made in another agriculture antitrust case, dismissing a claim against a peripheral defendant that was situated similarly to Potandon.  In *Allen*, the court granted a milk bottler's motion to dismiss where the plaintiffs sought to include the bottler as a defendant by pointing to its partial ownership by another defendant (i.e., the milk cooperative at issue in the lawsuit) and the fact that the defendant cooperatives at issue controlled the underlying milk supply used by the bottler. The court did not find those typical business dealings between a downstream entity and the alleged principals in the cartel to be sufficient grounds for keeping the downstream entity in the case.  In turn, the court granted dismissal of the claims against the bottler because of its peripheral position, even though it did not dismiss the upstream defendants.

Specifically, the *Allen* court held that the following types of allegations failed to establish the milk bottler's place in the alleged conspiracy:

(1)   an allegation that a cooperative had an ownership interest in the bottler and that the cooperative was designated as one of the bottler's largest suppliers;

(2)   an allegation that the bottler and another entity made up a large percentage of the market for bottling fluid Grade A milk;

(3)   an allegation that the cooperative exercises "control over" the milk supplied to the bottler; and

(4)   an unsupported allegation that the bottler somehow benefited from the alleged conspiracy.

12

*See id.* at \*4; *see also Imperial Constr. Mgmt. v. Laborers Union Int'l*, 729 F. Supp. 1199, 1210 (N.D. Ill. 1990) (holding that there is no presumption that a defendant is "an implicit participant in a conspiracy simply because the party receives some benefit from the conspiracy's actions"). Similar allegations are made against Potandon. *See* DPC ¶ 80 ("Potandon is owned and/or controlled by its suppliers . . . and has directly profited from the price-fixing scheme detailed herein."); *see also id.* ¶ 77 ("By combining these sales and marketing functions of its growers, Potandon has positioned itself as the largest marketer of potatoes in North America. Potandon controls a 25% share of the Idaho potato market and a 12% share of the total national potato market."); IPC ¶ 91 (same). Based on the same reasoning employed in *Allen*, such allegations likewise fail to link Potandon to the conspiracy alleged in the Complaints.

Moreover, the *Allen* court specifically rejected the plaintiffs' request that it attribute to the bottler the acts of its alleged co-conspirators based on the fact that the bottler was partially owned by and was a contracting partner of some of those alleged co-conspirators. In doing so, the court noted that the complaint "contains no 'direct or circumstantial evidence that reasonably tends to prove that [the bottler] had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Allen*, 2010 WL 3430833, at \*5 (citing *AD/SAT*, 181 F.3d at 233); *see also In re ATM Fee Antitrust Litig.*, Case No. 04-cv-2676, 2009 U.S. Dist. LEXIS 83199, at \*55-56 (N.D. Cal. Sept. 4, 2009) (granting a motion to dismiss filed by a group of bank holding companies because plaintiffs had not alleged facts sufficient to tie those holding companies to the alleged conspiracy among related operating banks to set interchange fees); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010) (dismissing some defendants that were "not plausibly alleged to have *themselves* entered into unlawful agreements" and rejecting as insufficient allegations that defendants that were subsidiaries of

other defendants "act[ed] at the common direction of the parent" entity) (emphasis added).  As is discussed at length above, the Complaints do not contain allegations of a conscious commitment to the alleged conspiracy on the part of Potandon.

Therefore, like the antitrust claims brought against the downstream service provider in the *Allen* case, the claims against Potandon should be dismissed.  Allegations about Potandon's legitimate business activities and general relationship with certain owners are not enough to keep Potandon in this case.

### B.     Corporate Law Principles Reject the Notion that Mere Allegations of Ownership Are Enough to Assert a Valid Antitrust Claim.

Black letter corporate law also makes clear that an allegation that an owner of Potandon is alleged to be involved in a conspiracy does not automatically bring Potandon into that alleged conspiracy.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 341 n.44 ("[I]t does not follow from *Copperweld* [*v. Independence Tube*, 467 U.S. 752 (1984),] that subsidiary entities are automatically liable under § 1 [of the Sherman Act] for any agreements to which the parent is a party.  As a matter of well-settled common law, a subsidiary is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship.").

