Neil D. McFeeley, ISB # 3564
EBERLE, BERLIN, KADING,
TURNBOW & MCKLVEEN, CHTD.
1111 West Jefferson, Ste 530
PO Box 1368
Boise, ID 83701
Telephone: (208) 344-8535
Facsimile: (208) 344-8542
E-mail: nmcfeeley@eberle.com

James A. Wilson, Ohio State Bar # 0030704
VORYS, SATER, SEYMOUR AND PEASE
LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-5606
Facsimile: (614) 719-5039
E-mail: jawilson@vssp.com

Attorneys for the Defendant Idahoan Food, LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:  FRESH AND PROCESS POTATOES ANTITRUST LITIGATION | Case No. 4:10-md-02186-BLW |
| | **DEFENDANT IDAHOAN FOODS, LLC 'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DIRECT PURCHASERS' FIRST AMENDED CLASS ACTION COMPLAINT AND INDIRECT PURCHASERS' FIRST AMENDED CLASS ACTION COMPLAINT** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

# TABLE OF CONTENTS

I.      Introduction and Summary of Argument .......................................................................... 1

II.     Allegations Related to Idahoan Foods .......................................................................... 2

III.    Argument .......................................................................................................................... 7

        A.      Under *Twombly*, the Standard for Pleading that Idahoan Foods Participated in
                a Conspiracy Is High .......................................................................................... 7

        B.      Plaintiffs Have Pled No Specific Facts Making It Plausible that Idahoan
                Foods Participated in a Conspiracy .................................................................... 9

        C.      Allegations Regarding Idahoan Foods' Agreement to Purchase Potatoes from
                United II Are Insufficient to State a Claim ........................................................ 11

                1.      Allegations that Idahoan Foods Benefited from the Potato Growers'
                        Purported Conspiracy Are Insufficient to State a Claim ......................... 12

                2.      Allegations Regarding Idahoan Foods' Purchase Agreement with
                        Growers Are Insufficient to State a Claim ............................................... 13

        D.      Allegations that Idahoan Foods Is a Production Joint Venture Owned by Two
                Other Defendants Are Insufficient to State a Claim ........................................... 15

        E.      If the Grower Defendants Are Entitled to Capper-Volstead Immunity,
                Idahoan Foods Cannot Have Violated the Sherman Act ..................................... 17

IV.     Conclusion ....................................................................................................................... 18

Certificate of Service ................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*49er Chevrolet, Inc. v. Gen. Motors Corp.*, 803 F.2d 1463 (9th Cir. 1986) ........................... 12, 13

*Allen v. Dairy Farmers of Am., Inc.*, 2010 U.S. Dist. LEXIS 90309 (D. Vt. Aug. 30, 2010) .................................................................................................................. 10

*Ashcroft v. Iqbal*, 556 U.S. ----, 129 S. Ct. 1937 (2009)........................................................... 8, 15

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir 1990)..................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ passim

*Bellsouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 719 F. Supp. 1551 (S.D. Fla.1988)........................................................................................................... 16

*Burks v. Lasker*, 441 U.S. 471 (1979)........................................................................................ 16

*Cablevision Sys. Corp. v. FCC*, 597 F.3d 1306 (D.C. Cir. 2010)................................................ 14

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)................................... 14, 16

*Hinds County v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499 (S.D.N.Y. 2009) ........................... 10

*Imperial Constr. Mgmt. v. Laborers Union Int'l*, 729 F. Supp. 1199 (N.D. Ill. 1990)................. 13

*In re Cal. Title Ins. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 103407 (N.D. Cal. Nov. 6, 2009) .......................................................................................................................... 11

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999)......................................................... 10, 11

*In re Fla. Cement & Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 108528 (S.D. Fla. Oct. 12, 2010) ......................................................................................................... 17

*In re GPU Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007)...............................................1

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010)................................... 10, 15, 17

*In re Late Fee & Over-Limit Litig.*, 528 F. Supp. 2d 953 (N.D. Cal. 2007)............................... 10

*In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663 (E.D. Pa. 2009) ................................. 17

*In re Vitamin C Antitrust Litig.*, 584 F. Supp. 2d 546 (S.D.N.Y. 2008)..................................... 13

*In re Wholesale Grocery Prods. Antitrust Litig.*, 722 F. Supp. 2d 1079 (D. Minn. 2010) .......................................................................................................................... 14

*Jeanery, Inc. v. James Jean, Inc.*, 849 F. 2d 1148 (9th Cir. 1988) ................................................. 11

*Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119 (D.D.C. 2004)........................................ 10

*Kendall v. Visa U.S.A.*, Inc., 518 F.3d 1042 (9th Cir. 2008) ................................................. 7, 9, 10

*Kesler Enters., Inc., v. U.S. Dep't of Agric.*, 2010 U.S. Dist. LEXIS 118742
    (D. Idaho Nov. 4, 2010) .......................................................................................... 9, 14

