James S. Lowrie
    jlowrie@joneswaldo.com
Andrew G. Deiss
    adeiss@joneswaldo.com
Billie J. Siddoway (ISB# 6628)
    bsiddoway@joneswaldo.com
JONES WALDO HOLBROOK & MCDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, UT 84101
Telephone: (801) 521-3200
Facsimile: (801) 328-0537

Steven B. Andersen (ISB #2618)
    sandersen@hollandhart.com
HOLLAND & HART LLP
101 S Capital Boulevard, Suite 1400
Boise, ID  83701-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

James E. Hartley
    jhartley@hollandhart.com
HOLLAND & HART LLP
555 Seventeenth St., Suite 3200
Denver, CO  80201-8749
Telephone: (303) 295-8000
Facsimile: (303-295-8261

Donald M. Barnes
    dbarnes@porterwright.com
Salvatore A. Romano
    sromano@porterwright.com
PORTER WRIGHT
1919 Pennsylvania Ave, N.W., Ste 500
Washington, D.C. 20006
Telephone: (202) 778-3056
Facsimile: (202) 778-3063

*Counsel for United Potato Growers of Idaho, Inc.; United Potato Growers of America, Inc.; United II Potato Growers of Idaho, Inc.; Albert Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Michael Cranney; Keith Cornelison; Cornelison Farms, Inc.; Snake River Plains Potatoes, Inc.; Lance Funk; and Raybould Brothers Farms, LLC*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION | Case No. 4:10-md-02186-BLW |
| THIS DOCUMENT RELATES TO: | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST CERTAIN DEFENDANTS AND DEFENDANT ASSOCIATIONS** |
| *Brigiotta's v. United Potato Growers of Idaho, Inc., et al.* | Case No. 4:10-cv-307 |
| *Simon v. United Potato Growers of Idaho, Inc., et al.* | Case No. 4:10-cv-520 |
| *Vander Heiden, et al v. United Potato Growers of America, Inc., et al.* | Case No. 4:10-cv-546 |
| *Rizzo, et al. v. United Potato Grower of America, Inc., et al.* | Case No. 4:10-cv-576 |

967774\10

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................2

II.    PROCEDURAL HISTORY ....................................................................2

III.   ARGUMENT ........................................................................................4

     A.    THE CLAIMS ASSERTED AGAINST ALL DEFENDANTS IN *SIMON*, *HEIDEN* AND *RIZZO* SHOULD BE DISMISSED FOR IMPROPER VENUE .................................................................................................4

         1.   VENUE IS NOT ESTABLISHED BY SECTION 4 OF THE CLAYTON ACT. ..........................................................4

         2.   VENUE IS NOT PROPER UNDER SECTION 12 OF THE CLAYTON ACT. ..........................................................6

         3.   VENUE IS NOT PROPER UNDER THE GENERAL VENUE STATUTE. ...............................................................7

     B.    THE DEFENDANTS MOVE TO DISMISS THE *SIMON*, *HEIDEN* AND *RIZZO* CLAIMS FOR LACK OF PERSONAL JURISDICTION ...........................10

         1.   THE TRANSFEROR DISTRICTS LACK PERSONAL JURISDICTION OVER WADA, CRANNEY, CORNELISON AND FUNK. .............................................10

         2.   THE CORPORATE DEFENDANTS ASSERT THE DEFENSE OF LACK OF PERSONAL JURISDICTION IN THE TRANSFEROR DISTRICTS. ..........................................................13

     C.    PLAINTIFFS HAVE NOT IDENTIFIED ANY UNLAWFUL AGREEMENT OR OVERT ACTION TO SUPPORT A CLAIM AGAINST UNITED II. ..........................................................................15

     D.    THE PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTUAL ALLEGATIONS TO STATE A CLAIM AGAINST MANY DEFENDANTS ........17

         1.   PLEADING AN ANTITRUST CLAIM REQUIRES MORE THAN CONCLUSORY ALLEGATIONS, COLLECTIVE REFERENCES, OR MERE AFFILIATION .................................................................18

         2.   A RECITATION OF THE ALLEGATIONS EXPOSES THE INSUFFICIENCY OF THE PLAINTIFFS CLAIMS. ..............................................19

         3.   WHEN THE PLEADING STANDARDS ARE APPLIED TO THE ALLEGATIONS, THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST THESE DEFENDANTS ..............................................23

IV.   CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) .......... 8, 14

*Aro Mfg. Co. v. Automobile Body Research Corp.,* 352 F.2d 400 (1st Cir. 1965) ........................ 5

*Boschetto v. Hansing,* 539 F.3d 1011 (9th Cir. 2008) ................................. 10

*Cablevision Sys. Corp. v. FCC*, 597 F.3d 1306 (D.C. Cir. 2010) ................................. 16

*City of Chicago v. Int'l Coll. of Surgeons*, 552 U.S. 156 (1997) ................................ 8

*Cornelius v. DeLuca*, 709 F. Supp. 2d 1003 (D. Idaho 2010) ..................................... 11

*Daniel v. Am. Board of Emergency Medicine*, 428 F.3d 408 (2d Cir. 2005) ....................... 6, 7, 14

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ............................ 8

*Expoconsul Int'l, Inc. v. A/E Systems, Inc.*, 711 F. Supp. 730 (S.D.N.Y. 1989) ........................... 5

*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948 (S.D. Cal. 1996) .................................... 18, 23

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ..................... 14

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ................................................ 5, 6

*Jackson v. BellSouth Telecomm.*, 372 F.3d 1250 (11th Cir. 2004) ................................. 16, 18, 23

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2006) ...................................... 19, 23, 24, 25

*King v. Russell*, 963 F.2d 1301 (9th Cir. 1992) ............................................... 8

*Kline v. Coldwell Banker & Co.*, 508 F.2d 226 (9th Cir. 1974) ...................................... 19, 23, 24

*Kohler Co. v. Titon Ind., Inc.*, 948 F. Supp. 815 (E.D.Wisc. 1996) ............................... 11

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ............................ 9

*Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49 (7th Cir. 1996) ..................................... 11

*Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001) ........................................... 18, 23

*Met. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ..................................... 11

*Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491 (9th Cir. 1979) ........................... 4

*Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159, WL 1909678 (7th Cir. 2000) ....................... 14

*Sunkist Growers, Inc. v. Winckler & Smith Citrus Prod. Co.*, 370 U.S. 19 (1962) ..................... 15

*Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1122 (D. Idaho 2009) ............................ 12

## FEDERAL STATUTES

28 U.S.C. § 1391 ........................................................................... 4, 7, 8, 9

28 U.S.C. § 1404 ............................................................................... 9

28 U.S.C. § 1407 ............................................................................... 3, 9

Clayton Act, Section 12 (15 U.S.C. § 22) ......................................................... passim

Clayton Act, Section 4 (15 U.S.C. § 15) .......................................................... 4, 5, 6

Clayton Act, Section 6 (15 U.S.C. § 17) ........................................................... 18

Cooperative Marketing Act of 1926, 7 U.S.C. § 455 (1926) ........................................ 19

Sherman Act, Section 1, 15 U.S.C. § 1 ...................................................................... 5

