## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE: FRESH AND PROCESS | : | |
| POTATOES ANTITRUST | : | |
| LITIGATON | : | **Case No. 4:10-MD-2186-BLW** |
| | : | |
| _____ | : | **ORDER FOR** |
| | : | **THE DISCOVERY OF** |
| THIS DOCUMENT APPLIES TO: | : | **ELECTRONICALLY STORED** |
| ALL ACTIONS | : | **INFORMATION** |
| _____ | : | |

To facilitate the discovery of electronically stored information, the Court hereby enters the following Order pursuant to the Case Management Orders No. 2 & 3 (ECF Nos. 227 & 235) and Federal Rules of Civil Procedure 26 and 34, which binds all parties and their counsel of record in this action.

## I.       PRESERVATION OF ESI.

Preservation of all electronically stored information ("ESI") shall be governed by the Preservation Order signed by the Court on February 2, 2011 (ECF. No. 61).  All definitions in the Preservation Order are incorporated into this Joint Agreement.

## II.       PRODUCTION OF DOCUMENTS.

**A.**  Production of documents shall include production from both custodian and non-custodian sources, subject to and without waiver of a party's objections to the opposing parties' discovery requests or to any agreements reached in the parties' meet-and-confer process.

**B.**  Production of documents from custodian sources will be limited to those custodians identified in each party's disclosures to satisfy the Preservation Order and any supplemental disclosures of such custodians.

III.    **PRODUCTION OF ESI.**

   A.  **Paper Documents in TIFF.**

   The producing party will provide OCR only for documents searched with agreed-upon search terms per Section IV of this Agreement and Order.  For any such documents, the producing party shall, at the time it serves its initial search terms on the requesting party pursuant to Case Management Order Nos. 2 & 3 (ECF Nos. 227 & 235), disclose to the requesting party: 1) the estimated volume of paper documents the producing party proposes to search using search terms; 2) categories or types of those documents (*e.g.*, invoices, etc.); and 3) the efforts the party proposes to undertake in order to validate the quality and reliability of the OCR of those documents, including confidence levels the party considers acceptable if confidence levels are proposed as a means to assess quality and reliability.  The parties shall thereafter meet and confer regarding whether and under what circumstances search terms may be applied to such documents.  If the parties are unable to reach agreement, the parties shall submit the matter to the Court for resolution.

   Subject to and without waiver of a party's objections to the opposing parties' discovery requests or to any agreements reached in the parties' meet-and-confer process, each party will produce all responsive and non-privileged paper documents (*i.e.*, those documents not kept electronically by a party in the ordinary course of business) in single-page TIFF format.  Each TIFF format file of a paper document shall be marked with Bates numbers on each page of the document.  For paper documents for which OCR is provided, the producing party shall provide document level text files, in accordance with the provisions of Section III.B.3 below, that will be named according to the first Bates

number of the corresponding paper document (e.g., TIFF file named EXAMPLE0001.tif and OCR file named EXAMPLE0001.txt).  The producing party shall identify the source of the documents (*e.g.*, hard copy, scanned documents, etc.).  Load files for such productions shall include data relevant to the individual documents, including Bates numbering, designation of the custodian of the document, and OCR (where applicable).  No other metadata is required.  No party shall convert existing ESI into paper documents for production purposes.

**B.  Electronic Documents in TIFF.**

Subject to Paragraph III.C below, each party will produce electronic documents in TIFF format.  Each TIFF format file of an electronic document must be created directly from the original electronic document; a Party may not create a TIFF format file of an electronic document by printing out paper copies of that electronic document and then scanning the paper copy of it.  If the producing party cannot adhere to the requirements of this paragraph with regard to specific electronic documents, the producing party will confer with the requesting party to determine a mutually agreeable production methodology.

For each TIFF format file created from an electronic document, the producing party will generate and preserve an MD5 hash value or SHA-1 hash value at the time of ESI processing; this hash value must be produced to the requesting party if and when the native format of the file is also produced to the requesting party.  The producing party will make reasonable efforts to preserve unchanged native files from the time the hash values are created to the time, if ever, those native files or concomitant hash values are produced to the requesting party.

