UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION | Case No. 4:10-md-02186-BLW-CWD |
| | **ORDER RE: DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL INTERROGATORY ANSWERS** |
| **THIS MATTER PERTAINS TO: ALL ACTIONS** | **(ECF No. 544)** |

## INTRODUCTION

Direct Purchaser Plaintiffs ("Plaintiffs") timely filed a motion to compel on December 11, 2013, directed to Defendants United Potato Growers of Idaho, Inc.; United Potato Growers of America, Inc.; United II Potato Growers of Idaho, Inc.; Albert T. Wada; Wada Farms, Inc.; Wada Family LLC; Cedar Farms, Inc.; Michael Cranney d/b/a Cranney Farms; Cornelison Farms, Inc.; Keith Cornelison; Snake River Plains Potatoes, Inc.; Lance Funk d/b/a Lance Funk Farms; Raybould Brothers Farms LLC; KCW Farms, Inc.; Kim Wahlen d/b/a Kim Wahlen Farms;[1] and RD Offutt.[2] The motion seeks an order compelling answers to certain interrogatories timely served upon those Defendants.

---

[1] The preceding Defendants are all represented by Mr. Steve Anderson of the firm Anderson Banducci, and have been referred to in prior submissions as the "Anderson Defendants." The Court will refer to them in that manner as well.

[2] Defendant RD Offutt has been referred to as the Offutt Defendants, and now, in Plaintiffs' pleadings, as RDO. The Court will refer to them here as "Offutt."

**MEMORANDUM DECISION AND ORDER - 1**

Plaintiffs contend that Defendants wrongfully invoke Fed. R. Civ. P. 33(d), or have failed to comply with the Rule's requirements.

The Anderson Defendants and Offutt filed separate responses to the motion. The Anderson Defendants contend they have complied with Rule 33, and provided examples within their motion demonstrating how Plaintiffs may compile the information responsive to the interrogatories. Offutt, on the other hand, indicates it cannot comply with Rule 33 because the interrogatories are too broad, thereby rendering it impossible to specify the documents produced that are responsive to the interrogatories.

For the reasons that follow, the motion is granted in part and denied in part.

## ANALYSIS

Plaintiffs served interrogatories on October 2 and 3, 2013, and Defendants served responses and objections on November 4 and 7, 2013. The parties in this massive antitrust litigation have been involved with rolling production of discovery, and the Court recently extended the fact discovery completion deadline from March 3, 2014, to July 3, 2014. (Dkt. 588.) The parties' discovery has been governed in large part by an electronic discovery protocol, and the undersigned has conducted several hearings and status conferences throughout the discovery process in an effort to facilitate agreement and cooperation so as to avoid unwieldy motion practice. It seems that now, however, the parties have reached an impasse on a finite number of interrogatories. *See also* (Dkt. 539.)

**MEMORANDUM DECISION AND ORDER - 2**

1.     **Legal Standards**

Discovery is viewed through the lens of Fed. R. Civ. P. 26(b), which generally

instructs that the amount of discovery requested should be balanced by the need for such

discovery. *L.H. v. Schwarzenegger*, No. S-06-2042 LKK GGH, 2007 WL 2781132 *2

(E.D. Cal. Sept. 21, 2007). "Discovery does not mean that a party should have to prepare

the other party's case." *Id.* But, a party is not permitted to avoid all burden and expense in

responding to discovery, and must make "reasonable efforts to respond." *Id.* Those

efforts are necessarily determined by the size and the complexity of the case, and the

resources available to devote to it.