For liability to be assigned to a company based on the possible liability of an owner, a court must pierce the corporate veil pursuant to well-established tests.  *See Phonometrics, Inc. v. Resinter N. Am. Corp.*, 124 F.3d 229 (Fed. Cir. 1997) ("It is perhaps one of the most basic propositions of corporate law that a subsidiary is not liable for acts of its parent, and vice versa (absent some piercing of the corporate veil).").  Under federal law, a court may disregard the corporate entity only in those limited circumstances where the following threshold factors weigh in favor of doing so:  "(1) the amount of respect given to the separate identity of the corporation

14

by its shareholders, (2) the degree of injustice visited on the litigants by recognition of the corporate entity, and (3) the fraudulent intent of the incorporators." *See UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1475 (9th Cir. 1994) (citations omitted).[18]

Those factors are not met here, nor are they even alleged in the Complaints. As the Complaints make clear, Potandon is an "independent company owned by five prior Pillsbury managers and six grower/shippers." *See* DPC ¶ 72; *see also* IPC ¶ 88. As a separate and distinct corporate entity, Potandon is not an extension of or pawn for any "grower" defendants. Thus, liability and involvement in the alleged conspiracy may not be imputed to Potandon based on conclusory statements about alleged control by its owners.

For the reasons set forth above, Plaintiffs' conclusory allegations that certain "grower" defendants have some ownership interest in Potandon or exercise some control over Potandon and that Potandon somehow benefited from the growers' alleged conspiracy are insufficient to link Potandon to the underlying conspiracy alleged in the Complaints.[19] They provide no

---

[18] Similarly, under Idaho law, courts may disregard the corporate entity only "under limited circumstances," where "there [is] such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and where "failure to treat the acts of the corporation as those of the individual will lead to an inequitable result, 'sanctioning a fraud or promoting injustice.'" *See In re Weddle*, 353 B.R. 892, 897 (Bankr. D. Idaho 2006); *see also Hutchison v. Anderson*, 950 P.2d 1275, 1279 (Idaho Ct. App. 1997) (setting forth same standard).

[19] On the same grounds, the paragraphs in the Complaints referring to a business relationship between Potandon and General Mills are red herrings that do nothing to make Potandon's involvement in the alleged conspiracy any more plausible. Such allegations merely confirm that Potandon licenses the Green Giant trademark from General Mills. *See* DPC ¶¶ 78-79, 83-85, 87-90; *see also* IPC ¶¶ 92-93, 149-52; *see generally* Exhibit A. They are not a hook to keep either Potandon or General Mills in the case.

support for Plaintiffs' assertion that Potandon "conspired with its potato growers" to reduce

supply.  *See* DPC ¶ 80.

**IV.   In the Alternative, the Antitrust Claims Against Potandon Should Be Dismissed**
**Based on the Immunities Provided by the Capper-Volstead and Cooperative**
**Marketing Acts.**

The Capper-Volstead Act, 7 U.S.C. § 291, and the Cooperative Marketing Act of 1926, 7

U.S.C. § 455, each provide alternative and additional grounds for dismissing Plaintiffs' antitrust

claims against Potandon.[20]

**A.   Capper-Volstead Act Immunity Covers Potandon.**

Immunity under the Capper-Volstead Act extends not only to growers and their

cooperatives, but also to marketing agents, such as Potandon.  The Act specifically provides that

"associations may have marketing agencies in common; and such associations and their members

may make the necessary contracts and agreements to effect such purposes."  7 U.S.C. § 291.  In

*Treasure Valley Potato Bargaining Ass'n. v. Ore-Ida Foods, Inc.*, 497 F.2d 203, 214 (9th Cir.