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) ................................. 14

*Mitchael v. Intracorp, Inc.*, 179 F.3d 847 (10th Cir. 1999) .......................................................... 16

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ..................................................... 11

*Pac. Bell Tel. Co. v. Linkline Comm'ncs, Inc.*, 555 U.S. ----, 129 S.Ct. 1109 (2009) ................... 7

*Person v. Google, Inc.*, 2007 U.S. Dist. LEXIS 22499 (N.D. Cal. Mar. 16, 2007)...................... 12

*Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963 (9th Cir. 2008) ...................... 10, 12, 13

*Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978 (9th Cir. 2001)..................................................... 10

*United States v. Dunn*, 564 F.2d 348 (9th Cir. 1977) .................................................................... 11

*Vanderford Co., Inc. v. Knudson*, 165 P.3d 261 (Idaho 2007) ..................................................... 16

*Weisbuch v. County of L.A.*, 119 F.3d 778 (9th Cir. 1997)............................................................. 9

*Wheaton Equip. Co. v. Franmar, Inc.*, 2009 U.S. Dist. LEXIS 127456 (D. Idaho
    Feb. 4, 2009) .......................................................................................................... 16

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659 (9th Cir. 2008)..................... 15

## STATUTES

15 U.S.C. § 1............................................................................................................. passim

7 U.S.C. § 291.................................................................................................................... 2

## OTHER AUTHORITIES

Fed. R. Civ(1992). P. 12(b)(6) ...................................................................................... passim

**TREATISES**

1 William Meade Fletcher, Cyclopedia of Law of Private Corporations § 33 (perm.
   ed. rev. vol. 2006) ............................................................................................................ 16

## I.      Introduction and Summary of Argument

The claims against Idahoan Foods should be dismissed because neither the Direct Plaintiffs nor the Indirect Plaintiffs plead any facts that plausibly lead to the conclusion that they have stated a claim.  Idahoan Foods is not a potato grower nor a member of any of the Defendant cooperatives in this case.  To the contrary, it is a customer of these growers and cooperatives.  Its only connections with the conduct Plaintiffs claim states an antitrust cause of action under Section 1 of the Sherman Act, 15 U.S.C. § 1, or state antitrust laws,[1] is that it (a) buys potatoes pursuant to an arrangement intended to increase the efficient use of fresh and dehydration grade potatoes; and (b) is a separate legal entity owned by two of the other defendants.  Neither of these facts is sufficient to salvage Plaintiffs' claim against Idahoan Foods.

Obviously, if the Direct and Indirect Purchasers' Complaints fail to allege sufficiently (as Idahoan Foods believes they do) that the grower and cooperative Defendants in this case have operated outside the protection of the Capper-Volstead Act, none of the Defendants in this case, including Idahoan Foods, faces liability.  However, regardless of the sufficiency of Plaintiffs' attempt to avoid this immunity, Idahoan Foods is entitled to dismissal of the claims against it because: (1) the Complaints fail to allege facts sufficient to show any commitment by Idahoan Foods to the alleged conspiracy; (2) the allegations concerning Idahoan Foods' purchase agreement with United II directly contradict any inference that the agreement was an effort by Idahoan Foods to participate in a conspiracy to reduce output and raise prices to itself; and (3) the ownership of Idahoan Foods is irrelevant to its liability because the antitrust laws do not imply liability simply by reason of ownership.

---

[1] Since federal pleading standards govern the adequacy of state law claims filed in federal court, the Indirect Purchasers' claims fail for the same reasons that the Direct Purchasers' claims fail.  *In re GPU Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007).

For all of these reasons, this Court should dismiss the claims of both the Direct and Indirect Purchasers against Idahoan Foods.

## II.    Allegations Related to Idahoan Foods

While Plaintiffs seek redress under Section 1 of the Sherman Act, which proscribes certain concerted action, Plaintiffs never allege that Idahoan Foods ever joined a conspiracy or otherwise agreed to participate in any concerted activity.  Plaintiffs' central allegation is that the potato-growing Defendants conspired to both reduce output and set prices for potatoes by forming cooperatives.  Plaintiffs argue that, despite the immunity found in the Capper-Volstead Act, 7 U.S.C. §§ 291-92, for such cooperatives, they nonetheless have claims against these growers and their cooperatives and thus seek to characterize the cooperatives as a "conspiracy." Plaintiffs allege this "conspiracy" was planned in 2003 or 2004 and implemented in 2005.  1st Am. Class Action Compl., Doc. 39 ("DP Compl."), at ¶¶ 162-63, 188-91, 201-07; 1st Am. Class Action Compl., Doc. 63 ("IP Compl."), at ¶¶ 193-94, 200-02, 236-40.  Nowhere do Plaintiffs explain why they claim that Idahoan Foods, formed several years later, participated.