U.S. Const. amend. V ................................................................................................... 11

U.S. Const. amend. XIV ......................................................................................... 11, 15

**STATE STATUTES**

Calif. Civ. Pro. § 410.10 .............................................................................................. 11

Vt. Stat. tit. 12 § 913 .................................................................................................... 11

Wisc. Stat. §§ 801.05 ................................................................................................... 11

**FEDERAL RULES**

Federal Rules of Civil Procedure 4 ...................................................................... 10, 14, 15

**OTHER AUTHORITIES**

Robert A. Ragazzo, *Transfer and Choice of Federal Law: The Appellate Model*, 93 Mich.
     L. Rev. 703 (1995) .................................................................................................. 10

Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), Defendants United Potato Growers of America, Inc. ("UPGA"); United Potato Growers of Idaho, Inc. ("UPGI"); United II Potato Growers of Idaho, Inc. ("United II"); Albert Wada; Wada Farms, Inc. ("Wada Farms"); Wada Farms Potatoes, Inc. ("Wada Potatoes"); Wada-Van Orden Potatoes, Inc. ("Wada Van Orden"); Wada Farms Marketing Group, LLC ("Wada Marketing"); Michael Cranney; Keith Cornelison; Cornelison Farms, Inc. ("Cornelison Farms"); Snake River Plains Potatoes, Inc. ("Snake River"); Lance Funk; and Raybould Brothers Farms, LLC ("Raybould Brothers") (the "defendants"), by and through their counsel of record, respectfully submit this memorandum in support of their *Motion to Dismiss Claims Against Certain Defendants and Defendant Associations*.  By this *Motion*, the defendants seek dismissal of all of the claims asserted against them in:  *Heiden,* Case No. 4:10-cv-546; and *Rizzo,* Case No. 4:10-cv-576; and *Simon*, Case No. 4:10-cv-520; and seek dismissal of some of the claims asserted against them in *Brigiotta's*, Case No. 4:10-cv-307 (collectively the "Related Actions").[1]

---

[1]   Plaintiffs have not served the defendants, as defined above, in the following actions:  *Florez v. Idahoan Foods, LLC*, Idaho Case No. 10-cv-583, N.D. Cal. Case No. 10-cv-3984 (filed 9/3/10) and *Marvilla v. United Potato Growers of Idaho, Inc.*, Idaho Case No. 10-cv-575, N.D. Cal. Case No. 10-cv-3954 (filed 9/2/10).  The defendants have not appeared in those actions.  The defendants do not waive and expressly reserve their right to assert all defenses available to them in the *Florez* and *Marvilla* cases, including but not limited to the right to move for dismissal of the actions for insufficient and untimely service of process pursuant to Federal Rules of Civil Procedure 4(m) and 12(b)(4) and (5), lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and improper venue under Federal Rule of Civil Procedure 12(b)(3).  To the extent the *Florez* and *Marvilla* plaintiffs have not complied with Rule 4(m), that Rules authorizes the court – on motion or on its own after notice to the plaintiff – to dismiss the actions.  To the extent the *Florez* and *Marvilla* plaintiffs, who have not been identified as plaintiffs in the consolidated indirect purchaser's complaint, are beneficiaries of that complaint, they should also be bound by the rulings directed at that complaint.

For improper venue and lack of jurisdiction, the above-named defendants seek dismissal of all claims asserted against them in the following actions: *Simon*, Case No. 4:10-cv-520; *Heiden,* Case No. 4:10-cv-546; and *Rizzo,* Case No. 4:10-cv-576 (collectively the "IP Actions").

Because the plaintiffs have failed to state a claim for which relief may be granted, United II, Raybould Brothers, Lance Funk, Snake River, Cornelison Farms, Keith Cornelison, Michael Cranney, Wada Marketing, Wada Van Orden, Wada Potatoes, and Wada Farms seek dismissal of the claims asserted against them in all of the Related Actions.

## I.      INTRODUCTION

The plaintiffs, particularly the indirect purchaser plaintiffs, have overreached.  In alleging that the UPGA and UPGI cooperatives took a pre-harvest rather than a post-harvest approach to price improvements, the plaintiffs have asserted treble damages claims against farmers who were clearly trying to comply with the legal framework for the formation and operation of farmer cooperatives.  The plaintiffs have not only sued farming businesses, but they have also sued farmers in their individual capacities.  And the claims have been filed in jurisdictions with which none of these defendants have contacts.  With the exception of the action originally lodged in this Court, venue is improper and the courts lack personal jurisdiction.  Dismissal of the IP Actions is appropriate.  Next, United II has no relation to the alleged supply management efforts, and the claims against it should be dismissed.  Finally, the claims against many of the defendants lack any factual allegation of wrongdoing and should also be dismissed.

## II.      PROCEDURAL HISTORY

1.      On June 18, 2010, Brigiotta's Farmland Produce and Garden Center, Inc. (the "DP plaintiff") filed an action in the U.S. District Court for the District of Idaho, Idaho Case No. 4:10-cv-307 (the "DP Action" or "*Brigiotta*").

2.      An indirect purchaser filed a tag-along action in the Central District of California. *Simon*, Idaho Case No. 4:10-cv-520, C.D. Cal. Case No.  10-cv-4647 (filed 6/18/10) (referred to as *"Simon"*).

3.      Indirect purchaser plaintiffs filed two actions in the Northern District of California.  *Marvilla*, Idaho Case No. 10-cv-575, N.D. Cal. Case No. 10-cv-3954 (filed 9/2/10) (referred to as "*Marvilla*"); *Florez*, Idaho Case No. 10-cv-583, N.D. Cal. Case No. 10-cv-3984, (filed as 9/3/10) (referred to as "*Florez*").  As stated in footnote 1, the *Marvilla* and *Florez* actions have not been timely served upon the defendants.

4.      Indirect purchaser plaintiffs filed a fourth indirect purchaser complaint in the Eastern District of Wisconsin.  *Heiden,* Case No. 4:10-cv-546, E.D. Wisc. Case No. 10-cv-851, (filed 9/28/10) (referred to as "*Heiden*").

5.      A fifth indirect purchaser complaint was filed in the District of Vermont.  *Rizzo,* Idaho Case No. 4:10-cv-576, Vermont Case No. 10-cv-244 (filed 10/14/10) (referred to as "*Rizzo*").

6.      On October 13, 2010, the United States Judicial Panel on Multidistrict Litigation ("MDL") transferred *Simon* to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

7.      On October 25, 2010, the MDL transferred *Marvilla, Florez, Heiden* and *Rizzo* to this Court pursuant to a Conditional Transfer Order, made final by the MDL's Order of November 2, 2010.

8.      The DP plaintiff filed its *First Amended Class Action Complaint* on December 13, 2010 (the "DP Complaint").

9.      On February 11, 2011, the indirect purchaser plaintiffs (the "IP plaintiffs") collectively submitted their *First Amended Class Action Complaint* (the "IP Complaint").