ORDER FOR THE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION    3

### 1.   Technical Specifications for All TIFF Format Files.

All TIFF format files will conform to the following specifications:

    a.   All TIFF formatted files will be single page, black and white, dithered (if applicable), Group IV TIFF at 300 X 300 dpi resolution and 8 ½ X 11 inch page size, except for documents requiring different resolution or page size.

    b.   A unitization file, in standard format (e.g., Summation DII, Concordance OPT, IPRO LFP or .csv file) showing the Bates number of each page and the appropriate unitization of the documents, must accompany each TIFF formatted file (beginning number, end number of each document).  The producing parties will use their best efforts to unitize logically related documents appropriately.

    c.   The parties shall de-duplicate their ESI productions across custodians (*e.g.*, globally).  No party may de-duplicate near duplicates.  The parties shall de-duplicate exact duplicates according to the following requirements:

        i.   All custodians who were in possession of a de-duplicated document must be identified in the CUSTODIAN_OTHERS metadata field specified in Section III.B.2.

        ii.   The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.

        iii.   Each party's vendor will provide a written explanation of their de-duplication methodology.

        iv.   If BCC is not used as one of the criteria to identify duplicates, the BCC_Other field shall be populated with the names shown in the BCC metadata field from the email(s) that was de-duplicated.  This does not relieve parties from the obligation to comply with (ii) above.

    d.   Each e-mail and its attachment(s) must be produced as separate documents.

    e.   All ESI should be processed with all hidden text (e.g., track changes, hidden columns, comments, markups, notes, etc.) expanded, extracted

and rendered in the TIFF file.  When processing ESI for review and for production in TIFF format, the producing party will instruct its vendor to force off Auto Date and force on hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments.   If the file cannot be expanded, the native file shall be produced with the image file.

## 2.   Metadata for Electronic Documents.

The parties are not obligated to populate manually any metadata fields, except for the CUSTODIAN and SOURCE fields, if such fields cannot automatically be extracted from a document, and manually coded fields, except for CUSTODIAN and SOURCE fields, shall not be included in the metadata import file.  To the extent any ESI contains information subject to a claim of privilege or any other applicable protection, its respective metadata may be redacted or withheld.  If metadata is redacted or withheld, the producing party will so inform the requesting party and record the redaction on any privilege log prepared by the producing party; redacted metadata shall be preserved.

Each party will produce metadata fields associated with each electronic document produced in TIFF format (to the extent such metadata exists in the collected documents) as follows:[1]

| Field Name | DocType | No. of Characters | Description | Value |
|------------|---------|-------------------|-------------|-------|
| Source | All | Unlimited | Name of party or third-party producing the document | Single Value |
| ProdBeg | All | Text | Beg Bates Number. The document ID number associated with the first page of a document | Single Value |
| ProdEnd | All | Text | End Bates Number. The document ID associated with the last page of a document | Single Value |

---

[1]    To the extent a producing party is unable to extract the agreed upon metadata, the parties will meet and confer to resolve the issue.
        And, to the extent a producing party is aware that certain metadata may have been altered during a prior collection, the party will use its best efforts to describe the alterations and affected field(s) when making the initial production of such data.

ORDER FOR THE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION     5

| Field Name | DocType | No. of Characters | Description | Value |
|---|---|---|---|---|
| ProdBegAttach | All | Text | Begin Attachment Number. The document ID number associated with the first page of a Parent Document | Single Value |
| ProdEndAttach | All | Text | End Attachment Number. The document ID number associated with the last page of the last attachment to a parent document | Single Value |
| ParentBates | All | Text | Begin bates number for the parent email or e-file | Single Value |
| AttachBates | All | Unlimited | Bates number from the first page of each attachment | Multi-Value |
| AttachCount | All | Numerical | Number of attachment(s) to an email or e-file | |
| PgCount | All | Numerical | Number of pages in the document | Single Value |
| FileType | All | Unlimited | The record type of a document. (e.g. Attachment, E-Mail, E-File, Hardcopy, etc.) | Single Value |
| Sent_Date | Email | MM/DD/YYYY | The date an email was sent (GMT) | Single Value |
| Sent_Time | Email | Unlimited | The time an email was sent (GMT) | Single Value |
| Recvd_Date | Email | MM/DD/YYYY | The date an email was received (GMT) | Single Value |
| Recvd_Time | Email | Unlimited | The time an email was received (GMT) | Single Value |
| Create_Date | All | MM/DD/YYYY | The date an email or e-file  was created (GMT) | Single Value |
| Create_Time | All | Unlimited | The time an email or e-file was created (GMT) | Single Value |
| LastMod_Date | All | MM/DD/YYYY | The date an e-file was last modified (GMT) | Single Value |
| LastMod_Time | All | Unlimited | The time an e-file was last modified (GMT) | Single Value |
| LastSavedBy | All | Unlimited | Value shows within the last saved metadata field | Multi-Value |
| Call_Start | Email Others | Unlimited | Start date and time of a calendar or appointment | Single Value |
| Participants | Email Others | Unlimited | Names included in the meeting invitation | Multi-Value |
| Author | All | Unlimited | Combine "Author" or "From" from e-mail and e-files into one "Author" field | Multi-Value |
| To | Email | Unlimited | Combine "TO" from e-mail and e-files into one "To" field. | Multi-Value |