To temper the burden somewhat, Fed. R. Civ. P. 33 permits a responding party to

specifically direct the requesting party to its business records if the information sought by

an interrogatory can be gleaned from reference to those records. Resort to Rule 33 is

appropriate where the requesting party is as capable of reviewing the documents and

formulating a response as is the responding party. Rule 33 provides, in relevant part:

> Where the answer to an interrogatory may be derived or
> ascertained from the business records, including
> electronically stored information, of the party upon whom the
> interrogatory has been served or from an examination, audit
> or inspection of such business records, including a
> compilation, abstract or summary thereof, and the burden of
> deriving or ascertaining the answer is substantially the same
> for the party serving the interrogatory as for the party served,
> it is a sufficient answer to such interrogatory to specify the
> records from which the answer may be derived or ascertained
> and to afford to the party serving the interrogatory reasonable
> opportunity to examine, audit or inspect such records and to
> make copies, compilations, abstracts, or summaries. A
> specification shall be in sufficient detail to permit the
> interrogating party to locate and to identify, as readily as can

**MEMORANDUM DECISION AND ORDER - 3**

the party served, the records from which the answer may be ascertained.

There are certain requirements, however, to invoking the rule. First, the reference to business records must be specific and designed to provide the information requested, and must specify, by category and location, the records from which answers to interrogatories can be derived. *Schwarzenegger*, 2007 WL 2781132 *3. The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them. *See* 7 MOORE'S FEDERAL PRACTICE, § 33.105[3] (3d ed. 2001). References to such records must be specific and designed to provide the requested information. In other words, the responding party must "specifically designate what business records answer each interrogatory." *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996). "[R]referring to business records *en masse*, without specifying particular documents is 'an abuse of the option.'" *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 326 (N.D. Ill. 2005).  And finally, "[t]he records must be offered 'in a manner that permits the same direct and economical access that is available to the [responding] party.' If compilations and summaries exist, these should be made available." *United States ex. rel. Englund v. Los Angeles County*, 235 F.R.D. 675, 680 (E.D. Cal. 2006).

A responding party's familiarity with the method of record retention and organization may facilitate review of records based on this knowledge that is unavailable to the opposing party. *Id*. (citing *T.N. Taube Corp. v. Marine Midland Mortg. Corp.*, 136

F.R.D. 449, 454 (W.D.N.C. 1991)). In other words, the requesting party must be able to easily review the records and perform the research necessary to compile the answer. *O'Connor v. Boeing North Am., Inc.*, 185 F.R.D. 272, 278 (C.D. cal. 1999). And the response referencing business records must, at a minimum, provide the category and location of records which will supply the answers; if the records are voluminous, the response must include an index guiding the party to the responsive documents. *Englund,* 235 F.R.D. at 680-81. *See also Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996) (specification of records must be in sufficient detail to allow party to locate and identify documents from which the interrogatory answer may be ascertained, as readily as the party served); *See, e.g.*, *State of Colorado v. Schmidt–Tiago Construction Co.*, 108 F.R.D. 731, 735 (D. Col. 1985) ( "The appropriate answer when documents are to be used [under Rule 33(d) ] is to list the specific document provided the other party and indicat[e] the page or paragraphs that are responsive to the interrogatory."). If the responding party cannot identify which specific documents contain the answer to the interrogatories, they must completely answer the interrogatories without referring to the documents. *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 323 (C.D. Cal. 2004).

## 2.     Anderson Defendants

### A.     *Cooperative Members–Interrogatory No. 1*

Cooperative Interrogatory 1 directed to UPGI and United II requests identification of each member of the cooperative and the dates each person was a member of the cooperative. Plaintiffs essentially seek membership lists for the cooperatives. One of the

**MEMORANDUM DECISION AND ORDER - 5**

other cooperatives, UPGA, was able to respond with its membership list, but UPGI and United II invoked Rule 33(d). UPGI directed Plaintiffs to its production generally and to its "membership files," while United II similarly directed Plaintiffs generally to its membership files. Otherwise, Defendants responded that it has produced the records in searchable electronic format and basically directed Plaintiffs to search the database. On December 11, 2013, UPGI and United II did produce membership lists spanning three years each, but these lists fell outside the Bates ranges for the membership files previously identified in response to Interrogatory 1.