1974), the Ninth Circuit stated that marketing agents, like the growers/members they represent,

are covered by the immunities provided by the Capper-Volstead Act.[21]  As a result, if the grower

---

[20]  Both the Capper-Volstead Act and the Cooperative Marketing Act preclude and preempt all of
the state law antitrust and unfair competition claims brought by the indirect purchaser plaintiffs,
because such claims seek a remedy that would directly conflict with the letter, aims, and
purposes of those statutes.  *See* Section II.A of the Memorandum in Support of Motion to
Dismiss the Indirect Purchasers' Claim, filed concurrently.  As a result, any dismissal of the
claims brought against Potandon based on application of the immunities provided by the Capper-
Volstead or Cooperative Marketing Acts would also require dismissal of the state law claims
brought against Potandon.

[21]  *Cf. Kinnett Dairies, Inc. v. Dairymen, Inc.*, 512 F. Supp. 608, 632 (M.D. Ga. 1981) (stating
that "common marketing agents may perform the same function on behalf of their members as
the members can perform on behalf of their farmer members . . . ."); *see also United States v.
Maryland Cooperative Milk Producers, Inc.*, 145 F. Supp. 151, 154 (D.D.C. 1956) (stating that
"the Act permits agricultural cooperatives to have marketing agencies in common").

defendants and their cooperatives are successful in dismissing this case on Capper-Volstead

grounds (which result Potandon fully supports), the claims against Potandon must also be

dismissed on grounds that Potandon acted as a legitimate "marketing agen[t] in common" under

the Act and that any possible alleged involvement by Potandon would be immune under the Act.

**B.     The Cooperative Marketing Act Separately Immunizes Potandon.**

The Cooperative Marketing Act of 1926 (the "CMA") provides a separate and distinct

immunity for Potandon.  Section 5 of the CMA states as follows:

> Persons engaged, as original producers of agricultural products, such as farmers,
> planters, ranchmen, dairymen, nut or fruit growers, acting together in
> associations, corporate or otherwise, in collectively processing, preparing for
> market, handling, and marketing in interstate and/or foreign commerce such
> products of persons so engaged, *may acquire, exchange, interpret, and
> disseminate past, present, and prospective crop, market, statistical, economic,
> and other similar information by direct exchange between such persons, and/or
> such associations or federations thereof, and/or by and through a common agent
> created or selected by them.*

7 U.S.C. § 455 (emphasis added).

The language emphasized above is not found anywhere in the Capper-Volstead Act.

Therefore, we focus on its plain meaning and impact for Potandon in this case.  The first part of

this language covers a broad range of data-gathering and data-exchange conduct.  It permits

certain entities to "acquire, exchange, interpret, and disseminate past, present, and prospective

crop, market, statistical, economic, and other similar information."  *Id.*

The second part of the italicized language explains which entities are covered:  "by direct

exchange between such persons, and/or such associations or federations thereof, and/or by and

through a common agent created or selected by them."  7 U.S.C. § 455.  This unambiguous

language makes clear that growers and cooperatives can use a "common agent" – an entity such

as Potandon – to exchange such information.  Moreover, the CMA, on its face, does not require

compliance with the Capper-Volstead Act for the immunities provided by the CMA to apply (i.e.,

17

nothing in the language of the CMA limits its application solely to "Capper-Volstead" cooperatives).

Thus, regardless of whether the Capper-Volstead Act applies in this case, the plain meaning of the statutory language of the CMA requires dismissal of any antitrust claim based on a marketing agent sharing competitively sensitive information regarding price or volume among competing growers.[22]  The Ninth Circuit has recognized that the CMA provides a statutory immunity for violations of the antitrust laws.  *See N. Cal. Supermarkets, Inc. v. Cent. Cal. Lettuce Producers Coop.*, 580 F.2d 369 (9th Cir. 1978) (affirming district court decision identifying the CMA as a separate source of antitrust immunity).  Here, the plain language of the CMA makes clear that a marketing agent, such as Potandon, is allowed to engage in the same information-exchange activities that a cooperative may perform and, therefore, can share information (including prices and volumes) with growers in its role as marketing agent.