Likewise fatal to Plaintiffs' claims against Idahoan Foods is that Plaintiffs do not allege that Idahoan Foods was a member of any cooperative or was a potato grower.  To the contrary, the Complaints make clear that Idahoan Foods is at an entirely different level in the potato production and processing chain than are the grower and cooperative Defendants.  Idahoan Foods purchases potatoes from a number of the other Defendants, and other growers, in order to process those potatoes (primarily as a dehydrator) for resale to others.  Idahoan Foods is owned by two of the other Defendants in the case.  Plaintiffs' claim against Idahoan Foods rests solely upon these relationships.

Specifically, the Complaints allege that two Defendants formed Idahoan in 2007 – *well after the alleged conspiracy began*:

> United II created a joint venture with Defendant R.D. Offutt Co. (the largest potato grower in the country) and Defendant Idahoan Foods, LLC (initially known as North American Foods, LLC). Idahoan Foods, LLC is one of the largest potato dehydrators in the country, and the United II grower-owners supply all the potatoes for its Idaho and Nevada plants.

DP Compl. ¶ 28, IP Compl. ¶ 47; *see also* DP Compl. ¶ 118, IP Compl. ¶ 131 (In 2007 "R.D. Offutt partnered with Defendant United II to create the joint venture North American Foods, LLC (now known as Idahoan Foods, LLC), contributing potato processing plants in several states."). Idahoan Foods is a separate corporate entity from its owners. DP Compl. ¶ 119, IP Compl. ¶ 153 ("Defendant Idahoan Foods, LLC (formerly known as North American Foods, LLC, referred to herein as 'Idahoan Foods') is a limited liability company organized, existing, and doing business under the laws of Delaware with offices and its principal place of business located in Grand Forks, North Dakota.").

Plaintiffs never plead any facts that Idahoan Foods actually joined or otherwise ratified the alleged conspiracy, which began in 2003/2004 – three to four years prior to Idahoan's formation. *Compare* DP Compl. ¶¶ 162-63, IP Compl. ¶ 193-94 (discussing formation of alleged conspiracy in 2003/2004) *with* DP Compl. ¶ 118, IP Compl. ¶ 131 (Idahoan Foods formed in 2007). Instead, the Complaints rest on repetitive and conclusory allegations that Idahoan Foods' ownership and purchasing practices had an anticompetitive effect:

- "This joint venture enabled potato growers to offload surplus potatoes and further reduce supplies and thereby further facilitated and contributed to the price-fixing scheme alleged herein." DP Compl. ¶ 118, IP Compl. ¶ 131.

- "During the Class Period, North American Foods [i.e., Idahoan] participated in the supply-restriction and price-fixing scheme as alleged herein." DP Compl. ¶ 119, IP Compl. ¶ 153.

- "Through its United II/North American Foods joint venture, UPGI has devised an admitted means of furthering its supply-reduction and price-fixing efforts." DP Compl. ¶ 124.

- "As discussed in more detail *infra*, UPGI also colluded with non-growers in forming a joint venture with a potato dehydration plant that was designed to help its efforts to reduce supply and fix prices." DP Compl. ¶ 280, IP Compl. ¶ 297.

- "In 2007, UPGI facilitated the formation of a joint venture (Defendant Idahoan Foods) to create the second largest potato dehydrator in the country, as well as a second co-op to supply potatoes to this venture. The explicit and publicly stated purpose of this joint venture was to assist UPGI in reducing potato supply." DP Compl. ¶ 315, IP Compl. ¶ 328.

None of these allegations, however, tie Idahoan to any conspiracy or do any more than proffer rote conclusions without any factual support.

From the grower Defendants' perspective, the Complaints allege that the purpose of forming Idahoan Foods was to provide an outlet for the sale of potatoes:

- "Under a formula-based pricing arrangement, United II growers supply all the potatoes for the Idaho and Nevada plants." DP Compl. ¶ 316, IP Compl. ¶ 329.

- "UPGI also discussed the venture in its March 2007 newsletter and stated '**United of Idaho [UPGI] feels that the current dehy strategy being implemented is critical to United's overall mission of supply management.**'" DP Compl. ¶ 319, IP Compl. ¶ 332 (emphasis in Complaints).

- "In December of 2007, UPGI announced the new 'Idahoan Fresh Potato Plan' as part of this venture and as a means to further control supplies and fix prices where UPGI proposed that growers sell 100% of their potatoes to Idahoan Fresh." DP Compl. ¶ 320, IP Compl. ¶ 333.

The Complaints ***never*** allege that Idahoan Foods entered into any agreement with any grower or cooperative to limit the number of potatoes grown (or set prices) – rather, the only allegation about Idahoan Foods is that it had a contract to purchase the output of the grower Defendants that UPGI believed would benefit its members by providing a guaranteed channel for sale of their dehydrated grade potatoes.