10.      By this *Motion*, the defendants move the Court to dismiss the claims asserted against individual defendants on the basis of improper venue, lack of personal jurisdiction, and failure to sufficiently plead a claim for relief.  This *Motion* supplements joint motions to dismiss the DP Complaint and the IP Complaint, filed concurrently herewith.[2]

## III.   ARGUMENT

### A.      THE CLAIMS ASSERTED AGAINST ALL DEFENDANTS IN *SIMON*, *HEIDEN* AND *RIZZO* SHOULD BE DISMISSED FOR IMPROPER VENUE

Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, the defendants move the Court to dismiss for improper venue the actions filed in the Central District of California, the Eastern District of Wisconsin and the District of Vermont (the "Transferor Districts").  It is a plaintiff's burden to establish venue as to each defendant.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 495 (9th Cir. 1979).  The IP plaintiffs rely on the venue provisions of Section 4 of the Clayton Act (15 U.S.C. § 15), Section 12 of the Clayton Act (15 U.S.C. § 22), and the general venue provision of the Judicial Code (28 U.S.C. § 1391).[3]  However, these provisions do not authorize venue as to any of the defendants.

### 1.      Venue Is Not Established by Section 4 of the Clayton Act.

Venue is not properly founded on the Clayton Act.  Section 4 of the Clayton Act authorizes venue "in any district court of the United States in the district in which the defendant

---

[2]   The *Memorandum in Support of the Motion to Dismiss Based on the Capper-Volstead Act and Related Statutes*, filed concurrently herewith, is referred to as the *Capper-Volstead Memorandum*.

[3]   IP Compl. ¶ 9.

resides or is found or has an agent, without respect to the amount in controversy. . ." 15 U.S.C. § 15. None of those circumstances are present here.

The defendants are not residents, inhabitants or found in any of the Transferor Districts. A defendant "resides" in a district where it is an "inhabitant." *Aro Mfg. Co. v. Automobile Body Research Corp.,* 352 F.2d 400, 404 (1st Cir. 1965). For a corporation, being an "inhabitant" of a district is synonymous with being incorporated in that district. *See Expoconsul Int'l, Inc. v. A/E Systems, Inc.*, 711 F. Supp. 730, 732-33 (S.D.N.Y. 1989). To be "found" in a district means a defendant must be doing business within the district. *Id*. at 255.

According to the IP Complaint, Albert Wada, Michael Cranney, Keith Cornelison and Lance Funk (the "Individual Defendants") are all citizens or residents of the state of Idaho.[4] UPGA is incorporated and maintains its business in Utah.[5] The defendants incorporated and having their principal place of business in Idaho include: UPGI, United II, Wada Farms, Wada Potatoes, Wada Van Orden, Wada Marketing, Cornelison Farms, Snake River, and Raybould Brothers.[6] The IP Complaint does not make any allegation of local activity by an officer or agent of any defendant which would allow it to be found in any of the Transferor Districts. There is, therefore, no factual support for venue under Section 4 of the Clayton Act.

Moreover, Section 4 of the Clayton Act is not available to the IP plaintiffs. The benefits of this section are limited to "any person who shall be injured in his business or property." 15 U.S.C. § 15. In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the ultimate purchasers of concrete blocks alleged a conspiracy under Section 1 of the Sherman Act and asserted the right to relief under Section 4 of the Clayton Act. *Id*. at 726-27. The Supreme Court held: "the

---

[4]   IP Compl. ¶¶ 66, 96, 100, 112.

[5]   IP Compl. ¶ 29.

[6]   IP Compl. ¶¶ 38, 44, 61-64, 94, 104, 123.

- 5 -

overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property' within the meaning of the section [4]."  *Id*. at 729.  As indirect purchasers, the IP plaintiffs in this case have not been injured in their business or property.  Thus, they cannot benefit from the Section's venue provision.  For this additional reason, venue is not proper under Section 4 of the Clayton Act.

### 2.  Venue Is Not Proper under Section 12 of the Clayton Act.

Section 12 of the Clayton Act authorizes venue in a judicial district where a corporate defendant (1) is an inhabitant, (2) is found, or (3) transacts business.  15 U.S.C. § 22.  As discussed above, none of the moving corporate defendants is an inhabitant of or found in any of the Transferor Districts.  Thus, IP plaintiffs must allege facts that show the corporate defendants "transact business" in the districts in which IP plaintiffs brought the actions.  15 U.S.C. § 22.

To "transact business" requires "doing business or carrying on business of any substantial character."  *Daniel v. Am. Board of Emergency Medicine*, 428 F.3d 408, 428 (2d Cir. 2005).  In this case, the IP plaintiffs have not alleged that the corporate defendants conducted business of a substantial character in any of the Transferor Districts.  *See id.* at 430 (recognizing that business activities within a state are insufficient, as the Clayton Act only authorizes suit in *the district* where the corporation transacts business).  *Id*. at 430.

Although insufficient to establish venue, the IP plaintiffs have made two allegations related to the *states* of Wisconsin and California.  First, the IP plaintiffs allege that UPGA "includes" Kern Produce Shippers of California and United Potato Growers of Wisconsin. [7] Second, they allege that "Wada Farms" has agreements with unnamed entities in California and

---

[7]   IP Compl. ¶¶ 33, 232.  These allegations could not be resuscitated by a more specific pleading.  Kern Produce Shippers is in Edison, California, which is in the Eastern District.  United Potato Growers of Wisconsin is located in Stevens Point, which is in the Western District of Wisconsin.

Wisconsin.[8]  Neither allegation is specific to the Central **District** of California or the Eastern

**District** of Wisconsin, as is required.  Moreover, neither allegation represents the substantial

transaction of business required to establish venue.  *See Daniel*, 428 F.3d at 429-30 (denying

venue under the Clayton Act where the defendant certified physicians and accepted fees from

physicians in the state, but did not own or lease real estate; maintain an office, telephone, bank

account or mailing address; employ an agent; or advertise in the district).  The IP plaintiffs'

allegations are not enough to establish venue under the Clayton Act.

### 3.  Venue Is Not Proper Under the General Venue Statute.

The general venue statute of the Judicial Code does not establish venue on the facts

alleged here.  This statute provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship
> may, except as otherwise provided by law, be brought only in (1) a judicial
> district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that is the subject of
> the action is situated, or (3) a judicial district in which any defendant may be
> found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  "For purposes of venue under this chapter, a defendant that is a corporation

shall be deemed reside in any judicial district in which it is subject to personal jurisdiction at

the time the action is commenced."  28 U.S.C. § 1391(c).

Venue cannot be established under any of these general venue alternatives.  The first

clause of Section 1391(b) authorizes venue in a judicial district where any defendant resides, if

all defendants reside in the same State.  According to the IP Complaint, plaintiffs have sued

parties residing in Idaho, Utah, Minnesota, North Dakota, and other locations.[9]  Because the

---

8   IP Compl. ¶ 70.  "Wada Farms" is a defined term referring collectively to Wada Farms,
    Wada Farms Potatoes, and Wada-Van Orden Potatoes.  *See* IP Compl. ¶ 65.