ORDER FOR THE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION     6

| Field Name | DocType | No. of Characters | Description | Value |
|---|---|---|---|---|
| | | | The "TO" field from an e-mail header.  Loose e-files have no "TO" information. | |
| CC | Email | Unlimited | Combine "CC" from e-mail and e-files into one "CC" field. The "CC" field from an e-mail header.  Loose e-files have no "CC" information. | Multi-Value |
| BCC | Email | Unlimited | Combine "BCC" from e-mail and e-file into one "BCC" field. The "BCC" field from an e-mail header.  Loose e-files have no "BCC" information. | Multi-Value |
| BCC_Other | Email | Unlimited | If BCC is not used as one of the criteria to identify duplicates, the BCC_ Other field shall be populated with the names shown in the BCC metadata field from the document(s) that was de-duplicated. | Multi-Value |
| Subject | All | Unlimited | The subject of a document, (e-mail or e-file).  For e-files, this is the metadata for the title of the document. | Single Value |
| Orig_File_Name | All | Unlimited | The original file name of an electronic document or an attachment to an e-mail (e.g. Outlook.pst; production.doc, etc.) | Single Value |
| Custodian | All | Unlimited | The custodian of a document (if applicable) | Multi-Value |
| Custodian_Others | All | Unlimited | If data was processed using global deduplication, this field will be populated with names of custodian(s) from documents that were de-duped. | Multi-Value |
| Attach_Count | All | Unlimited | The number of attachments to a document | Single Value |
| AttachName | All | Unlimited | Name of attachment(s) | Multi-Value |
| File_Ext | All | Unlimited | The file extension of a document (e.g. doc, nsf, rtf, pdf etc.) | Single Value |
| File_Size | All | Unlimited | The file size of a document (including embedded attachments) | Single Value |
| MD5Hash | Edocs | Unlimited | The MD5 Hash value or a digital signature that is automatically generated for each electronic file | Single Value |
| FilePath | All | Unlimited | The full path to the file at its original location | Single value |
| NativeFile | All | 256 | The full path to Excel, PowerPoint or any other file type that is produced in native | Single Value |

| Field Name | DocType | No. of Characters | Description | Value |
|---|---|---|---|---|
| TextPath | All | 256 | The full path to the OCR/Extracted Text file on producing media | Single Value |

The parties must produce all files attached to each email they produce to the extent the attachments are reasonably accessible. To the extent a party produces electronic documents attached to emails, a party will produce the metadata for those attached electronic documents in accordance with paragraphs III.B.1 and III.B.2.

To the extent that the extracted text file accompanying a TIFF is corrupt or otherwise unusable, the requesting party shall identify the problematic document by Bates number and the producing party shall provide either corrected document level extracted text or OCR text file as a replacement.

By producing metadata, the producing party affirms that such metadata came from its records, with the exception of the manually-entered CUSTODIAN and SOURCE fields.

### 3. Extracted Searchable Full Text.

An extracted searchable full text, document level (multi-page) file version will be produced for each electronic document. Each extracted full text version will be named according to the first Bates number of the corresponding electronic document. Text files will be located in a directory named "TEXT" that is separate from the TIFF image file. A path to the corresponding .TXT file shall be included as a field in the metadata import file.