Plaintiffs contend the response remains deficient for the remaining years because Defendants direct Plaintiffs generally to their business records, which were produced in "searchable electronic format," without more identification. Defendants contend that they provided an explanation by letter (Letter dated December 11, 2013, Ex. 18, Dkt 546-18) directing Plaintiffs to the documents they should review to compile the information called for by the interrogatory, and located and provided the Bates numbers for the membership lists. Defendants argue that Plaintiffs have failed to make an attempt to review the specified documents using the technology available to them, and that if they did, they would find the membership lists with relative ease.

Defendants miss the mark. Rule 33(d) requires the responding party to <u>specify</u> the records that must be reviewed, "in a <u>sufficient detail</u> to enable the interrogating party to locate and identify them as readily as the responding party could." *Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 147 (E.D. N.Y. Aug. 6, 2008) (emphasis added). The vague reference to "membership records" and a directive to search the documents produced is

**MEMORANDUM DECISION AND ORDER - 6**

insufficient in the context of this litigation. Rather, the explanation of where and how to find the membership lists, by Bates number and search terms, as well as how the membership lists were organized, should have been provided with Defendants' interrogatory answers, not by letter dated the same date Plaintiffs filed their motion.

In reviewing Defendants' December 11, 2013 letter, the Court finds it is a decent start, but it lacks complete information to enable Plaintiffs to adequately find the documents from which they may compile the information sought by Interrogatory 1. Defendants indicate they have conducted "simple searches," but do not identify what those searches entailed; and Defendants identified only a limited set of membership lists by Bates number, not the entire set.

Defendants are required by Rule 33(d) to identify, by Bates number and by search terms used to locate them, the responsive documents within the searchable database responsive to Interrogatory 1, and to ensure that Plaintiffs have sufficient explanation regarding the documents so that Plaintiffs may review and extract the necessary information. For instance, Defendants must provide Plaintiffs with an explanation or verification that each member's name is identified on the Membership Agreement, and the Membership Agreements contain the dates of membership (both beginning and end dates) in the first paragraph, or something to that effect. The Court has reviewed the

**MEMORANDUM DECISION AND ORDER - 7**

example document imaged in Defendants' response brief, (Dkt 573 at 7), and alternatively finds such an illustration helpful as well.[3]

The Court is not compelling Defendants (as they erroneously suggest) to compile the data for Plaintiffs---only to help Plaintiffs locate the documents from which they may compile the information, and with a sufficient explanation to enable Plaintiffs to extract the necessary information. Defendants appear to confuse the directive to identify documents with the task of compiling the information asked for by the interrogatory. The two concepts are distinct in the context of Rule 33(d). Defendants must first identify the documents from which Plaintiffs can compile the data.

Therefore, Plaintiffs' motion to compel is granted with respect to Interrogatory 1.

**B.**    *Boards and Committees–Interrogatory No. 3*

Plaintiffs request supplemental responses to Interrogatory 3 by UPGA and UPGI, which requests the identity and purpose of all existing and previous Cooperative boards and committees, as well as the identity of all current and former Cooperative board and committee members. Plaintiffs assert that UPGA identified only four current committees and six former committees, failed to identify members for eight of the ten committees identified, and for two other committees, identified only current members. Plaintiffs assert that UPGI identified numerous committees and members, but failed to specify dates during which the members served.

---

[3] The Court is not suggesting that Defendants provide an illustration for all of the membership agreements, just that the illustration was helpful and may similarly be helpful to Plaintiffs if the names and membership dates are not readily apparent. For instance, if the agreements are different for each district, one sample document could be imaged for each of the districts.

**MEMORANDUM DECISION AND ORDER - 8**

Defendants direct Plaintiffs generally to their business records, and state that the information has been produced in searchable electronic format that will enable Plaintiffs to derive the answer to the interrogatory. Defendants provide a chart with the name, title, and description of the current officers and directors of UPGI, and only the names of the current committees and their members within UPGA. UPGA identified also that information regarding its board of directors can be located at UPGA-121093.