As explained above, Potandon cannot be retained in the case as a "grower" or as an agent. Thus, all that may be left to keep Potandon in this case is a possible implication that it may have acted as a conduit or intermediary for sharing competitively sensitive information among principals in the alleged conspiracy, even though the "who, what, when or where" details of such a claim are not alleged with respect to Potandon.[23]  The CMA, however, immunizes marketing agents in connection with the sharing of competitively sensitive information.  As a result, such sharing cannot form the basis of an antitrust claim against any entity covered by the CMA. Thus, the CMA provides the Court with further grounds for dismissing Potandon from the case –

---

[22]  The Ninth Circuit has made clear that the plain meaning of language in a statute governs.  *See Reno v. Nat'l Transp. Safety Bd.*, 45 F.3d 1375, 1379 (9th Cir. 1995) (holding that statutes must be construed by their plain meaning except in extreme circumstances) (citations omitted).

[23]  Potandon does not, in any way, admit or concede that Plaintiffs allege this in the Complaints.

and to do so with prejudice, as there is no way for Plaintiffs to plead around the immunity provided to marketing agents, such as Potandon, by the CMA.

## **CONCLUSION**

For the foregoing reasons, defendant Potandon Produce L.L.C. respectfully moves that the Complaints be dismissed with prejudice.

Dated:  March 18, 2011                    Respectfully Submitted,


                                          */s/Christopher E. Ondeck*
                                          Christopher E. Ondeck (*pro hac vice*)
                                          Matthew J. McBurney (*pro hac vice*)
                                          CROWELL & MORING LLP
                                          1001 Pennsylvania Avenue, N.W.
                                          Washington, D.C.  20004
                                          Telephone: (202) 624-2500
                                          Fax: (202) 628-5116

                                          Winston V. Beard (ISB No. 1138)
                                          Michael D. Gaffney (ISB No. 3558)
                                          BEARD ST. CLAIR GAFFNEY PA
                                          2105 Coronado Street
                                          Idaho Falls, ID  83404-7495
                                          Telephone: (208) 523-5171
                                          Fax: (208) 529-9732

                                          *Counsel for Defendant Potandon Produce L.L.C.*

**EXHIBIT A**

| Direct Complaint | Indirect Complaint |
|---|---|
| **Potandon as Marketing Agent** | |
| 72.  Once a division of Pillsbury, Potandon is now an independent company owned by five prior Pillsbury managers and six grower/shippers who control the company's operations. With over 45,000 acres and six packing facilities in Idaho, Potandon sells potatoes and onions to major retailers, club stores, wholesalers, produce distributors, and restaurant chains across the United States at the direction, on behalf of and/or as the agent of its grower/shippers. | 88. Once a division of Pillsbury, Potandon is now an independent company owned by five prior Pillsbury managers and six grower/shippers who control the company's operations. With over 45,000 acres and six packing facilities in Idaho, Potandon sells potatoes and onions to major retailers, club stores, wholesalers, produce distributors and restaurant chains across the United States at the direction, and on behalf of and/or as the agent of its grower/shippers. |
| 77.  By combining these sales and marketing functions of its growers, Potandon has positioned itself as the largest marketer of potatoes in North America. Potandon controls a 25% share of the Idaho potato market and a 12% share of the total national potato market. | 91. By combining these sales and marketing functions of its growers, Potandon has positioned itself as the largest marketer of potatoes in North America. Potandon controls a 25% share of the Idaho potato market and a 12% share of the total national potato market. |
| **Potandon as Vendor** | |
| 71.  Defendant Potandon Produce LLC ("Potandon") is a limited liability company organized, existing, and doing business under the laws of Idaho with its offices and principal place of business located in Idaho Falls, Idaho. | 86. Defendant Potandon Produce LLC ("Potandon") is a limited liability company, organized, existing and doing business pursuant to the laws of Idaho with its offices and principal place of business in Idaho Falls, Idaho. |
| 73.  In June 2002, Potandon merged the sales and marketing activities from the Idaho Fresh Cooperative ("IFC") into its operations. IFC is a 70 grower cooperative with over 25,000 acres of potatoes and six packing sheds located throughout the Snake River Valley.<br><br>74.  In June 2002, Potandon also merged the sales and marketing activities for High Country Potato, located in Rexburg, Idaho.<br><br>75.  Two Washington grower/shippers (Harvest Fresh Produce in Othello and Balcom & Moe of Pasco) merged with Potandon in June of 2005. In January of 2006, Potandon merged with Murakami Produce, the largest supplier of onions in the Idaho/Oregon region. In October 2006, Potandon merged the sales activities for Defendant Larsen Farms into Potandon. | 89. Between 2002 and 2006, Potandon took over the sales and marketing activities of several Idaho potato growers, including Idaho Fresh Cooperative f/k/a Sunspiced of Idaho (which has 25,000 acres of potato farmland and six packing facilities in Idaho), High Country Potato and Larsen Farms. |