Further, the only specific allegation Plaintiffs make regarding Idahoan Foods' conduct is that it reduced overcapacity at the processing level in the potato industry: "In shutting down potato processing plants as part of this joint venture, Paul Noah, an R.D. Offutt official in Fargo,

North Dakota, stated that '[i]n essence, there is excess capacity in the industry.'"  DP Compl. ¶ 125.  Of course, any reduction in production capacity by Idahoan Foods would *reduce* its need for raw potatoes – contrary to the apparent claim that Idahoan Foods' role in the purported conspiracy was to reduce supply (and presumably increase price) by purchasing a large number of potatoes.

Apart from these allegations – and the vague, and conclusory, allegation of the Direct Purchaser Plaintiffs that all "Defendants and each co-conspirator ratified and/or authorized the wrongful acts of Defendants and each of the other co-conspirators" (DP Compl. ¶ 135) –  the Complaints do not allege any facts to support the conclusion that Idahoan Foods participated in any meetings, agreed to participate in the alleged conspiracy, or otherwise ratified the alleged conspiracy.

In fact, the Complaints set forth, at length, the *procompetitive* benefits the formation of Idahoan Foods had in creating a more efficient broader processing network that gives more convenient access to markets, allows better vertical integration of production (e.g., more efficient use of surplus potatoes), and more efficient production operations – hardly the hallmarks of anticompetitive conduct.  Specifically, the Plaintiffs concede that "North American Foods was formed "to create a *broad network* of potato processing plants *with convenient access to markets and to customers*."  DP Compl. ¶ 122, IP Compl. ¶ 156 (emphasis added).  Further, in the next paragraph, Plaintiffs admit that "[a]s one of the largest potato dehydrators in the country, North American Foods enables its United II grower-owners to divert surplus potatoes to a dehydration operation while profiting from vertical integration."  DP Compl. ¶ 123, IP Compl. ¶ 157.  Indeed, the Direct Purchaser Plaintiffs quote, without pleading any contrary facts, Idahoan Foods' view that its existence fosters competition:

> On its website, Idahoan Foods states "[w]ith the formation of Idahoan Foods, we are able to provide a consistent supply of quality raw materials with leading manufacturers of premium potato products," said Gordon Lewis, president and chief executive officer of Idahoan Foods as of its formation. "The combining of resources creates a larger company that will operate more efficiently in today's marketplace."

DP Compl. ¶ 126. *See also* DP Compl. ¶ 127 (Idahoan Foods' "potato processing plants and nationally recognized retail, foodservice, and warehouse club brands of products … along with its close relationship with the grower cooperative, allow Idahoan Foods to deliver superior quality and value to its customers.").

Further, the Complaints acknowledge that Idahoan Foods provides "a guaranteed market for the [grower Defendants'] dehydrator-grade potatoes." DP Compl. ¶ 317, IP Compl. ¶ 330. Quoting from one of the cooperatives' presidents, Plaintiffs then acknowledge the assertion of the procompetitive benefits of Idahoan Foods creating a more efficient outlet for the most productive use of fresh and dehydration grade potatoes:

> "Since forming two-and-half-years ago, United has proven its ability to manage flesh [sic] potato supplies, meet and match demand, and improve grower returns," said Jerry Wright, United president and CEO. "**This new venture will not only lead to a more stable dehydrator industry, but also serve as an important tool for growers to balance their fresh crop and fresh industry marketing pipelines, all with the objective of improving grower returns**. As a result, potato growers, our communities and the entire industry will benefit."
>
> . . . .
>
> "This new venture is another in a series of strategic initiatives by United to improve potato grower returns," says Wright. "**The fresh and dehydrator industries work hand-in-hand. By maintaining a fair dehydrator price, fresh grower returns also improve. This new dehydrator company also provides United with an outlet for surplus potatoes.** Through United, growers have access to market data and facts that are crucial to their marketing. Through United II, growers who invest will have the opportunity to earn dividends while having a reliable market for their dehydrator-grade potatoes."
>
> . . . .

DEFENDANT IDAHOAN FOODS, LLC'S MEMORANDUM
IN SUPPORT OF MOTIONS TO DISMISS                                                    6

> **"Potato growers will now be integrated vertically into the overall industry system," says Wright.** "Through United II, we will create efficiencies from the development of seed to production to marketing. We anticipate greater long-term stability and no more boom or bust cycles." (Emphasis added.)

DP Compl. ¶ 318, IP Compl. ¶ 331 (emphasis in Complaints); *see also* DP Compl. ¶ 321, IP Compl. ¶ 334. Neither Complaint pleads any facts to rebut the description they quote of Idahoan Foods as offering procompetitive benefits.

Because the allegations in the Complaints are insufficient to find that Plaintiffs have stated a claim against Idahoan Foods, this Court should grant Idahoan Foods' Motion to Dismiss.