9   *See, e.g.,* IP Compl. ¶¶ 29, 38, 49, 127, 146.

defendants do not all reside within a single district, venue is not proper under clause (1).  The fact that some defendants are corporations does not change this conclusion.  Section 1391(c) expands the residence of a corporation to any district where it is subject to personal jurisdiction.  Some courts hold that the Clayton Act confers nationwide personal jurisdiction over corporate defendants.  *See, e.g., Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1179-80 (9th Cir. 2004).  The unincorporated defendants, however, are not subject to this provision, and the IP Complaint establishes that their residences are in the state of Idaho and in Canada.  Thus, the defendants do not all reside in California, or in Wisconsin, or Vermont, and venue cannot be established in the Transferor Districts under 28 U.S.C. § 1391(b)(1).[10]

In order to establish venue under the second clause, the IP plaintiffs have the burden of showing that a "substantial part of the events or omissions giving rise to the claim occurred" in the Transferor Districts.  28 U.S.C. § 1391(b)(2).  The events supporting venue must form the basis of the federal claim, and not merely a pendant state claim.  *See City of Chicago v. Int'l Coll. of Surgeons*, 552 U.S. 156, 164-65 (1997).  The presence of a plaintiff in the judicial district is not sufficient to establish that a substantial part of the events occurred in that district.  *King v. Russell*, 963 F.2d 1301 (9th Cir. 1992).  Moreover, an agreement with a resident of the forum is insufficient to establish venue where the agreement was to be performed in another jurisdiction.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) (holding that substantial part of the events giving rise to a contract claim arose in the place of performance).

---

[10]   The corporate venue language of 28 U.S.C. § 1391(c) does not expand the definition of "reside" under the venue provisions of the Clayton Act, as the definition is limited by its terms to "venue under this chapter."

As discussed above, the IP plaintiffs allege no substantial events in the Transferor Districts, but merely assert that UPGA and "Wada Farms" have a connection that is vague to entities in California and Wisconsin.  The IP plaintiffs do not aver that these defendants acted within the Transferor Districts.  The IP plaintiffs have not identified any wrongful conduct forming a "substantial part" of their claims in the Central District of California, the Eastern District of Wisconsin or the District of Vermont.  Venue has not been established over any defendant under 28 U.S.C. § 1391(b)(2).

The third clause does not confer venue.  This provision only applies if there is no court in which venue would be proper.  The DP plaintiffs have asserted and the defendants have not contested venue in *Brigiotta*, lodged in the District of Idaho.  Because venue could be established in this district, the IP plaintiffs cannot rely on 28 U.S.C. § 1391(b)(3) to establish venue where any defendant may be found.

Neither the Clayton Act nor the general venue provision of the Judicial Code authorize venue in the Central District of California, the Eastern District of Wisconsin, or the District of Vermont.  The authority to transfer to another venue is limited in multidistrict litigation. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 41 (1998) (holding that "the statutory language of [28 U.S.C.] § 1407 precludes a transferee court from granting any § 1404(a) motion").  Accordingly, the Court should dismiss the claims asserted in the Transferor Districts against UPGA, UPGI, United II, Albert Wada, Wada Farms, Wada Potatoes, Wada Van Orden Potatoes, Wada Marketing, Michael Cranney, Keith Cornelison, Cornelison Farms, Snake River, Lance Funk, and Raybould Brothers.

**B.** **THE DEFENDANTS MOVE TO DISMISS THE *SIMON*, *HEIDEN* AND *RIZZO* CLAIMS FOR LACK OF PERSONAL JURISDICTION**

It is clear that Albert Wada, Michael Cranney, Keith Cornelison and Lance Funk are not subject to personal jurisdiction in the Transferor Districts.  However, a circuit split complicates the question of personal jurisdiction over the corporate defendants.  As discussed below, application of the appropriate precedent from the Transferor Districts provides inconsistent results as to the corporate defendants in the IP Actions.  Although it is customary in consolidated cases to apply the precedent of the transferee court when addressing federal questions, in these circumstances, such an approach is wasteful and inefficient.  *See* Robert A. Ragazzo, *Transfer and Choice of Federal Law: The Appellate Model*, 93 Mich. L. Rev. 703 (1995) (discussing challenges of applying the law of the transferee court).  The corporate defendants will potentially be required to defend actions in this Court, only to have the claims dismissed upon remand to the transferor court.  But there are no such inconsistencies in the law requiring dismissal of the Individual Defendants.

**1.** **The Transferor Districts Lack Personal Jurisdiction over Wada, Cranney, Cornelison and Funk.**

Personal jurisdiction is not proper in the Indirect Purchaser actions as to the Individual Defendants.  Plaintiffs bear the burden of proving that personal jurisdiction is appropriate.  *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008).  Plaintiffs may establish personal jurisdiction under federal statute or state statute.  *See* F.R.C.P. 4(k)(1)(A), (C).  The IP plaintiffs cannot, under either method, establish personal jurisdiction over the Individual Defendants.

In this instance, there is no factual statute authorizing jurisdiction over the Individual Defendants, and so the plaintiffs must rely on the state statutes of the Transferor Districts.  *See* F.R.C.P. 4(k)(1)(A).  The states of California, Wisconsin and Vermont have long-arm statutes

- 10 -

which extend personal jurisdiction to the breadth of the Due Process Clause of the Fourteenth Amendment.[11]  The pleaded facts do not, however, satisfy this due process requirement.

Wada, Cranney, Cornelison and Funk are not subject to general jurisdiction in the Transferor Districts.  As this Court has recognized, "general jurisdiction exists when a defendant's contact with the forum state approximates physical presence."  *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1010 (D. Idaho 2010) (requiring "substantial, continuous, and systematic contacts" with the forum).  The IP plaintiffs have not alleged any facts to establish that Wada, Cranney, Cornelison or Funk, all Idaho residents, have "substantial, continuous, and systematic contacts" with the states of California, Wisconsin or Vermont.  There is no basis for general jurisdiction over these parties.

The Transferor Districts do not have specific jurisdiction over Wada, Cranney, Cornelison or Funk.  Specific jurisdiction requires, at a minimum, allegations that: (1) the non-resident defendant has purposefully directed his activities or consummated some transaction with the forum or a resident thereof, or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws; (2) the claim arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e,* it must be reasonable.  *Id*. at 1011.

---

[11]  Calif. Civ. Pro. § 410.10 (authorizing jurisdiction on any basis not inconsistent with the state or federal constitutions); *Met. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (interpreting Vermont's long-arm statute, 12 Vt. Stat. tit. 12 § 913(b), as asserting jurisdiction "to the full extent permitted by the Due Process Clause"); *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996) (recognizing that Wisconsin's long-arm statute, Wisc. Stat. §§ 801.05, "merely codifies the federal due process requirements"). While federal due process is governed by the Fifth Amendment, the appropriate clause under which to analyze the application of a state long-arm statute is the Due Process Clause of the Fourteenth Amendment.  *Kohler Co. v. Titon Ind., Inc.*, 948 F. Supp. 815 (E.D. Wisc. 1996).

967774\10

The allegations of the IP Complaint do not support the exercise of specific jurisdiction. First, it fails to allege that Wada, Cranney, Cornelison or Funk transacted any business or purposefully availed themselves of the privilege of conducting business in California, Wisconsin or Vermont.  Second, there are no allegations that defendants engaged in any activities in California, Wisconsin or Vermont sufficient upon which to base a claim.  Third, it would be unfair and unreasonable to require these individuals to appear and defend themselves at trial in three separate jurisdictions where they have no relevant contacts.