### 4. Applicable Load Files.

The parties shall work together to provide suitable load files. Individual parties have the option to exchange sample load files in advance of the production deadline. If

this option is exercised, the receiving party will have 14 days to respond with load file change requests.

### 5. Bates Numbering.

The Bates number and any confidentiality designation should be electronically branded on each produced TIFF image.  The parties shall use reasonable efforts to ensure that Bates numbers: (1) be unique across the entire document production; (2) maintain a constant prefix and page length (0-padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document. Attachments must immediately follow the parent record.  Bates numbering for any Attachments must sequentially follow the Bates number(s) for the parent record.  Bates numbering shall be alphanumeric with an 8-digit sequential numbering with or without hyphenation, e.g., B00000001 or B-0000001.  Bates numbering shall be endorsed on the bottom, right-hand side of each page, with any confidentiality or other designations endorsed on the bottom, left-hand side of each page, both in not less than 10-pt font. Bates prefixes must be derived from a Party's name and shall be consistent across all documents a party produces in the litigation.

### 6. Embedded Files.

If a document has another file embedded in it, (*e.g.*, a PowerPoint presentation that has a spreadsheet embedded in it), the receiving party may request that the embedded file be produced as standalone file.  The producing party shall promptly respond in writing if it cannot produce the requested embedded files as standalone files, after which the parties shall meet and confer. A party will have no obligation to produce any

embedded file as a standalone file if the embedded file was not processed as a standalone file through the normal processes of the producing party's vendor.

    a. All embedded files produced under this procedure shall be produced subject to the same requirements set forth in Section III above.  Load files for such embedded files shall refer to the parent document in which the file was embedded.

    b. The parties will not object to the authenticity or admissibility of an embedded document so produced on grounds relating to the process used to produce the embedded document.  All other objections shall be preserved, including, but not limited to, completeness.

**7. Redaction.**

If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced.  However, to the extent that the text is searchable in the native format, the producing party will replace the extracted text with OCR.  For paper documents, the producing party will provide OCR for the portion of the documents that have not been redacted.  Parties will meet and confer if it is determined that redaction should be done in Native rather than TIFF on particular types or categories of documents.  Documents that are produced in redacted form shall be recorded on any privilege log prepared by the producing party, and the producing party shall retain an unredacted original copy on file.

**8. Privilege Logs.**

    a. Privilege Logs shall be provided containing the following information, to the extent it is reasonably available:[2]

        i. a sequential number associated with each Privilege Log record;

---

[2] If a party requires additional information about a particular log entry to evaluate the privilege claim, the parties agree to make reasonable efforts to provide additional information.

ii.     the date of the document;

iii.    the Bates numbers of documents redacted;

iv.     the identity (and title, if practicable), of all persons who authored, signed or otherwise prepared the document, and identification of which of them are attorneys;

v.      the identity of all persons designated as addressees, copyees or blind copyees;[3]

vi.     the title or subject of a document;

vii.    a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; and

viii.   the type or nature of the privilege asserted (i.e., attorney-client privilege; work product doctrine).

| Privilege Log # | Bates # (If Applicable) | Date | Author | From or Sender | Recipient | CC | BCC | Title | Subject | Privilege Log Description | Privilege |
|---|---|---|---|---|---|---|---|---|---|---|---|
| i | ii | iii | iv | iv or v | V | v | v | vi | vi | vii | viii |
|  |  |  |  |  |  |  |  |  |  |  |  |

b.  Each member of a document "family" (e.g., an email attaching a memorandum or other document) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be individually logged on the privilege log in succession following the redacted or withheld parent document, but the withholding party need log only a single family-level description of the redacted or withheld family documents in the log entry for the parent if such description is sufficient for the propounding party to evaluate the claim of privilege for each redacted or withheld family member.

c.  The following documents presumptively need not be included on a privilege log:

_____

[3] Information regarding blind copyees need be provided only if the BCC metadata exists for the document.

   i.  Communications exclusively between a party and its trial counsel after commencement of the action.

   ii.  Work product created by trial counsel, or by an agent of trial counsel other than a party, after commencement of the action.

  d. In the interest of the parties' time, and to minimize litigation costs, the parties shall in good faith negotiate the exclusion of any other categories of documents that while technically responsive and privileged are relatively irrelevant to the issues in the litigation.