Plaintiffs contend Defendants' response is deficient. Defendants assert in their brief that Plaintiffs failed to conduct even a cursory review of the documents, and set forth in detail the Bates numbers of documents referencing UPGI's organization for the years 2005 – 2011, and provide additional information about UPGA's committees that Defendants claim they already informed Plaintiffs about. Again, this information should have been included in the answer to Interrogatory 3.

The same deficiencies the Court identified with Defendants' answer to Interrogatory 1 exist here. It is not enough to direct Plaintiffs to Defendants' documents and tell them to "go search them," without identifying how to find them by Bates number and search term. The fact Defendants later may have provided Plaintiffs with additional and helpful information, by way of letter, email, or otherwise, is similarly insufficient. The interrogatory answer should be self-contained at this point in the litigation, and Plaintiffs should not have to consult other correspondence to piece together the methodology for finding the documents containing the information sought by the interrogatory.

Plaintiffs' motion to compel is granted with respect to Interrogatory 3.

**MEMORANDUM DECISION AND ORDER - 9**

C.      *Meetings/Communications/Agreements–Interrogatory No. 4*

Interrogatory 4 asks the Cooperative Defendants to identify each meeting held, including board of directors meetings, committee meetings, summit meetings and organizational meetings, and provide the date and location; persons who attended; subject matter discussed; action taken; persons with knowledge relating to the meeting; and Bates ranges of documents evidencing the meeting. After Defendants objected to the scope of the request, Plaintiffs limited this interrogatory to meetings and agreements regarding (1) the supply control mechanisms identified in Plaintiffs' Complaint or (2) any other efforts specifically aimed at impacting the supply or price of potatoes. Plaintiffs object to UPGA's, UPGI's, and United II's response, which again invoked Rule 33(d) and directed Plaintiffs to locate the meeting minutes by searching through the produced documents for the terms "meeting, meetings, and minutes." Plaintiffs argue the response is insufficient.

Defendants contend that the term "meeting" was overbroad, and agree that Plaintiffs' suggested limitation in its brief to "board and committee meetings" sufficiently narrows the scope of the interrogatory. However, Defendants again improperly invoke Rule 33(d) by contending Plaintiffs can simply search the database produced for "meetings." Defendants explain they conducted "simple searches within our clients' production database and located meeting minutes grouped together," and provided Bates range "examples," but again this is insufficient.

Defendants must provide Plaintiffs with the appropriate search terms, and Bates numbers, for the universe of meeting minutes responsive to Interrogatory 4. Plaintiffs can

**MEMORANDUM DECISION AND ORDER - 10**

then examine the documents and compile the information asked for by the Interrogatory. Plaintiffs' motion to compel is granted with respect to Interrogatory 4.

### D.   *Potato Sales, Growing and Transactional Documents–Interrogatories 1 and 3*

Interrogatory 1 seeks acreage, yield and revenue information for non-contract fresh potatoes, while Interrogatory 3 seeks the same information with respect to contract potatoes. Specifically, the interrogatories ask for the number of acres and the yield per acre; the total amount in pounds of potatoes sold and revenues received; number of acres not planted pursuant to an acreage reduction program established by the Cooperative Defendants; and how much defendants were paid by the Cooperative Defendants for not planting the potatoes.

While certain Anderson Defendants responded with compiled tables identifying acreage, yield and revenue by year, Defendants Funk, Cornelison and Raybould did not. Funk identified its business records located at FUNK 070274-087816 and directed Plaintiffs to search using terms "FSA 578 and/or Producer Print." Cornelison and Raybould directed Plaintiffs generally to their respective business records, and stated that Plaintiffs could search for the documents. Raybould did, however, identify certain business records by Bates numbers Raybould 000001-486 in response to Interrogatory 3.