| | |
|---|---|
| 76.  Outside of Idaho, Potandon has established an extensive network of over 60 potato and onion co-packers in 24 states with another nine co-packers in Canada.  In addition, Potandon is involved in multiple joint venture growing areas and has several exclusive sales agreements. | 90.  Outside of Idaho, Potandon has established an extensive network of over 60 potato and onion co-packers in twenty-four states with another nine co-packers in Canada.  In addition, Potandon is involved in multiple joint-venture growing areas and has several exclusive sales agreements. |

**Conclusory Allegations About Potandon**

| | |
|---|---|
| 71.  During the Class Period, Potandon participated in the supply-restriction and price-fixing scheme as alleged herein. | 87.  During the Class Period, Potandon participated in the supply-restriction and price-fixing scheme alleged in this Amended Complaint. |
| 80.  Potandon is owned and/or controlled by its suppliers and has conspired with its potato growers to assist in efforts to reduce potato supplies and fix prices and has directly profited from the price-fixing scheme detailed herein. | |
| 246.  All Defendants involved in potato growing and selling operations herein (including Wada Farms and Wada Farms Marketing Group (on behalf of themselves and Dole Foods); Potandon (on behalf of itself and General Mills); Blaine Larsen Farms; Michael Cranney doing business as Cranney Farms; Cornelison Farms; Snake River Plains Potatoes; Driscoll Potatoes; Lance Funk doing business as Lance Funk Farms; Rigby Produce; Pleasant Valley Potato; Raybould Brothers Farms; and RD Offutt) were direct participants in the supply reduction scheme outlined herein and followed acreage reductions, participated in the bid-buy-down program, participated in and utilized information obtained from marketing calls and packing reports, and/or reduced the domestic supply of potatoes for the express purposes of fixing, raising, maintaining and/or stabilizing prices. | 268.  All Defendants involved in potato growing and selling operations described in this Amended Complaint including Wada Farms and Wada Farms Marketing (on behalf of themselves and Dole Food); Potandon (on behalf of itself and General Mills); Larsen Farms; Michael Cranney doing business as Cranney Farms; Cornelison Farms; Snake River Plains Potatoes; Driscoll Potatoes; Lance Funk doing business as Lance Funk Farms; Rigby Produce; Pleasant Valley Potato; Raybould Brothers Farms; and RD Offutt were direct participants in the supply reduction scheme outlined above and followed acreage reductions, participated in the bid-buy-down program, participated in and utilized information obtained from marketing calls and packing reports, and/or reduced the domestic supply of potatoes for the express purposes of fixing, raising, maintaining and/or stabilizing prices. |