## III.   Argument

### A.   Under *Twombly*, the Standard for Pleading that Idahoan Foods Participated in a Conspiracy Is High.

Dismissal of a claim under Fed. R. Civ. P. 12(b)(6) is appropriate based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir 1990). In this case, Plaintiffs have failed to allege facts sufficient to state a plausible claim that Idahoan Foods entered into any conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Further, to the extent they claim Idahoan Foods is liable under the antitrust laws simply because it is owned by two of the other Defendants in this case, or because it purchases potatoes from some of the other Defendants, those claims should be dismissed because they fail to state a cognizable basis for liability on Idahoan Foods' part.

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court made clear that because litigating antitrust claims can be complex and expensive, careful review of the sufficiency of the pleadings pursuant to Rule 12(b)(6) is essential. *See also Pac. Bell Tel. Co. v. Linkline Comm'ncs, Inc.*, 555 U.S. ----, 129 S.Ct. 1109, 1123 (2009); *Kendall v. Visa U.S.A.*, Inc., 518 F.3d 1042, 1047 (9th Cir. 2008) ("[B]ecause discovery in antitrust cases

frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case," a complaint must have enough factual allegations "to raise a right to relief above the speculative level"). Accordingly, a plaintiff must plead facts in its complaint "plausibly suggesting (not merely consistent with)" the elements of its cause of action. *Twombly*, 550 U.S. at 557. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Indeed, a plaintiff must allege enough facts to make misconduct more plausible than an "obvious alternative explanation." *Id*. at 567.

In *Ashcroft v. Iqbal*, the Supreme Court reemphasized that a pleading does not suffice if it tenders naked assertions devoid of further factual enhancement; the claims must be plausible. 556 U.S. ----, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" that if accepted as true, "state a claim to relief that is plausible on its face," that is, a set of facts that permit the court to do more than "infer more than a mere possibility of misconduct," and instead allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949-52.

Thus, "to state a claim under Section 1 of the Sherman Act, . . . claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which if true, will prove" a

conspiracy.  *Kendall*, 518 F.3d at 1047.  Specifically, after *Twombly*, if a plaintiff expects to rely on direct evidence of conspiracy, its complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal" this direct evidence.  *Twombly*, 550 U.S. at 556.  If the plaintiff alternatively seeks to rest on circumstantial evidence of parallel behavior, the complaint's statement of facts must place the alleged behavior in "a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  *Id.* at 557.

Moreover, "[p]roviding too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery."  *Kesler Enters., Inc., v. U.S. Dep't of Agric.*, 2010 U.S. Dist. LEXIS 118742 (D. Idaho Nov. 4, 2010) (Winmill, J.) (citing *Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts")).  Here, where Plaintiffs have pled facts demonstrating that Idahoan Foods' conduct cannot state a cognizable claim that Section 1 of the Sherman Act was violated, their Complaints must be dismissed.

### B.  Plaintiffs Have Pled No Specific Facts Making It Plausible that Idahoan Foods Participated in a Conspiracy.

Plaintiffs fail to allege any facts that Idahoan Foods participated in a conspiracy with anyone, let alone the other Defendants.  Plaintiffs never explain how, when, or why Idahoan Foods joined an alleged conspiracy that supposedly began several years ***before*** Idahoan Foods was formed.  Plaintiffs instead rely solely on unsubstantiated conclusions.  That reliance is insufficient to state a claim.

"[T]o allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall*, 518 F.3d at 1047 (quoting *Twombly,* 550 U.S. at 556 n.10*); see also Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 975-76 (9th Cir. 2008).[2]   The Complaints do not meet this standard.

Paragraph 119 of the Indirect Purchasers' Complaint (IP Compl. ¶ 153) – "[d]uring the Class Period, North American Foods [i.e., Idahoan] participated in the supply-restriction and price-fixing scheme as alleged herein" – which stands solely as a conclusion with no plausible factual support, plainly does not meet this standard.   Likewise, the vague claim in the Direct Purchasers' Complaint that "Defendants and each co-conspirator ratified and/or authorized the wrongful acts of Defendants and each of the other co-conspirators" (DP Compl. ¶ 135), is wholly conclusory and thus does not approach the level of plausibility required by *Twombly* and *Kendall.*  In short, the Complaints are devoid of any plausible allegations of Idahoan joining any conspiracy sufficient to state a claim for relief.  *In re Late Fee & Over-Limit Litig.*, 528 F. Supp. 2d 953, 963-64 (N.D. Cal. 2007) (following *In re Citric Acid Litig.*, 191 F.3d 1090, 1093-94 (9th Cir. 1999) in dismissing case pursuant to Fed. R. Civ. P. 12(b)(6)).

Nor is Plaintiffs' pleading burden with respect to Idahoan Foods diminished by any allegations it makes against other Defendants.  The essence of a violation of Section 1 is a conscious commitment by each alleged conspirator to an illegal agreement.  *See Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001).  ("[f]or an agreement to constitute a violation of [S]ection 1 of the Sherman Act, a 'conscious commitment to a common scheme

---

[2] Courts outside the Ninth Circuit have reached the same conclusion on facts very similar to the present case.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010); *Allen v. Dairy Farmers of Am., Inc.*, 2010 U.S. Dist. LEXIS 90309, at *9-16 (D. Vt. Aug. 30, 2010); *Hinds County v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 512-17 (S.D.N.Y. 2009); *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 161-73 (D.D.C. 2004).