Assuming the plaintiffs are able to meet their burden, then the third prong requires the defendants to present a compelling case that the exercise of jurisdiction would not be reasonable. *Wells Cargo, Inc. v. Transport Ins. Co.,* 676 F. Supp. 2d 1144, 1122 (D. Idaho 2009) (internal citations omitted).  To determine reasonableness, the Court should consider the following factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id*. at 1122 (internal citations omitted).

The factors weigh in favor of dismissal.  The burden upon defendants of appearing at concurrent trials in four separate jurisdictions will be heavy.  The Transferor Districts are in no measurably better position to apply the law, as the IP plaintiffs have asserted claims under the laws of twenty-three jurisdictions, which will necessarily require interpretation by extra-jurisdictional courts.  Furthermore, as the proposed class action involves plaintiffs from at least ten different states purporting to represent people from forty judicial districts, the selected venues do not represent any particular advantage of convenience or efficiency for the plaintiffs.

Of the factors, perhaps the most compelling are the interests of the alternative districts. The courts of California, Vermont and Wisconsin do not have the greatest interest in adjudicating this dispute.  All but one of the defendants reside in the state of Idaho.[12]  According to the IP Complaint, approximately one-third of domestic potatoes are grown in the state of Idaho, the founders of UPGI collectively account for 60% of the fresh potatoes produced in Idaho, and they account for 25% of the fresh potato market in the United States.[13]  While the competing forums may have an interest in protecting the potential class action consumers of their respective states, that interest does not compare with the importance of the potato industry to this state.  The reasonableness factors weigh heavily in favor of dismissal for lack of personal jurisdiction.

The Individual Defendants do not have minimum contacts with the Transferor Districts. Requiring them to appear in distant and less interested venues would not comport with principles of fair play and substantial justice.  Thus, the Court should dismiss the claims asserted against Albert Wada, Michael Cranney, Keith Cornelison and Lance Funk in the Central District of California, the Eastern District of Wisconsin, and the District of Vermont.

> ### 2.     The Transferor Districts Do Not Have Personal Jurisdiction over the Corporate Defendants.

As noted above, if these actions had not been consolidated in a multidistrict proceeding, the claims asserted in the Vermont Action would be dismissed for lack of personal jurisdiction according to the binding interpretations of the Second Circuit.  Due to a contrary interpretation, however, a motion to dismiss the California Action would likely be denied.

---

[12]   IP Compl. ¶¶ 38, 44, 61-64, 94, 104, 123.

[13]   IP Compl. ¶¶ 200, 207.

967774\10

These inconsistent outcomes arise from differing interpretations of the worldwide service of process provision of Section 12 of the Clayton Act.  15 U.S.C. § 22.  Plaintiffs may establish personal jurisdiction over corporate defendants by federal statute or by the law of the state of the Transferor District.  *See* F.R.C.P. 4(k)(1)(A) and (C).  Section 12 of the Clayton Act provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.  The Second Circuit Court of Appeals holds that "the extraterritorial service provision of Clayton Act Section 12 may be invoked to establish personal jurisdiction **only when the requirements of the section's venue provision are satisfied**."  *Daniel*, 428 F.3d at 424-25 (emphasis added).  *Accord GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) (holding that the statute's service clause rests on satisfaction of its venue provision).  *But see Action Embroidery Corp.*, 368 F.3d at 1179-80 ("under Section 12 of the Clayton Act, the existence of personal jurisdiction over an antitrust defendant does not depend upon there being proper venue in that court").  The Seventh Circuit Court of Appeals does not appear to have resolved the issue.  *See Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159, 2000 WL 1909678 *3 (7th Cir. 2000) (unpublished decision) (recognizing circuit split but dismissing on other grounds).

Accordingly, at least with respect to *Heiden*, the IP plaintiffs have the burden of proving that venue is proper under Section 12 of the Clayton Act before relying on its service of process provision to obtain personal jurisdiction over the corporate defendants.  *See* F.R.C.P. 4(k)(1)(C).  As discussed in Section A, above, the IP plaintiffs have not met their burden of establishing that venue is proper.

- 14 -

Alternatively, the IP plaintiffs may establish that personal jurisdiction over the corporate defendants is authorized by the long-arm statute of the forum state, as limited by the Due Process Clause of the Fourteenth Amendment.  *See* F.R.C.P. 4(k)(1)(A).  As discussed above, the IP Complaint does not demonstrate that the exercise of personal jurisdiction over defendants in the Transferor Districts would comply with due process.  The corporate defendants do not have minimum contacts with the Transferor Districts, and requiring appearance there would not comport with principles of fair play and substantial justice.

For these reasons, the defendants urge adoption of the Second Circuit's interpretation of the worldwide service provision of Section 12 of the Clayton Act and request dismissal of the claims asserted against them in the Transferor Districts for lack of personal jurisdiction.

## C.   PLAINTIFFS HAVE NOT IDENTIFIED ANY UNLAWFUL AGREEMENT OR OVERT ACTION TO SUPPORT A CLAIM AGAINST UNITED II.

United II, R.D. Offutt Co. ("RDO") and Idahoan Foods, LLC ("Idahoan") should not be named in this action.  United II is a cooperative association of potato growers.[14]  United II and RDO formed a joint venture, which acquired dehydration facilities operating as Idahoan.[15]  The Idahoan dehydration plants process potatoes supplied by United II and others.[16]

As discussed more fully in the *Capper-Volstead Memorandum*, Idahoan represents a classic vertical integration arrangement accomplished through vertical acquisitions and contracts involving an association of farmers.  Similar cooperative models have been upheld as lawful among other commodity groups.  *See, e.g., Sunkist Growers, Inc. v. Winckler & Smith Citrus Prod. Co.*, 370 U.S. 19, 20-21 (1962) (recognizing the vertical integration of citrus growers, their

---

[14]   *See* DP Compl. ¶ 28; IP Compl. ¶ 47.

[15]   *See* DP Compl. ¶¶ 28, 118, 120; IP Compl. ¶¶ 47, 131, 154.

[16]   *See* DP Compl. ¶ 28; IP Compl. ¶ 47.

- 15 -

packing houses, and a marketing agent in common).  Vertical integration is not inherently

anticompetitive.  *Cablevision Sys. Corp. v. FCC*, 597 F.3d 1306, 1325 (D.C. Cir. 2010)

(recognizing that vertical integration and vertical contracts "are presumptively procompetitive").

As discussed in separate memoranda submitted by RDO and Idahoan, the joint venture involving

United II does not give rise to antitrust liability.

The complaints do not allege that United II entered an agreement to fix prices or reduce

supply in violation of the Sherman Act, except in the most conclusory terms.  United II is

notably absent from the sections of the complaints which set out the alleged conspiratorial

activity.[17]  The complaints do not include United II in blanket allegations of wrongful conduct.[18]

Its absence is conspicuous.