**9. Encrypted or Password-Protected ESI.**

For any ESI that exists in encrypted format or is password-protected, the producing party will undertake reasonable efforts to provide a means to gain access to those native files (e.g., by supplying passwords or engaging a vendor to employ "password cracking" technology, with any costs to be borne by the producing party).

**10. Production Media.**

The producing party will use an appropriate electronic media (CD, DVD, or hard drive) for its ESI production.  The producing party will label the physical media with the producing party, production date, media volume name, and document number range.  In the interest of efficiency, in certain circumstances and within reason, the producing party may produce documents via email or via an FTP site, to be promptly followed by a formal delivery of production media.

**C.  Production of Specific Native Format Documents.**

The parties agree as follows with respect to native format documents:

**1. Parties to Meet and Confer Prior to Production of Database ESI.**

The parties anticipate producing transactional and other types of data maintained in electronic databases.  Unless such material has already been converted to another

usable form or contains privileged information or information subject to any other applicable protection, database ESI (*e.g.*, MS-Access, SAP, etc.) shall be produced in a format to be agreed upon by the parties prior to production.

Nothing in this protocol prevents a party, if it elects to do so, from producing database ESI as .TIFF images in addition to any other agreed-upon format, provided however, that for spreadsheet files (*e.g.*, Excel), the TIFF versions shall include all hidden rows, cells, worksheets, formulaic metadata, as well as any headers or footers associated with the produced native spreadsheet file.

### 2.   Spreadsheet, Slide Presentation, and Multimedia Audio/Video ESI Shall Be Produced in Native Format.

Unless such material has already been converted to another usable form or contains privileged information or information subject to any other applicable protection, spreadsheet, slide presentation (*e.g.*, Excel and Power Point, etc.), multimedia audio/video files (*e.g.*, .wav, .mpeg, .avi), and comparable ESI that cannot render TIFF images or for which rendering TIFF images is unduly burdensome shall be produced in native format.

### 3.   Other Native Format Documents.

No requesting Party may seek to compel the production of native format files of electronic documents not included in paragraphs III.C.1 or III.C.2 on a wholesale basis. A Party may request native format files of electronic documents from a producing Party if:

- The TIFF format file is difficult to read as formatted or is illegible;

- The native format file would be necessary to view embedded information that does not otherwise appear in the TIFF formatted file;

- The native format file is necessary to understand or verify the information contained in the TIFF formatted file; or

- For other good cause shown.

If at any time a producing Party deems a requesting Party's demand for native format documents to be excessive, the request for native documents will be carried out under the following protocol:

- 30 days before the close of discovery or 14 days after the production, whatever is later, or at any time for good cause shown, the requesting Party will identify in writing those native format files for which it seeks production and the basis for seeking each native format file.

- Within fourteen (14) days of receiving such a request, the producing Party will respond in writing, setting forth its position on the production of the requested native format files.

- If the Parties are unable to agree as to the production of the requested files in native format, the Parties will submit the matter to the Court or, upon agreement, a special master.

- If the requesting Party believes that the explanation supporting its need to review native format files will reveal work product, the requesting Party may, at its discretion, submit such explanation directly to the Court or special master for in camera review.

- The Court or special master will have the discretion to share with the producing Party any explanation supporting the requesting Party's need to review native format files that is submitted for in camera review.

### 4. Production Format of Native Documents.

The following format shall govern the production of native documents other than database ESI. Each electronic file produced in native format will be assigned a unique Bates number within the litigation database. The producing party will include a single-page TIFF image branded with this unique Bates number and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The producing party will also

brand any confidentiality or similar endorsements that apply to the native file in the lower left-hand corner of the TIFF image.  Native file names will be identical to the assigned Bates number, followed by the file extension, e.g. B00000001.xls, and placed in a folder called NATIVES, which is parallel to the Data, Images and Text folders on the production volume structure.