Plaintiffs object to the invocation of Rule 33, absent some sort of document index or other means to facilitate a more effective and accurate review of Defendants' document production. The Court agrees. Mere reference to the use of search terms and Bates numbers in the context of this interrogatory is insufficient. Defendants should have

provided the type of explanation they gave the Court in their brief, as that would have enabled Plaintiffs to easily locate and decipher the proprietary business records produced by Defendants. Defendants must explain what the documents show, as they have done in their brief. Defendants failed to provide, in answer to the interrogatory, an explanation of how the records were retained and organized so that Plaintiffs could easily review them and compile the information sought. If there is no information beyond the content reflected in the documents, Defendants must say so unambiguously in their answer. *In re Sulfuric Acid Antitrust Litigation*, 321 F.R.D. at 327.

Plaintiffs are not, as Defendants suggest, asking Defendants to aggregate the information---only to provide Plaintiffs with the identity of the documents they must review, and an explanation of how the documents are organized in order to facilitate that review. The motion is therefore granted.

Next, Plaintiffs object to the Wada Grower Defendants' answers to Interrogatories 1(b), 1(c), 3(c), and 3(d), asserting their answers were "cryptic." These subparts requested information concerning the acreage reduction allegedly undertaken by each Defendant pursuant to Cooperative-established acreage reduction programs, including the "Bid Buy-Down Program." The Wada Grower Defendants answered Interrogatory 1(b) by stating that Wada Growers "managed their acreage every year taking into account a number of different factors, including UPGI market information. The base acres set under the UPGI acreage recommendations allowed substantial flexibility and permitted acreage management to occur normally using best market information available from any source."

**MEMORANDUM DECISION AND ORDER - 12**

Plaintiffs seek an order compelling the Wada Growers and any other Anderson Defendant who participated in a Bid Buy-Down or other acreage reduction program to identify the impact of these acreage reduction programs on their potato acreage, and how much payment they received for participation in the programs. Defendants respond by arguing that their answer is unambiguous, and explain that the facts of the case are at odds with Plaintiffs' theory of the case. In other words, Defendants argue that the interrogatory asks for information that does not necessarily exist beyond Plaintiffs' theory driving the case.

If that is indeed the case, the Court cannot compel an answer if one does not exist. If Defendants deny that there was no acreage reduction program or bid buy-down program, however, they should unambiguously say so.

**E.**  *Potato Sales, Growing and Transactional Documents–Interrogatories 2 and 4*

Interrogatories 2 and 4 seek the identity of Defendants' potato purchasers, as well as information on an annual basis concerning quantities purchased and prices paid from each year from 2001 to the present. Specifically, Interrogatory 2 asks for the name and address of persons who purchased Potatoes; the amount sold in pounds to each purchaser; and the gross and net prices paid. In Interrogatory 4, Plaintiffs ask for the names and addresses of parties to and dates of each contract for the sale of Contract Potatoes; the amount in pounds; and the gross and net price terms.

Certain Wada Defendants, Pleasant Valley, and Wahlen responded by identifying database excerpts, which Plaintiffs are continuing to review. But others, including Snake

**MEMORANDUM DECISION AND ORDER - 13**

River, Funk, Cranney, the Wada Growers, Cornelison and Raybould directed Plaintiffs to their document production. Snake River identified business records located generally at SRPP 053097-137302; Funk identified business records located generally at FUNK 070274-087816;  and Cranney directed Plaintiffs to CRANNEY 069701-75948, and 76360-76454, as well as produced a chart indicating the acres and yield per year as well as the pounds and revenue per year. Plaintiffs also contend that Wada and Cranney produced paper records comprising various unique and idiosyncratic record-keeping and notations on them.