**Potandon's Relationship with General Mills**

| | |
|---|---|
| 78.  Potandon owns the exclusive licensing rights to the Green Giant® brand for fresh potatoes and onions (pursuant to an agreement with Defendant General Mills). Potandon also markets SunSpiced potatoes. | 92.  Potandon owns the exclusive licensing rights to the Green Giant® brand for fresh potatoes and onions (pursuant to an agreement with Defendant General Mills). Potandon also markets SunSpiced potatoes. |
| 79.  Potandon sells potatoes throughout the United States. It solicits internet sales of potatoes on its website at http://www.potandon.com/contact.htm. | 93.  Potandon sells potatoes throughout the United States. It solicits internet sales of potatoes on its website at http://www.potandon.com/contact.htm. |

| | |
|---|---|
| 83.  As the licensor of potatoes sold by the Potandon Defendants under the trademark "Green Giant Fresh®", General Mills had, through its exclusive licensing agreement, control over many aspects of marketing, selling, packaging, quality, and branding of these potatoes. General Mills' involvement with Potandon's operations includes specifying and designing packaging, designing and managing cross promotions, headquarters sales calls, quality and safety standards, and inspecting potato growing and packaging operations. | 149.  As the licensor of potatoes sold by the Defendant Potandon, under the trademark "Green Giant Fresh®," General Mills had, through its exclusive licensing agreement, control over many aspects of marketing, selling, packaging, quality and branding of these potatoes.  General Mills' involvement with Potandon's operations includes specifying and designing packaging, designing and managing cross promotions, headquarters sales calls, quality and safety standards and inspecting potato growing and packaging operations. |
| 84.  Promotional materials distributed by Potandon stated that the "Green Giant Fresh®" potatoes were grown under a "stringent quality control program" and discussed "regular visits to all approved packing facilities." | |
| 85.  Potandon describes itself on its website as the "[e]xclusive sales agent for Green Giant Fresh potatoes and onions." | |
| 87.  Potandon and its growers acted as General Mills's agents in participating in the price-fixing scheme alleged herein. In their capacity as agents of General Mills, Potandon and its growers reduced potato supply and encouraged other growers to do the same. | 150.  Potandon and its growers acted as General Mills's agents in participating in the price-fixing scheme alleged in this Amended Complaint. In their capacity as agents of General Mills, Potandon and its growers reduced potato supply and encouraged other growers to do the same. |
| 88.  As the exclusive licensor of the "Green Giant Fresh®" trademark, Potandon enjoys frequent contact with and supervision from General Mills representatives. | 151.  As the exclusive licensor of the "Green Giant Fresh®" trademark, Potandon enjoyed frequent contact with and supervision from General Mills representatives. |
| 89.  Throughout the Class Period, General Mills exercised actual or apparent authority over Potandon and its growers as those entities publicly and repeatedly announced their intentions to reduce potato supplies nationwide and encouraged competitors to do the same. General Mills invested authority in the Potandon and its growers to act on General Mills's behalf, including by reducing the supply of Green Giant-branded potatoes, despite knowing of Potandon's and its growers' efforts to restrict potato supplies and fix prices nationwide with their co-conspirators. | 152.  Throughout the Class Period, General Mills exercised actual or apparent authority over Potandon and its growers as those entities publicly and repeatedly announced their intentions to reduce potato supplies nationwide and encouraged competitors to do the same. Potandon has a network of more than 60 potato co-packers in twenty-five states and nine in Canada. |
| 90.  General Mills and Potandon made representations to various third parties and the public concerning their relationship, and these representations gave rise to a reasonable belief that Potandon and its growers possessed authority | |

| | |
|---|---|
| to act on General Mills's behalf. In particular, Potandon issued releases to the press and on the Potandon website detailing the Green Giant/Potandon relationship and confirming that Potandon was acting on General Mills's behalf and as the agent of General Mills in the production, marketing and sales of Green Giant potatoes. | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 18, 2011, a true and correct copy of the foregoing was caused to be filed with CM/ECF with service by electronic mail to the following:

Albert P. Barker
abp@idahowaters.com

Allen Steyer
asteyer@steyerlaw.com

Andrew G. Deiss
adeiss@joneswaldo.com

Andrew H. Stone
astone@joneswaldo.com

Arthur N. Bailey, Jr.
abailey@hausfeldllp.com

Bart M. Davis
bmdavis@bmdlaw.net

Benjamin Andrew Schwartzman
bschwartzman@bwslawgroup.com

Billie J. Siddoway
bsiddoway@joneswaldo.com

Bonny E. Sweeney
bonnys@rgrdlaw.com

Brad P. Miller
bmiller@hawleytroxell.com

Bruce S. Bistline
bbistline@gordonlawoffices.com

Carmen A. Medici
cmedici@rgrdlaw.com

Chad V. Bonanni
chad@essex.bpflegal.com

Daniel G. Swanson
dswanson@gibsondunn.com

Daniel M. Cohen
danielc@cuneolaw.com

David T. Biderman
dbiderman@perkinscoie.com

David J. Syrios
dsyrios@ademilaw.com

David R. Lombardi
drl@givenspursley.com

Donald Amamgbo
Donald@amamgbolaw.com

Donald M. Barnes
dbarnes@porterwright.com

Douglas A. Millen
dmillen@fklmlaw.com

Elizabeth McKenna
emckenna@milberg.com

Eric P. Enson
epenson@jonesday.com

Eugene A. Spector
espector@srkw-law.com

Gregort L. Crockett
gregcrockett@hopkinsroden.com

Guri Ademi
gademi@ademilaw.com

Hollis Salzman
hsalzman@labaton.com

James A. Wilson
jawilson@vorys.com

James E.  Hartley
jhartley@hollandhart.com

James Pizzirusso
jpizzirusso@hausfeldllp.com

James S. Lowrie
jlowrie@jonewaldo.com

Jay L. Himes
jhimes@labaton.com

Jay S. Cohen
jcohen@srkw-law.com

Jeffrey Alan LeVee
jlevee@jonesday.com

Jeffrey L. Spector
jspector@srkw-law.com

John M. Avondet
javondet@beardstclair.com

Jon T. King
jking@hausfeldllp.com

Joseph Michael Barton
jbarton@glancylaw.com

Julio Joaquin Ramos
ramosfortrustee@yahoo.com

Kimberly A. Kralowec
kkralowec@kraloweclaw.com

Lionel Z. Glancy
lglancy@glancylaw.com

Loren Block
lblock@milberg.com

Mark A Griffin
mgriffin@kellerrohrback.com

Matthew S. Wild
mwild@wildlawgroup.com

Michael M. Goldberg
mmgoldberg@glancylaw.com

Michael Hausfeld
mhausfeld@hausfeldllp.com

Michael D. Gaffney
gaffney@beardstclair.com

Michael Kowsari
mkowsari@girardikeese.com

Michael P. Lehmann
mlahmann@hausfeldllp.com

Mindee J. Reuben
reuben@wka-law.com

Monte N. Stewart
stewart@belnaplaw.com

Neil D. McFeeley
nmcfeeley@eberle.com

Paul Novak
pnovak@milberg.com

Peter Safirstein
psafirstein@milberg.com

Philip Howard Gordon
pgordon@gordonlawoffices.com

Reginald Von Terrell
Reggie2@aol.com

Richard C. Boardman
rboardman@perkinscoie.com

Robert Rosenfeld
rrosenfeld@orrick.com

Ronald J. Aranoff
aranoff@bernlieb.com

Salvatore A. Romano
sromano@porterwright.com

Samuel G. Liversidge
sliversidge@gibsondunn.com

Sharron Williams Gelobter
sgelobter@yurumeinlaw.com

Shpetim Ademi
sademi@ademilaw.com

Stephen Bomse
sbomse@orrick.com

Stephen R. Thomas
srt@moffatt.com

Steven A. Asher
asher@wka-law.com

Steven A. Kanner
skanner@fklmlaw.com

Steven B. Andersen
sandersen@hollandhart.com

Susan G. Kupfer
skupfer@glancylaw.com

Wade L. Woodard
wwoodard@bwslawgroup.com

William Greene
William.greene@leonard.com

William V. Reiss
wreiss@labaton.com

Winston Beard
winston@beardstclair.com

        In addition, a true and correct copy of the foregoing was caused to be sent by electronic
mail to the following attorneys not registered to receive electronic notice via CM/ECF:

Phillip A. Proger
paproger@jonesday.com


                                        /s/ *Christohper E. Ondeck*