DEFENDANT IDAHOAN FOODS, LLC'S MEMORANDUM
IN SUPPORT OF MOTIONS TO DISMISS                                                              10

designed to achieve an unlawful objective' must be established" (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)); *see also Jeanery, Inc. v. James Jean, Inc.*, 849 F. 2d 1148, 1155 (9th Cir. 1988). In this Circuit, allegations that one group of defendants has conspired does not eliminate a plaintiff's burden to show that other defendants joined that conspiracy. *See In re Cal. Title Ins. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 103407, *13-14, 17-18 (N.D. Cal. Nov. 6, 2009) (granting Rule 12(b)(6) motion to dismiss conspiracy claims for failure to plead specific allegations concerning existence of conspiracy (citing *In re Citric Acid Litig.*, 996 F. Supp. 951 (N.D. Cal. 1998)) (additional citations omitted)). *Cf. United States v. Dunn*, 564 F.2d 348, 357 n.21 (9th Cir. 1977) ("after much reflection we are of the mind that the slight evidence rule may be of doubtful … application when the issue for review concerns whether the defendant was connected with the conspiracy at all").

Moreover, both of the Complaints' assertions that the alleged conspiracy began several years ***before*** Idahoan Foods was even formed and their admission that Idahoan Foods is a purchaser of potatoes, not a grower, make implausible that it was a member of the alleged conspiracy absent allegations of facts showing Idahoan Foods consciously and purposely joined in the grower Defendants' supposedly illegal agreements after Idahoan Foods was formed. The Complaints lack such allegations. Rather, the Complaints simply allege that Idahoan Foods had a purchase agreement that benefited some of the other Defendants and that it was owned by two of the Defendants. As discussed in the next two sections, neither of these arguments is a basis upon which Plaintiffs can avoid dismissal of the claim against Idahoan Foods.

### C.  Allegations Regarding Idahoan Foods' Agreement to Purchase Potatoes from United II Are Insufficient to State a Claim.

Plaintiffs' allegations that Idahoan Foods has an agreement to purchase potatoes from growers who belong to United II are insufficient to state a claim against Idahoan Foods for two

reasons.  First, at most, the Complaints plead that Idahoan is a beneficiary of the alleged conspiracy among the growers, not that it took any action to agree with potato growers that *they* would limit output or raise prices.  Second, the Complaints are insufficient to support a claim against Idahoan Foods because they allege no more than that Idahoan Foods entered into agreements that were in its economic interest and that would be perfectly lawful if entered into in any other context.  Such allegations do not lead to the inference that Idahoan Foods made any conscious commitment to the alleged grower conspiracy – in fact, the Complaints allege that Idahoan Foods took actions contrary to any such commitment.

### 1.  Allegations that Idahoan Foods Benefited from the Potato Growers' Purported Conspiracy Are Insufficient to State a Claim.

The mere fact that Idahoan Foods has a purchase agreement with members of United II is an insufficient basis to establish that Idahoan Foods joined the purported conspiracy among the growers and the cooperatives.  Under this Circuit's precedent, an ordinary commercial agreement that merely provides the terms upon which the parties will deal with one another during the course of the relationship is an insufficient basis to link a purchaser from an alleged price fixing cartel with the cartel, even if it is commercially beneficial to that purchaser.  *See Rick-Mik Enters.*, 532 F.3d at 976 ("ordinary sales contract" insufficient to link a defendant to a price-fixing conspiracy).  Because Plaintiffs have not pled facts that Idahoan and the other Defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective," they cannot prevail.  *49er Chevrolet, Inc. v. Gen. Motors Corp.*, 803 F.2d 1463, 1467 (9th Cir. 1986); *see also Person v. Google, Inc.*, 2007 U.S. Dist. LEXIS 22499, * 17 (N.D. Cal. Mar. 16, 2007) (following *49er Chevrolet* and granting Rule 12(b)(6) motion).  In other words, someone purchasing from a cartel cannot be held liable for the cartel's activity, even if that activity benefits the purchaser.  This conclusion is consistent with the broader rule that there is no

presumption that a defendant is "an implicit participant in a conspiracy simply because the party receives some benefit from the conspiracy's actions."  *Imperial Constr. Mgmt. v. Laborers Union Int'l*, 729 F. Supp. 1199, 1210 (N.D. Ill. 1990).