Conclusory allegations, unwarranted deductions of facts or legal conclusions

masquerading as facts are not sufficient to require a party to defend an antitrust action.  *Jackson

v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004).  The only allegations that

implicate United II are entirely conclusory and unsupported, for example: "United II participated

in and facilitated the supply-restriction and price-fixing scheme alleged in this Amended

Complaint."[19]  Allegations of this type should be disregarded and cannot sustain an otherwise

insufficient claim.

Plaintiffs make other innocuous allegations concerning United II.  Plaintiffs allege that

the "joint venture enabled potato growers to offload surplus potatoes and further reduce supplies

---

17   *See* "Agreements and Overt Acts," IP Compl. ¶¶ 200-270; "The History and Operation of the
     Potato Cartel," DP Compl. ¶¶ 162-248.

18   *See, e.g.,* IP Compl. at ¶ 268; DP Compl. ¶ 246.

19   IP Compl. ¶ 45.  *See* DP Compl. ¶ 27.

and thereby further facilitated and contributed to the price fixing scheme."[20]  Stated differently, "Idahoan Foods enables its United II grower-owners to divert surplus potatoes to a dehydration operation while profiting from vertical integration."[21]  But these allegations fail to support a plausible claim.  United II purchased *existing* dehydration plants, resulting in the distribution of profits, if any, to include United II.[22]  Enabling farmers to participate in a greater share of the profits of their products through vertical integration is not an antitrust violation.

The plaintiffs ask the Court to require United II to defend itself from claims that are articulated in such general and conclusory terms that United II cannot even discern any wrongful conduct in which it was a participant.  At most, United II had a name similar to and some owners in common with UPGI.  Our antitrust laws do not subject an entity to liability by mere affiliation.  In fact, this is exactly the type of claim that courts have sought to prevent by requiring plaintiffs to plead facts sufficient to give rise to a plausible inference of illegality.  Failing the requisite pleading standard, the claims asserted against United II should be dismissed.

### D.   THE PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTUAL ALLEGATIONS TO STATE A CLAIM AGAINST MANY DEFENDANTS

While the complaints allege efforts by UPGA and UPGI to reduce the supply of potatoes, the complaints do not assert that any particular grower engaged in anticompetitive activity which would impose personal liability.  Plaintiffs rely on press releases and public statements from UPGA and UPGI without establishing any meaningful connection to other defendants.  According to the complaints, the purposes of UPGA and UPGI included the management of

---

[20]  DP Compl. ¶ 118; IP Compl. ¶ 131.

[21]  DP Compl. ¶¶ 123; IP Compl. ¶ 157.

[22]  *Id*.

potato supply to positively impact grower profits.[23]   Absent from these allegations are any facts substantiating wrongful conduct on the part of Raybould Brothers, Lance Funk, Snake River, Cornelison Farms, Keith Cornelison, Michael Cranney, Wada Marketing, Wada Van Orden, Wada Potatoes or Wada Farms (collectively "These Defendants").   The claims against These Defendants should be dismissed.

### 1.   Pleading an Antitrust Claim Requires More than Conclusory Allegations, Collective References, or Mere Affiliation.

The complaints assert claims not only against the cooperatives, but also against These Defendants.   As explained in the *Capper-Volstead Memorandum,* neither the members of the cooperatives nor the members and their cooperative can constitute a conspiracy or combination in violation of the antitrust laws.[24]   However, setting aside these protections, the plaintiffs have still failed to state a claim against These Defendants.   Before examining particular allegations, it is useful to review the pleading standards applicable to antitrust claims.

First, conclusory allegations of wrongful conduct are insufficient.   *Jackson*, 372 F.3d at 1263.

Second, referring to defendants collectively is insufficient.   *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing complaint alleging that "'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged").

Third, allegations which rely on use of the disjunctive are insufficient.   *See Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 962 (S.D. Cal. 1996).

---

[23]   *See, e.g.,* DP Compl. ¶¶ 14, 24; IP Compl. ¶¶ 36, 41.

[24]   Section 6 of the Clayton Act provides that farmers' cooperatives cannot "be held or construed to be illegal combinations or conspiracies in restraint of trade under the antitrust laws."   15 U.S.C. § 17.

Fourth, the pleadings must show more than mere membership or affiliation with an entity engaged or potentially engaged in price fixing.  *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 232 (9th Cir. 1974) (stating that although "the Association is itself a sort of continuing agreement by which the fixing of prices might be effectuated . . . [t]his does not mean . . . that every member of the Association, by reason of his membership alone, becomes a co-conspirator"); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2006).[25]

Fifth, alleging that a defendant is an officer or director is not enough to satisfy the requisite pleading standards.  *Kline*, 508 F.2d at 232.

Sixth, the dissemination or receipt of agricultural market information cannot form the basis of an antitrust claim.  *See* Cooperative Marketing Act of 1926, 7 U.S.C. § 455 (1926) (authorizing the exchange of information between farmers relating to past, present and prospective crop data and market information).

Finally, the pleadings must, for each defendant, "answer the basic question [of] who, did what, to whom (or with whom), where, and when."  *Kendall, 518* F.3d at 1048.

## 2.      A Recitation of the Allegations Exposes the Insufficiency of the Plaintiffs' Claims.

With these pleadings standards in mind, it is evident that the particular allegations against each of the These Defendants cannot support a claim against any of them.  Excluding statements which are wholly conclusory, the allegations against each of These Defendants are identified below.

---

[25]  The *Kline* and *Kendall* opinions are discussed more fully in the memorandum supporting the motion to dismiss the claims against Blaine Larsen, Larsen Farms, Driscoll Potatoes, and Rigby Produce.

**Raybould Brothers**.  The plaintiffs allege that Raybould Brothers "grows and sells fresh potatoes."[26]  According to the complaints, Raybould Brothers is a founding member of UPGI.[27]  Jeff Raybould, one of its owners, is purported to have been an original incorporator of UPGA.[28]

**Lance Funk**.  Mr. Funk is allegedly doing business as Lance Funk Farms, which is a potato grower.[29]  According to the complaints, Lance Funk Farms is "a founding member of UPGI."[30]

**Snake River**.  The plaintiffs allege that Snake River is a "producer that grows, packs, stores, and ships its own potatoes."[31]  Snake River is purportedly "a founding member of UPGI and a UPGA member."[32]  Snake River's chief executive offer is a member of the UPGA executive committee.[33]

**Cornelison Farms**.  Cornelison Farms allegedly grows, packages and ships fresh potatoes.[34]  According to the plaintiffs, in 2004, Keith Cornelison and other Idaho potato farms "discussed" how they could "curb production" and "boost prices."[35]  Cornelison Farms is said to be "a founding member of UPGI" and has "long advocated for collective action to reduce potato supplies."[36]

---

[26]  DP Compl. ¶ 112; IP Compl. ¶ 124.

[27]  DP Compl. ¶ 114; IP Compl. ¶ 126.

[28]  DP Compl. ¶¶ 114, 194; IP Compl. ¶¶ 126, 232.

[29]  DP Compl. ¶¶ 103-104; IP Compl. ¶¶ 112, 114.

[30]  DP Compl. ¶ 105; IP Compl. ¶ 114.

[31]  DP Compl. ¶ 98; IP Compl. ¶ 106.

[32]  DP Compl. ¶ 99; IP Compl. ¶ 107.