## IV.      IDENTIFICATION OF RESPONSIVE DOCUMENTS AND ESI.

**A.      Search Terms & Methodology**. The exchange of search terms is governed by the provisions of Case Management Order Nos. 2 & 3 (ECF Nos. 227 & 235).  The parties shall disclose whether they intend to use search terms and if so, disclose to propounding party data sources to be searched.  Parties intending to electronically search their ESI using a methodology other than through use of search terms shall disclose such methodology to the propounding party prior to employing it. Further, parties intending to use search terms to search their ESI ("Search-Term Parties," or "Search-Term Defendants") shall meet and confer with the propounding party and use reasonable best efforts to reach agreement on the search methodology, terms to be used, and the categories of document requests to which such search methodology shall and shall not be applied.

### 1.  Globally Applicable Search Terms.

Search Term Defendants, by certain sub-groups enumerated below, may elect to submit to the requesting parties a set of proposed global search terms with their initial list of party specific terms.  Plaintiffs must respond to any proposed global search terms no later than 7 days from the date Search-Term Defendants submit such list.  The parties then agree to meet and confer to finalize the global terms.  If this meet and confer process

ORDER FOR THE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION      15

exceeds 30 days from the date Search-Term Defendants initially submitted the global

terms, the deadline to produce documents will be extended one day for each additional

day of delay.  The Search-Term Defendant sub-categories may include:  cooperative

defendants, marketing companies, processing companies, packing sheds, growers,

shippers and individuals.

## 2. Search-Term Parties' Obligations Regarding Proposed Search Terms.

Pursuant to CMO Nos. 2 & 3, the Search-Term Parties shall serve the

propounding party with a list of terms they plan to use to search for responsive ESI.  In

accordance with the following subparts, prior to serving their proposed search terms on

the propounding party and throughout the meet and confer process, the Search-Term

Parties shall validate any proposed and agreed-upon terms and make reasonable inquiries

regarding the terms and phrases used by such Search-Term Parties to refer to the subject

matter reflected in the propounding party's document requests.  At the time Search Term

Parties finalize search terms, they shall certify that they made a reasonable efforts to:

    a.  Test the accuracy and efficacy of the proposed search terms.  Such iterative testing shall include, but is not limited to:

        i.  generating and reviewing search term reports;

        ii.  experimenting with a variety of search terms and search syntax to capture potentially relevant data that may be missed by the terms;

        iii.  reviewing a vendor-generated statistically significant random sample of data captured by the searches;

        iv.  developing additional searches based on the relevant documents captured by the initial round of search hits to help ensure that relevant data is captured; and

v.   reviewing a vendor-generated statistically significant random sampling of the data  not captured by the terms to confirm the efficacy of the searches.

b.   Identify, disclose to the propounding party, and include in their search-term proposals:

i.   other terms, phrases or acronyms used by the parties and/or their employees to refer to the subject matter reflected in the propounding party's document requests;

ii.   other terms, phrases or acronyms that the parties and/or their employees used to refer to other parties or other members of UPGI, United II or UPGA; and

iii.   special terms, phrases or acronyms used by the parties and/or their employees to refer to potato supply, potato supply management, and/or potato pricing, grading, marketing or processing.

c.   Identify and disclose to the propounding party any email addresses other than their assigned business email address that custodians may have used to send emails to or receive emails from employees of other parties or other members of UPGI, United II or UPGA, including personal email addresses, such as those for yahoo, gmail, and hotmail accounts, among others.

At the completion of document production, the Search-Term Parties shall certify that they made reasonable efforts to test the accuracy and efficacy of the search terms throughout the review process, including sampling based on statistically significant random samples drawn across the corpus of collected documents, consistent with paragraph IV.A.2.a above.

### 3.   Revisions to Agreed-Upon Search Terms.

The exchange of search terms is governed by the provisions of Case Management Order Nos. 2 & 3.  For good cause shown, or after sufficient demonstration that the agreed terms were over- or under-inclusive, the Requesting Party and the Producing Party

ORDER FOR THE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION      17

may modify the search terms or search strategies during the course of the litigation subject to agreement of the parties or Court order.

### 4. Obligation to Produce Responsive Documents.

To the extent that any Search-Term Party identifies any responsive documents not hit upon by key word searches, any such non-privileged documents must be produced, subject to any agreements reached in the parties' meet-and-confer process regarding the parties' objections to discovery requests.