Again, while it was appropriate here for Defendants to direct Plaintiffs to responsive documents by Bates number, the Court finds lacking information similar to the exemplar provided in Defendants' responsive brief. Plaintiffs must be able to easily find the data contained within the documents responsive to the interrogatory. Without any explanation of how to do that, Defendants have failed to comply with Rule 33(d).

The motion to compel more complete responses to Interrogatories 2 and 4 is granted.

3.      **Offutt Defendants**

A.      *Meetings/Communications/Agreements–Interrogatories 9 and 10*

Plaintiffs requested in Interrogatory 9 that the Offutt Defendants identify meetings or communications between them and competitors, cooperatives, potato marketers or potato processors where certain topics were discussed, and to provide the date and location; persons who participated; subject matter discussed; action taken; and persons with knowledge; and Bates numbers of the documents evidencing the meeting or

**MEMORANDUM DECISION AND ORDER - 14**

communication.  In Interrogatory 10, Plaintiffs asked for the identification of each agreement, excluding transactional agreements for the sale or purchase of Fresh or Process Potatoes between them and competitors, cooperatives, potato marketers or potato processors relating to identified topics, and to provide the identity of persons with knowledge of the agreement; date, place, nature, and terms of the agreement; which officers, directors or employees were aware of the agreement; and the Bates ranges of the documents evidencing the agreements. Plaintiffs further limited the scope of the interrogatories to meetings, communications and agreements  regarding (1) the supply control mechanisms identified in Plaintiffs' Complaint or (2) any other efforts specifically aimed at impacting the supply or price of potatoes.

Offutt Defendants objected to both interrogatories on the grounds that they are overly broad, considering the scope of information requested and the expansive time period of January 2004 to the present---over 9 years. Offutt Defendants further explain that identification of such documents would require speculation on their part; therefore, they directed Plaintiffs generally to their document production.

Plaintiffs seek an order compelling a response in compliance with Rule 33(d), which Offutt Defendants argue is impossible given the broad scope of the interrogatory. Plaintiffs offered a limitation, which would have limited the scope of the meetings or agreements to those that discussed "(1) the supply control mechanisms identified in Plaintiffs Complaint or (2) any other efforts specifically aimed at impacting the supply or price of potatoes." Offutt Defendants object primarily to the limitation proposed in (2), because any number of Offutt's business dealings could "arguably to some degree be said

**MEMORANDUM DECISION AND ORDER - 15**

to 'impact' the supply or price of potatoes" given Offutt is in the business of growing and selling potatoes.

These interrogatories are essentially the same as Interrogatory 4 directed to the Anderson Defendants. The Anderson Defendants and Plaintiffs were able to substantially narrow the scope of the interrogatory using the two limitations proposed above, and further limiting the scope to "board and committee meetings." The Court concludes the parties should meet and confer further on this issue, given Plaintiffs apparently agreed with the same objection raised by the Anderson Defendants. Currently, "meetings" could be anything—even casual meetings in the hallway. Plaintiffs must further refine the scope of the request such that Offutt Defendants can direct Plaintiffs to a discrete universe of business records responsive to the request, as Plaintiffs have done with the Anderson Defendants. The motion is therefore denied.

### B.   *Potato Sales, Growing and Transactional Documents–Interrogatories 2 and 4*

As with the Anderson Defendants, Interrogatories 2 and 4 seek the identity of Offutt Defendants' potato purchasers, as well as information on an annual basis concerning quantities purchased and prices paid from each year from 2001 to the present. Interrogatory 2 asks for the name and address of any purchaser of potatoes; the amount of potatoes sold in pounds to each purchaser; and the gross and net prices paid for the potatoes. Interrogatory 4 sought the same information for any contracts for the sale of Contract Potatoes.

**MEMORANDUM DECISION AND ORDER - 16**

In response to Interrogatory 2, Offutt Defendants directed Plaintiffs to three attached excel spreadsheets and a zip file containing WFI inforums database for Winnemucca Farms, Inc. In response to Interrogatory 4, Offutt Defendants directed Plaintiffs to tables compiled in response to Interrogatory 3, for the crop years 2007 – 2013.