Plaintiffs' allegations regarding Idahoan Foods' agreement with United II, while repeated often, never go beyond the assertion that the agreement "enabled potato growers to offload surplus potatoes and further reduce supplies and thereby further facilitated and contributed to the price-fixing scheme alleged herein."  DP Compl. ¶ 118, IP Compl. ¶ 131; *see also* DP Compl. ¶¶ 124, 280, 315; IP Compl. ¶¶ 158, 297, 328.  Any sales agreement with any purchaser, however, by definition would have allowed growers to "offload" (e.g., sell) potatoes (surplus or otherwise) and thus would have reduced the availability of potatoes to other buyers.  Nevertheless, as discussed above, an ordinary purchase agreement is insufficient to link a purchaser to a cartel. *See, e.g.*, *Rick-Mik Enters.*, 532 F.3d at 976; *49er Chevrolet, Inc.,* 803 F.2d at 1467; *In re Vitamin C Antitrust Litig.*, 584 F. Supp. 2d 546 (S.D.N.Y. 2008) (granting motion to dismiss two defendants from a different level in the distribution chain than the other defendants, finding the complaint failed to allege facts sufficient to link these entities to the alleged horizontal conspiracy between manufacturers).  Accordingly, Idahoan Foods did not become part of any purported illegal conspiracy by entering into this purchase agreement.

### 2.   Allegations Regarding Idahoan Foods' Purchase Agreement with Growers Are Insufficient to State a Claim.

Moreover, Idahoan Foods' purchase agreement with United II is not circumstantial evidence of any participation in this purported conspiracy.  Indeed, Plaintiffs specifically plead that the agreement in question, and the underlying vertical integration facilitated by Idahoan Foods' purchase agreement, is presumptively procompetitive.  As noted above, "[p]roviding too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the

plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery." *Kesler Enters.,* 2010 U.S. Dist. LEXIS 118742 at * 7 (citation omitted).

At most, Plaintiffs' allegations show an integrated joint venture engaged in potato purchasing and processing. Vertical integration is presumptively procompetitive: "At least unless a company possesses market power in the relevant market, vertical integration and exclusive vertical contracts are not anti-competitive; on the contrary, such arrangements are presumptively procompetitive." *Cablevision Sys. Corp. v. FCC*, 597 F.3d 1306, 1325 (D.C. Cir. 2010) (quotation omitted); *see also Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 882 (2007) (recognizing the pro-competitive effects of vertical relationships); *In re Wholesale Grocery Prods. Antitrust Litig.*, 722 F. Supp. 2d 1079, 1091 (D. Minn. 2010) ("'[o]ther combinations, such as mergers, joint ventures, and various vertical agreements, hold the promise of increasing a firm's efficiency and enabling it to compete more effectively' and, as such, 'are judged under a rule of reason, an inquiry into market power and market structure designed to assess the combination's actual effect.'" (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984))). The Complaints concede that the sale of potatoes to Idahoan Foods has procompetitive benefits: the creation of a more efficient broader processing network that gives more convenient access to markets, allowing better vertical integration of production (e.g., more efficient use of surplus potatoes), and more efficient production operations. DP Compl. ¶¶ 122-23, 126-27, 317-18, 321. As the Complaints plead in quoting from Idahoan Foods' website, Idahoan Foods' "potato processing plants and nationally recognized retail, foodservice, and warehouse club brands of products … along with its close relationship with the grower cooperative, allow Idahoan Foods to deliver superior quality and value to its customers." DP Compl. ¶ 127, *cf*. IP Compl. ¶ 156.

Both the law and the facts pled in the Complaints thus belie any assertion that Idahoan Foods' agreement to purchase potatoes from United II is anticompetitive. "On a motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is 'plausible' in light of basic economic principles." *William O. Gilley Enters., Inc. v. Atl. Richfield Co*., 588 F.3d 659, 662 (9th Cir. 2008) (citing *Twombly,* 550 U.S.at 556). Here, where basic economics are at least as consistent with procompetitive conduct as with an illegal conspiracy, Plaintiffs' allegations cannot lead to an inference that participation in an agreement that vertically integrates production is anticompetitive. To the contrary, the Supreme Court has made plain that an allegation of conduct "not only compatible with, but indeed … more likely explained by, lawful, unchoreographed free-market behavior" does not state a plausible claim of an antitrust violation sufficient to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 567)); *see also Ins. Brokerage*, 618 F.3d at 322-23 ("allegations of conspiracy are deficient if there are 'obvious alternative explanation[s]' for the facts alleged.").

Here, the Complaints specifically allege that Idahoan Foods' purchase agreement with the growers is consistent with increased efficiency, and contains no allegations sufficient to allow an inference that Idahoan Foods did anything to reduce its suppliers' output or increase its price. Accordingly, the Complaints themselves establish that Idahoan Foods had a justifiable reason for its purchase agreement with United II, and thus bar any inference that Idahoan Foods' actions violated Section 1 of the Sherman Act.

### D.  Allegations that Idahoan Foods Is a Production Joint Venture Owned by Two Other Defendants Are Insufficient to State a Claim.