[33]  DP Compl. ¶ 99; IP Compl. ¶ 107.

[34]  DP Compl. ¶ 95; IP Compl. ¶ 95.

[35]  DP Compl. ¶¶ 40, 96, 167; IP Compl. ¶ 205.

[36]  DP Compl. ¶ 96; IP Compl. ¶ 98.

**Keith Cornelison**.  While the DP Complaint does not name Keith Cornelison as a defendant, he has been sued in his individual capacity by one or more of the IP plaintiffs.  In those actions, the IP plaintiffs have alleged no more than that Keith Cornelison "was an officer or director of Cornelison Farms" and "a founding member of UPGI."[37]

**Michael Cranney**.  Michael Cranney is allegedly doing business as Cranney Farms.[38] According to the complaints, Cranney Farms grows potatoes, sugar beets, corn, wheat and barley.[39]  The plaintiffs' claim that Michael Cranney is "a founding member of UPGI and one of the original incorporators of UPGA."[40]  In his capacity as a UPGA committee chairman, Cranney supposedly "reminded the attendees [of a UPGA Board meeting] that in 2008 United's direction is that all United members will reduce acreage by five percent off of 2007 plantings."[41] Though not attributed to Mr. Cranney, the report of the meeting stated: "Nonmembers will be urged to do the same."[42]

**Wada Marketing**.  The DP plaintiffs refer collectively to some defendants, including Wada Marketing.[43]  However, when the claims are parsed, the allegations as to Wada Marketing are few.  The complaints allege that Wada Marketing has offices in Idaho, Oregon and Texas.[44]

---

[37]  IP Compl. ¶ 96.

[38]  DP Compl. ¶ 91; IP Compl. ¶ 99.

[39]  DP Compl. ¶ 92; IP Compl. ¶ 101.

[40]  DP Compl. ¶¶ 93, 194; IP Compl. ¶ 103.

[41]  DP Compl. ¶ 290; IP Compl. ¶ 103.

[42]  DP Compl. ¶ 290; IP Compl. ¶ 306.

[43]  *See* DP Compl. ¶ 51.

[44]  DP Compl. ¶ 46; IP Compl. ¶ 76.

It purportedly "handles the marketing and sales for Wada Farms and Dole-label potatoes, onions, and sweet potatoes" pursuant to an exclusive marketing agreement with Dole.[45]

*Wada Van Orden*.  Disregarding allegations targeting defendants collectively, plaintiffs allege only that Wada Van Orden "is a corporation organized, existing, and doing business under the laws of Idaho with its offices and principal place of business located in Blackfoot, Idaho."[46]

*Wada Potatoes*.  Similarly, the complaints merely state that Wada Potatoes "is a corporation organized, existing, and doing business under the laws of Idaho with its offices and principal place of business located in Blackfoot, Idaho."[47]

*Wada Farms*.  "Wada Farms" is a defined term referring to multiple defendants.[48]  The allegations directed to the Wada Farms entity are limited.  The plaintiffs assert that Wada Farms "operates an irrigated farming enterprise in Southeastern Idaho growing fresh and process potatoes, seed and commercial wheat, corn, alfalfa, sugar beets, and hybrid canola seed" in six locations in three counties.[49]  Albert Wada is the former CEO and chairman of Wada Farms.[50] In an utterly conclusory fashion, it is alleged in one complaint that "Wada Farms, through Albert Wada, played a critical role in the formation of UPGI and UPGA and the implementation of the supply reduction conspiracy."[51]

*Conclusory Allegations*.  The complaints assert three categories of unsupported conclusions.  First, throughout their pleadings, plaintiffs assert that various defendants

---

45  DP Compl. ¶¶ 46-47; IP Compl. ¶¶ 76-77.

46  DP Compl. ¶ 32; IP Compl. ¶ 63.

47  DP Compl. ¶ 31; IP Compl. ¶ 62.

48  DP Compl. ¶ 33; IP Compl. ¶ 65.

49  DP Compl. ¶ 34; IP Compl. ¶ 68.

50  DP Compl. ¶ 37; IP Compl. ¶ 71.

51  DP Compl. ¶ 38.

"participated in the supply-restriction and price-fixing scheme alleged" in the complaints.[52]
Second, plaintiffs make blanket allegations, such as the long lists of individuals who allegedly
"signed on to the price fixing and capacity reduction scheme."[53]  Third, the pleadings contain
conclusory statements of ultimate issues, including the existence of principal-agent
relationships.[54]

### 3. When the Pleading Standards Are Applied to the Allegations, the Complaints Fail to State a Claim Against the Defendants.

The claims asserted against These Defendants are inadequate when considered in light of
the relevant pleading standards.

The conclusory statements and blanket allegations should be disregarded because they
make unsupported conclusions, refer to defendants collectively, and rely on use of the
disjunctive.  *Jackson*, 372 F.3d at 1263; *Magluta*, 256 F.3d at 1284; *Gen-Probe, Inc.*, 926 F.
Supp. at 960.

The allegations against Raybould Brothers and Lance Funk are nearly identical.  The
plaintiffs assert that these two defendants grew potatoes and were original members of UPGI.
As discussed above, a mere allegation of membership, without more, cannot support an antitrust
claim.  *Kline*, 508 F.2d at 232; *Kendall*, 518 F.3d 1042.  Missing from the complaints is any
assertion that Raybould Brothers or Lance Funk engaged in conduct inconsistent with antitrust
law.  In fact, there are no particular allegations that they entered an agreement to reduce their
potato supplies.  In other words, the pleadings fail to answer the questions of what these

---

52  *See, e.g.,* DP Compl. ¶¶ 30- 32, 45, 91, 94, 97, 103, 112; IP Compl. ¶¶ 45, 67, 79, 97, 102, 105, 113, 124.

53  DP Compl. ¶ 170; IP Compl. ¶ 208.  *See also* DP Compl. ¶ 246; IP Compl. ¶ 268.

54  *See, e.g.,* DP Compl. ¶¶ 50-51; IP Compl. ¶ 76, 143.

defendants did, with whom, where, and when. *Id*. The claims against Raybould Brothers and Lance Funk should be dismissed.

The allegations against Snake River are similarly deficient. In addition to alleging that Snake River grew potatoes and joined UPGI, the complaints state that Snake River's CEO served on a UPGA committee. Service as an officer or director is insufficient to support an antitrust claim (particularly where, as here, the service is not by the defendant, but its employee). *Kline*, 508 F.2d at 232. Accordingly, the claims against Snake River should be dismissed.

Keith Cornelison and Cornelison Farms are each alleged to be members of UPGI. The IP plaintiffs identify Keith Cornelison as a member, and the DP plaintiff identifies Cornelison Farms as a member. Either way, membership is not enough to support liability. The complaints allege that Keith Cornelison, as an officer of Cornelison Farms, advocated for collective activity among farmers, going so far as to attend a meeting to "discuss" possible collective action. As discussed in the *Capper-Volstead Memorandum*, members of the U.S. Congress have advocated for collective action among farmers. Mr. Cornelison's alleged statements in support of the formation of Capper-Volstead cooperatives does not implicate him for personal liability in the conspiracy the plaintiffs insufficiently allege. The claims asserted against him and against Cornelison Farms should be dismissed.