**B.** Queries will be run against all ESI collected to which the parties agree search terms will be applied.

**C.** Queries of email will be run against email and attachments (*i.e.*, both emails and their attachments shall be searched). If either an e-mail or any of its attachment is responsive and non-privileged, both the email and all of its attachment will be produced, subject to any agreements reached in the parties' meet-and-confer process regarding the parties' objections to discovery requests.

**D.** All queries will be run in a non-case sensitive manner, except as provided in the agreed-upon search terms or otherwise agreed to by the parties.

**E.** Hyphenation of terms will not affect search results (*e.g.*, a query for "all inclusive index" will return "all-inclusive index" and vice versa).

**F.** If the search syntax required by the tool being used is different from the search syntax agreed to by the parties, the actual syntax used for the search and the tool used will be identified to the requesting party prior to conducting the search.

**G.** Subject to the parties' agreement or Court Order regarding the scope of Plaintiffs' or Defendants' document requests, agreed-upon search terms shall be used to

identify ESI responsive to Plaintiffs' or Defendants' discovery requests, and produced if responsive and non-privileged subject to and without waiver of a party's objections to the opposing parties' discovery requests and to any agreements reached in the parties' meet-and-confer process.

H.     With respect to ESI, the fact that a document is captured by application of agreed-upon search terms to the ESI does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this litigation.  Propounded discovery requests shall govern the scope of documents to be produced, subject to any agreements reached in the parties' meet and-confer process with respect to the parties' objections.  For document requests that the parties have agreed can be addressed by search terms:

1.  a party's obligation to conduct a reasonable search for documents in response to  propounded discovery requests shall be deemed to be satisfied by reviewing or otherwise producing documents that are captured by use of the agreed-upon search terms and methodology to be applied to ESI; and

2.  a party shall have no obligation to produce any documents, except as otherwise agreed to in writing by the parties, that are not *either* (a) captured by the agreed-upon search terms and methodology to be applied to ESI; *or* (b) otherwise identified or known by the party to be non-privileged and responsive to a specific propounded discovery request, or which the party later identifies or comes to know is non-privileged and responsive.

I.     The parties shall review (e.g., may not apply search terms) textual PDF and TIFF files (including textual PDF and TIFF files stored within RAR or ZIP files) and any scanned or faxed textual files in another format (if the party regularly scans documents or receives electronic copies of facsimiles in another format in the ordinary

course of business) that are identified by the parties' respective vendors as files that

cannot be programmatically searched by the application of agreed-upon search terms.

## V.      CONFIDENTIALITY.

The parties shall have the right to designate documents according to the terms of

the Protective Order entered by the Court.

## VI.   DISPUTE RESOLUTION.

To expedite discovery of relevant electronic evidence and reduce costs, the parties

will discuss and attempt in good faith to resolve all issues before bringing them to the

Court. This responsibility shall be continuing, unless otherwise ordered by the Court.

## VII.   OBJECTIONS AND RIGHTS PRESERVED.

**A.**      Nothing in this Agreement and Order shall be interpreted to require

disclosure of irrelevant information, or relevant information protected by the attorney-

client privilege, work-product doctrine, or any other applicable privilege or immunity.

Nothing in this agreement precludes any party from seeking cost shifting.  Subject to

III.B.6.b, the parties do not waive any objections as to the production, discoverability,

admissibility, or confidentiality of ESI through this Agreement and Order.  All objections

to the discoverability or admissibility of any document or data are preserved and may be

asserted at any time, except as provided in III.B.6.b.

**B.**      Nothing in this Agreement and Order waives the right of any party to

petition the Court for an Order modifying its terms upon sufficient demonstration that

compliance with such terms is either  (1) unexpectedly and unreasonably burdensome, or

(2) impossible, provided, however, that counsel for such party must first meet and confer

with the counsel for the opposing party and the parties shall use reasonable best efforts to

negotiate an exception from or modification to this Agreement and Order prior to seeking relief from the Court.

## VIII.   TERMS OF AGREEMENT.

This Agreement shall continue in full force and effect until further order of the Court or until this litigation is terminated by a final judgment.

DATED: August 31, 2012

B. Lynn Winmill
Chief Judge
United States District Court