Plaintiffs argue the responses to both interrogatories are deficient because the responses include only sales information for potatoes grown at a single location, and do not include sales information relating to process potatoes sold for purposes other than dehydration, thereby excluding fresh and process potatoes. Plaintiffs seek an order compelling Offutt Defendants to provide sales information for all fresh or process potatoes sold from 2001 to the present.

Offutt Defendants argue that they provided the requested information for its fresh and dehydration sales, but not for its French fry potato sales, because Offutt understood from the meet and confer process that documents pertaining to sales to French fry processors were excluded from the scope of the requested production. In fact, Plaintiffs did not request information regarding French fry processor sales, but instead "reseve[d] the right to request information for non-dehydration processing facilities [i.e. French Fry Processors] in the future based on their review of documents produced by Offutt or other Defendants (for instance, if discovery indicates that fresh potatoes were diverted to non-dehydration processing facilities as a means of restricting supply)." Decl. of McGovern (Dkt 566-3.) Offutt Defendants state that its Crop Production Matrix Reports were

**MEMORANDUM DECISION AND ORDER - 17**

produced for 2004 through 2012, which detail the total acres planted, total potato acres planted, and quantity of potatoes produced for all of its farms. Decl. of Falk (Dkt. 566-4.)

The Court cannot make sense of the answers Offutt Defendants provided in response to Interrogatories 2 and 4. On the one hand, the Court agrees with Offutt Defendants that they do not have an obligation to answer the interrogatories as they relate to French fry processor sales, given it appears the parties agreed the earlier (and completed) document production excluded such information. Plaintiffs have not argued that French fry processor sales information is now relevant from its review of the documents produced.

But, it does not appear Offutt Defendants otherwise answered the interrogatories completely. The Court cannot discern if the Excel spreadsheets and zip file produced responsive to Interrogatory 2 contain the information sought. The Court was not given these files. Plaintiffs assert only one farm was included, while Offutt Defendants submitted a declaration that data for all of its farms was produced.

The Court cannot determine from the record before it if Offutt Defendants failed to respond to Interrogatory 2. But, Offutt Defendants indicate they produced information pertinent only for 2004 – 2012, and do not explain why they did not produce information from 2001 – 2003, which was requested in Interrogatory 2. Similarly, the tables compiled cover 2007 – 2013, but Offutt Defendants do not explain why the information was not compiled for 2001-2006. In that regard, the answers are insufficient. If there is no information for those years, Offutt Defendants should so state. Alternatively, if there are

discrete documents rather than compilations that would provide the missing information, Offutt Defendants are directed to comply with Rule 33(d) as the Court outlined above.

If the Court is unable to conclude with certainty that the Offutt Defendants answered Interrogatories 2 and 4 completely, then it is apparent why Plaintiffs filed their motion. Offutt Defendants must supplement their answers, excluding French fry processor sales.

## CONCLUSION

For the reasons explained above, Plaintiffs' motion to compel Defendants to comply with certain interrogatory requests is granted in part and denied in part. To summarize, the Anderson Defendants must comply with Rule 33(d) for all of the interrogatories at issue in Plaintiffs' Motion consisted with the Court's analysis. The Offutt Defendants' objection to Interrogatories 9 and 10 is sustained. The parties are directed to meet and confer to narrow the scope of the terms "meetings and agreements," as Plaintiffs were able to do so for the Anderson Defendants. The Offutt Defendants are required to supplement their answers to Interrogatories 2 and 4, excluding French fry processor sales data, so that it is readily apparent all of the information responsive to the interrogatory is identified.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Direct Purchaser Plaintiffs' Motion to Compel Interrogatory Answers (Dkt. 544) is **GRANTED IN PART AND DENIED IN PART**.

Dated: **January 31, 2014**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 20**