Plaintiffs' allegations that Idahoan Foods is owned by two of the other Defendants (R.D. Offutt and United II) likewise does not allow their claim against Idahoan Foods to survive. As a matter of state corporate law, it is clear that Idahoan Foods is not imputed with the actions of its

owners. *See Wheaton Equip. Co. v. Franmar, Inc.*, 2009 U.S. Dist. LEXIS 127456 (D. Idaho Feb. 4, 2009); *Vanderford Co., Inc. v. Knudson*, 165 P.3d 261 (Idaho 2007). The fact that this case was brought under the Sherman Act does not change that result.

Under the Sherman Act, to determine whether a conspiracy was created, "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act." *Copperweld Corp*, 467 U.S. at 771. This is so because they have a complete unity of interest. *Id.* However, the converse is not true – a subsidiary does not become a member of an illegal conspiracy simply because one of its owners purportedly participated. This is precisely the argument rejected by the Tenth Circuit in *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 (10th Cir. 1999):

> Plaintiffs wish to extend *Copperweld* to hold that a subsidiary and its parent . . . can be considered one entity for all § 1 purposes, and either one can be liable for conspiring to restrain trade, even where there is no evidence that both were involved in the challenged conduct. We reject this extension. Despite *Copperweld*'s expansive language about the economic unity of a parent and subsidiary, the [Supreme] Court held only that "the coordinated activity" of a parent and subsidiary must be viewed as that of a single enterprise for § 1 purposes . . . . [W]e decline to be the first court to interpret *Copperweld dicta* in the expansive way plaintiffs wish.

(citing *Bellsouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 719 F. Supp. 1551, 1568 (S.D. Fla.1988), *rev'd on other grounds*, 999 F.2d 1436 (11th Cir. 1993) (other internal citations omitted)). Last year, the Third Circuit, too, rejected this argument in granting a Rule 12(b)(6) motion to dismiss:

> Contrary to plaintiffs' suggestion, however, it does not follow from *Copperweld* that subsidiary entities are automatically liable under § 1 for any agreements to which the parent is a party. As a matter of well-settled common law, a subsidiary is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship. *See* 1 William Meade Fletcher, Cyclopedia of Law of Private Corporations § 33, at 89 (perm. ed. rev.vol.2006) (observing that "the mere fact that there exists a parent-subsidiary relationship between two corporations [does not] make the one liable for the torts of its affiliates"); *see also Burks v. Lasker*, 441 U.S. 471, 478 (1979) ("Congress

> has never indicated that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute."). As plaintiffs allege no other basis for imputing § 1 liability to defendant entities that are not plausibly alleged to be directly liable – that is, are not plausibly alleged to have themselves entered into unlawful agreements – the antitrust claims against these entities must fail.

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010); *see also In re Fla. Cement & Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 108528 (S.D. Fla. Oct. 12, 2010). *Cf. In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 689 (E.D. Pa. 2009) (holding parent corporation not liable for actions of subsidiary absent independent anticompetitive action on part of parent and granting Rule 12(b)(6) dismissal because allegations amounted to nothing more than of a typical parent/subsidiary relationship). Plaintiffs' allegations are insufficient to impose liable liability on Idahoan Foods for the purported actions of its parent companies.

### E.  If the Grower Defendants Are Entitled to Capper-Volstead Immunity, Idahoan Foods Cannot Have Violated the Sherman Act.

Finally, Idahoan Foods incorporates herein by reference the arguments of the Motions to Dismiss Based on the Capper-Volstead Act and Related Statutes and to Dismiss the Indirect Purchasers' Claims of United Potato Growers of Idaho, Inc.; United Potato Growers of America, Inc.; United II Potato Growers of Idaho, Inc.; Albert Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Michael Cranney; Keith Cornelison; Cornelison Farms, Inc.; Snake River Plains Potatoes, Inc.; Lance Funk; and Raybould Brothers Farms, LLC, which show that the cooperatives in question were entitled to Capper-Volstead immunity in this case. If these Defendants' alleged conduct is not actionable under § 1 or state antitrust law, then Plaintiffs' entire claims fail. Idahoan Foods clearly cannot be held liable if all it did was buy potatoes from a ***lawful*** combination of growers.

**IV.     Conclusion**

For the forgoing reasons, the Direct and Indirect Purchasers' Complaints against Idahoan

Foods should be dismissed in their entirety.


Dated this 18th day of March, 2011.


EBERLE, BERLIN, KADING, TURNBOW &
MCKLVEEN, CHARTERED


_____/s/ Neil D. McFeeley_____
Neil D. McFeeley

James A. Wilson
**VORYS, SATER, SEYMOUR AND PEASE LLP**


Attorneys for Defendant Idahoan Foods, LLC

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of March, 2011, I electronically filed the

foregoing Memorandum in Support of Motion to Dismiss with the Clerk of the Court using the

CM/ECF system which sent a Notice of Electronic Filing to all counsel of record.


                                          /s/ James A. Wilson
                                Attorneys for Defendant Idahoan Foods, LLC