Michael Cranney is allegedly a cooperative member and incorporator. He also allegedly served as the chairman of a UPGA committee. As discussed above, his service alone does not subject him to personal liability. *Kline*, 508 F.2d at 232. In his capacity as the committee chairman, he is attributed with reminding cooperative members to reduce their acreage. At best, the plaintiffs allege that Cranney encouraged participation. These allegations fall short of alleging an agreement for purposes of antitrust liability.

- 24 -

Wada Marketing, Wada Van Orden, Wada Potatoes, and Wada Farms appear to have been sued only because of their association with Albert Wada.  There are no specific allegations that these entities were ever members of a cooperative or participated in collective activities to reduce acreage.  Indeed, there are no allegations that Wada Marketing, Wada Van Orden, or Wada Potatoes grew potatoes or had acres to reduce.  And, as with all of These Defendants, the pleadings do not adequately answer the questions of what these defendants did, with whom, where, and when.  *Kendall*, 518 F.3d 1042.  A shared name with Mr. Wada is not sufficient to subject these parties to litigation.  The Court should dismiss the claims asserted against Wada Marketing, Wada Van Orden, Wada Potatoes, and Wada Farms.

## IV.    CONCLUSION

For the reasons set forth herein, the defendants respectfully request that the Court order the following: (1) dismissal of the IP plaintiffs' claims for improper venue; (2) dismissal of the IP plaintiffs' claims for lack of jurisdiction, particularly as to the Individual Defendants; and (3) dismissal of the claims asserted against the United II, Raybould Brothers, Lance Funk, Snake River, Cornelison Farms, Keith Cornelison, Michael Cranney, Wada Marketing, Wada Van Orden, Wada Potatoes or Wada Farms based on plaintiffs' failure to state a cognizable claim against them.

Respectfully submitted on March 18, 2011.


By: /s/ James S. Lowrie
    JONES WALDO HOLBROOK & MCDONOUGH PC
    James S. Lowrie
    Andrew G. Deiss
    Billie J. Siddoway

    HOLLAND & HART LLP
    James E. Hartley
    Steven B. Andersen

    PORTER WRIGHT
    Donald M. Barnes
    Salvatore A. Romano

    *Counsel for United Potato Growers of Idaho, Inc.;
    United Potato Growers of America, Inc.; United II
    Potato Growers of Idaho, Inc.; Albert Wada; Wada
    Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van
    Orden Potatoes, Inc.; Wada Farms Marketing Group,
    LLC; Michael Cranney; Keith Cornelison;
    Cornelison Farms, Inc.; Snake River Plains Potatoes,
    Inc.; and Raybould Brothers Farms LLC*

967774\10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 18th day of March, 2011, I caused the foregoing to be electronically filed through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Albert P. Barker
abp@idahowaters.com

Allen Steyer
asteyer@steyerlaw.com

Andrew G. Deiss
adeiss@joneswaldo.com

Arthur N. Bailey, Jr.
abailey@hausfeldllp.com

Bart M. Davis
bmdavis@bmdlaw.net

Benjamin Andrew Schwartzman
bschwartzman@bwslawgroup.com

Billie Jean Siddoway
bsiddoway@joneswaldo.com

Bonny E. Sweeney
bonnys@rgrdlaw.com

Brad P. Miller
bmiller@hawleytroxell.com

Bruce S. Bistline
bbistline@gordonlawoffices.com

Carmen A. Medici
cmedici@rgrdlaw.com

Christopher Emrich Ondeck
condeck@crowell.com

Chad V. Bonanni
chad@essex.bpflegal.com

Daniel G. Swanson
dswanson@gibsondunn.com

Daniel M. Cohen
danielc@cuneolaw.com

David J. Syrios
dsyrios@ademilaw.com

David R. Lombardi
drl@givenspursley.com

David T. Biderman
dbiderman@perkinscoie.com

Donald Michael Barnes
dbarnes@porterwright.com

Donald Amamgbo
Donald@amamgbolaw.com

Douglas A. Millen
dmillen@fklmlaw.com

Elizabeth McKenna
emckenna@milberg.com

Eric P. Enson
epenson@jonesday.com

Eugene A. Spector
espector@srkw-law.com

Gregory L. Crockett
gregcrockett@hopkinsroden.ocm

Guri Ademi
gademi@ademilaw.com

Hollis Salzman
hsalzman@labaton.com

James A. Wilson
jawilson@vorys.com

James E. Hartley
jhartley@hollandhart.com

James S. Lowrie
jlowrie@joneswaldo.com

James Pizzirusso
jpizzirusso@hausfeldllp.com

Jay L. Himes
jhimes@labaton.com

Jay S. Cohen
jcohen@srkw-law.com

Jeffrey Alan LeVee
jlevee@jonesday.com

Jeffrey L. Spector
jspector@srkw-law.com

John Michael Avondet
javondet@beardstclair.com

Jon T. King
jking@hausfeldllp.com

Joseph Michael Barton
jbarton@glancylaw.com

Julio Joaquin Ramos
ramosfortrustee@yahoo.com

Kimberly A. Kralowec
kkralowec@kraloweclaw.com

Lionel Z. Glancy
lglancy@glancylaw.com

Lauren Block
lblock@milberg.com

Mark A Griffin
mgriffin@kellerrohrback.com

Matthew McBurney
mmcburney@crowell.com

Matthew S. Wild
mwild@wildlawgroup.com

Michael D. Gaffney
gaffney@beardstclair.com

Philip Howard Gordon
pgordon@gordonlawoffices.com

Steven A. Asher
asher@wka-law.com

Michael P. Lehmann
mlahmann@hausfeldllp.com

Reginald Von Terrell
Reggie2@aol.com

Steven A. Kanner
skanner@fklmlaw.com

Michael M. Goldberg
mmgoldberg@glancylaw.com

Richard C. Boardman
rboardman@perkinscoie.com

Steven B. Andersen
sandersen@hollandhart.com

Michael Hausfeld
mhausfeld@hausfeldllp.com

Robert Rosenfeld
rrosenfeld@orrick.com

Steven Bomse
sbomse@orrick.com

Michael Kowsari
mkowsari@girardikeese.com

Ronald J. Aranoff
aranoff@bernlieb.com

Susan G. Kupfer
skupfer@glancylaw.com

Mindee J. Reuben
reuben@wka-law.com

Salvatore Anthony Romano
sromano@porterwright.com

Wade L. Woodard
wwoodard@bwslawgroup.com

Monte N. Stewart
stewart@belnaplaw.com

Samuel G. Liversidge
sliversidge@gibsondunn.com

William L. Greene
William.greene@leonard.com

Neil D. McFeeley
nmcfeeley@eberle.com

Sharron Williams Gelobter
sgelobter@yurumeinlaw.com

William V. Reiss
wreiss@labaton.com

Paul Novak
pnovak@milberg.com

Shpetim Ademi
sademi@ademilaw.com

Winston V. Beard
winston@beardstclair.com

Peter Safirstein
psafirstein@milberg.com

Stephen R. Thomas
srt@moffatt.com

/s/  Cathie F. Smith