UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION** | Case No. 4:10-md-02186-BLW-CWD |
| THIS MATTER PERTAINS TO:<br><br>*Direct Purchaser Plaintiffs Action.* | **MEMORANDUM DECISION AND ORDER[1] RE MDL DKT. 539, DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL** |

## INTRODUCTION

Direct Purchaser Plaintiffs ("Plaintiffs") move the Court under Fed. R. Civ. P. 37 and Dist. Idaho L. Rule 7.1 to compel certain Defendants[2] to produce documents identified on their privilege logs. The Court has been involved with the parties' ongoing

---

[1] The Court issues a partial decision and order on the issue of waiver of privilege to facilitate discovery in this matter. The remainder of the Court's decision will be issued in a later memorandum decision and order.

[2] The Defendants to whom the motion is directed are: Driscoll Potatoes, Inc.; Blaine Larsen; Blaine Larsen Farms, Inc.; Albert T. Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada Family LLC; Pro Fresh LLC; Cedar Farms, Inc.; Snake River Plains Potatoes, Inc.; Raybould Brothers Farms LLC; United Potato Growers of Idaho, Inc.; United Potato Growers of America, Inc.; United II Potato Growers of Idaho, Inc.; R.D. Offutt Company; Ronald D. Offutt, Jr.; and Potandon LLC (collectively "Defendants"). However, there are four groups of Defendants to which the Court will refer. The Andersen Defendants to whom the Motion is directed are represented by attorney Steve Andersen, and include: Albert T. Wada; Wada Farms, Inc.; Wada Farms Potatoes, Inc.; Wada-Van Orden Potatoes, Inc.; Wada Farms Marketing Group, LLC; Wada Family LLC; Pro Fresh LLC; Cedar Farms, Inc.; Snake River Plains Potatoes, Inc.; Raybould Brothers Farms LLC; United Potato Growers of Idaho, Inc.; United Potato Growers of America, Inc.; and United II Potato Growers of Idaho, Inc. The Offutt Defendants, or as Plaintiffs refer to them, the RDO Defendants, are: R.D. Offutt Company and Ronald D. Offutt, Jr. The Court will refer to these Defendants as the Offutt Defendants. Then, there are the Orrick Defendants, represented by the firm Orrick Herrington & Sutcliffe, who include Blaine Larsen; Blaine Larsen Farms, Inc.; and Driscoll Potatoes, Inc. Finally, Potandon, LLC submitted its own response brief, and will be referred to as Potandon.

**MEMORANDUM DECISION AND ORDER - 1**

discovery disputes since August 31, 2012, and has conducted a series of status conferences and motion hearings with the parties in multiple attempts to resolve issues as they arose. (*See* Case Mgt. Order No. 4 MDL Dkt. 239).

Now, however, the parties require the Court's intervention in the form of Plaintiffs' latest motion, filed on December 11, 2013, per the Court's October 22, 2013 Order (as amended). (MDL Dkt. 486.) The Court instructed the parties to file one brief[3] of no more than 20 pages from each collectively represented group of parties to be filed in support of or in response to a party's motion to compel, and the parties did so. The Andersen Defendants submitted also a box of documents for in camera review, and the Court has had the opportunity to review them, along with the several thousand or so pages of privilege logs and other documents comprising the motion and the four responses thereto.

The Court does not believe additional briefing or a hearing would further aid it in understanding the issues in light of its involvement and familiarity gained throughout the parties' ongoing discovery disputes. Therefore, the Motion will be decided on the record without a hearing. Further, this will serve to avoid delay, given the amended fact discovery completion deadline of July 3, 2014. (MDL Dkt. 588.)

---

[3] Several Defendants chastised Plaintiffs for filing only one brief, criticizing Plaintiffs for their lack of specificity and "indiscriminate lumping" of all parties together. However, Plaintiffs complied with Court's Order, and the Court was able to discern the parties' arguments upon review of the privilege logs submitted with Plaintiffs' motion. The Court appreciates Plaintiffs' brevity, although it cannot say the same for the thousands of pages of documents that were not highlighted in any manner that the Court was required to sift through to resolve the pending motion.

**MEMORANDUM DECISION AND ORDER - 2**

## BACKGROUND

Plaintiffs' motion raises several substantive legal issues. Each issue is directed to an individual defendant, or a group of defendants. The motion is globally directed at Defendants' privilege logs, with Plaintiffs seeking production of documents withheld. Plaintiffs assert that the attorney-client privilege has been waived as to documents set forth in Appendix A to Plaintiffs' Motion. (MDL Dkt. 540-1.) Plaintiffs assert several arguments as to why certain documents are no longer subject to protection because of privilege, including waiver of the attorney-client privilege by stipulation; assertion of the affirmative defense of reliance upon advice of counsel; disclosure of documents to third parties; and reliance upon an erroneous interpretation of the association and common interest privilege. The Court will discuss the factual context applicable to each issue in more detail below.

## DISCUSSION

The Federal Rules of Civil Procedure creates a "broad right of discovery" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1424 (9th Cir. 1995) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). But the right of a party to obtain discovery is not unlimited. A party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Evidence is relevant if the evidence has any tendency to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401. Although parties are not given unfettered license to obtain all information, no matter how tangentially relevant it might be, Rule 26(b)(1) is construed broadly to "encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." *Oppenheimer Fund, Ind. v. Sanders*, 437 U.S. 340, 350 (1978).

If a responding party asserts an evidentiary privilege, that party has the burden to demonstrate the privilege applies to the information in question. *Tornay v. U.S.* 840 F.2d 1424, 1426 (9th Cir. 1988). "When a party withholds information otherwise discoverable by claiming that the information is privileged… the party must …describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

The attorney-client privilege is designed to protect the forced disclosure in a judicial proceeding of certain confidential communications between a client and a lawyer. *U.S. v. Ruehle*, 583 F.3d 600, 606 n.6 (9th Cir. 2009). The privilege protects confidential disclosures made by a client to an attorney to obtain legal advice, and the attorney's advice in response to such disclosures. *Id.* (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir.1997)). But, the fact a person is a lawyer does not make all communications with that person privileged. *Id.* (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir.2002)). Because assertion of the privilege "impedes full and free discovery of the

**MEMORANDUM DECISION AND ORDER - 4**

truth, the attorney-client privilege is strictly construed." *Id.* Accordingly, "it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. U.S.* 425 U.S. 391, 403 (1976).

To establish a communication is protected by the attorney-client privilege, a party must prove each element of an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir.1992).

**1.      Waiver of the Privilege – Andersen and Orrick Defendants**

Plaintiffs contend the Andersen and Orrick Defendants are withholding documents for which they agreed to waive the privilege because they assert an affirmative defense of a reasonable good faith belief in the legality of their conduct based upon advice of counsel. Andersen and Orrick Defendants assert their conduct was permissible under federal antitrust law or fell within the scope of the Capper-Volstead Act, or that they had a good faith belief their conduct was permissible based upon counsel's advice.

The Capper-Volstead Act enumerates an exclusive list of collective conduct in which eligible associations may engage without risk of antitrust liability, which list includes acting together in collectively processing, preparing for market, handling, and marketing products grown or produced by their farmer-members. *U.S. v. Borden Co.*, 308 U.S. 188, 204 (1939). Cooperatives may have "marketing agencies in common," and they may make "the necessary contracts and agreements to effect such purposes." *Id.*

**MEMORANDUM DECISION AND ORDER - 5**

But, the right of the agricultural producers to unite in preparing for market and in marketing their products cannot be deemed to authorize any combination or conspiracy with other persons in restraint of trade that the producers my see fit to devise. *Id.* Agreements among producers to restrict production do not fall within the scope of the exemption. *In re Fresh and Process Potatoes Antitrust Litig.*, 834 F.Supp. 2d 1141 (D. Idaho 2011). Further, otherwise exempt cooperatives may not conspire with non-exempt entities to restrain trade. *See Borden*, 308 U.S. at 205 (conspiracy with distributors to control price and supply).

Andersen and Orrick Defendants assert the defense that Plaintiffs' claims are barred because they acted in good faith with intent to comply with the law and, to the extent illegal conduct occurred, they acted with the reasonable belief that the conduct alleged in the Second Amended Complaint was lawful under Section 6 of the Clayton Act, the Capper-Volstead Act, the Cooperative Marketing Act, and the Agricultural Marketing Act. But they claim that the good faith defense is separate and distinct from the defense that Capper-Volstead actually immunized their conduct. In other words, they claim the good faith defense applies only if the Court finds their acts were not protected under Capper-Volstead.

These Defendants allege that the only information pertinent to the good faith defense is "information that has some bearing on the Defendants' belief in the legality of the conduct that plaintiffs challenge in the lawsuit." Larson Brief in Opp. At 5 (Dkt. 569.) Thus, they assert that communications going to the fact of immunity are irrelevant to the defense, and also what the defendants thought about the legality of their conduct under

**MEMORANDUM DECISION AND ORDER - 6**

other laws similarly is irrelevant, as is their belief about the applicability of Capper-Volstead immunity to other conduct not challenged by Plaintiffs in this litigation. *Id.* Finally, these Defendants argue that only information conveyed to Defendants could influence their state of mind on these issues, so the waiver extends only to communications sent to or seen by them. *Id.* at 6.[4]

Second, these Defendants assert that the waiver they crafted was "narrowly tailored" to exclude documents merely relating to compliance with Capper-Volstead. The Andersen Defendants explain that the waiver was "carefully negotiated" and its "precise language specifically" crafted to avoid the argument Plaintiffs raise in their motion to compel. Thus, they contend only those documents that involve legal advice communicated to the Defendants, relates to Capper-Volstead, <u>and</u> involves conduct that Plaintiffs claim is <u>not</u> exempt under Capper-Volstead must be produced under the terms of the waiver. Defendants therefore assert, for example, that documents relating to the structure of marketing agreements, or how compensation to potato growers was calculated, are not within the scope of the waiver because such documents do not meet all three of the above criteria.

Plaintiffs contend that the legal advice regarding compliance with the Act will span a wide range of topics implicitly related to the exemption, and should be produced under the terms of the parties' waiver. For example, Plaintiffs argue that communications related to the formation, incorporation, bylaws, membership agreements, contracts and

---

[4] The Andersen Defendants rely upon the arguments asserted by the Orrick Defendants and referred to those arguments in their brief. Andersen Defendants' Response Brief at 7 (Dkt. 572.)

**MEMORANDUM DECISION AND ORDER - 7**

memoranda of understanding with members and non-members; the operating structure of UPGI, UPGA and United II; advice or communications that relate to the nature, participants in, and specific programmatic elements of, the supply management and price-fixing schemes; protocols for conducting meetings, such as who can participate in them and what may be discussed; and the relationships and agreements (including agency and consultancy agreements) of the co-ops and their members with non-members and non-producer packers, processors, marketers and other non-producers are all relevant, and the privilege was waived with respect to those types of documents.

Turning to the waiver language, the Court finds it was not so carefully drafted as these Defendants argue, and does encompass the types of documents Plaintiffs describe. Andersen and Orrick Defendants signed the following waiver agreeing to produce privileged documents as follows: "All documents reflecting communications with counsel and/or relating to advice from counsel regarding defendant's belief that the conduct alleged in the Direct Purchaser Plaintiffs' Second Amended Class Action Complaint." Stipulation at 1 (Dkt. 494.)[5] The Court has previously commented on the sloppy and careless use of the phrase, "and/or," and expressed that it was not impressed with a similar argument. *See Blue Cross of Idaho Health Serv., Inc. v. Atlantic Mut. Ins.*

---

[5] Although the Court approved the parties' waiver, it did so via docket entry order and without a hearing or other inquiry. (Dkt. 500).

**MEMORANDUM DECISION AND ORDER - 8**

*Co.,* No. 1:09–CV–246–CWD, 2001 WL 162283 *14 (D. Idaho Jan. 19, 2011).[6]

In this case, the meaning of the phrase "and/or" is consistent with the following interpretations:

1) All documents regarding communications with counsel <u>and</u> relating to advice from counsel regarding the defense are subject to the privilege waiver; or
2) All documents reflecting communications with counsel <u>or</u> relating to the advice from counsel regarding the defense are subject to the privilege waiver; or
3) All documents <u>either</u> reflecting communications with counsel <u>or</u> relating to the advice from counsel regarding the defense are subject to the privilege waiver.

Number two and three, above, both support Plaintiffs' interpretation that any documents containing communications <u>relating to</u> advice from counsel regarding Defendants' belief that the conduct alleged was lawful are subject to disclosure because of the waiver. Further, the use of "and/or" interjects a blanket waiver. In number three, <u>all</u> documents merely reflecting communications with counsel are subject to the waiver of the privilege. The second phrase after the word or is a standalone phrase, and grammatically, the phrase "regarding the defense" modifies "relating to the advice from counsel." In other words,

---

[6] Footnote 14 of the *Blue Cross* decision is particularly apropos here in light of these Defendants' claim of their artful drafting, and is quoted in its entirety:

> The use of the ambiguous phrase "and/or" has been "frequently condemned as improper and confusing," and at least one court has construed the phrase against the drafter. *See Newlon v. Newlon*, 310 Ky. 737, 220 S.W. 2d 961, 963 (Ky.1949). *See also Moran v. Shern*, 60 Wis.2d 39, 208 N.W. 2d 348, 351 (Wis.1973): "'and/or,' that befuddling, nameless thing, that Janus-faced verbal monstrosity, neither word nor phrase, the child of a brain of someone too lazy or too dull to express his precise meaning, or too dull to know what he did mean, now commonly used by lawyers in drafting legal documents, through carelessness or ignorance or as a cunning device to conceal rather than express meaning with view to furthering the interests of their clients."; *Raine v. Drasin*, 621 S.W. 2d 895, 905 (Ky.1981): "error is achieved by use of the much condemned conjunctive-disjunctive crutch of sloppy thinkers, and/or."

**MEMORANDUM DECISION AND ORDER - 9**

according to the imprecise language, Defendants effected a waiver of all documents reflecting communications with counsel.

Second, the waiver does not apply to protect from disclosure other privileged documents, and the Court finds they should be produced. The Court illustrates the issue with an analogy to a donut with sprinkles.[7] There is a universe of documents—the donut—being withheld on the basis of the attorney-client privilege. The waiver cut out the middle of the donut—the donut hole—and those documents have, according to these Defendants, been produced. Now, Defendants seek to protect the rest of the donut from consumption. Contrary to Defendants' assertion, the waiver did not affect the greater universe of documents withheld. It was silent as to those documents. Nor is the waiver being interpreted "too narrowly," as Plaintiffs argue. Rather, the waiver merely classified certain attorney-client privileged documents (the donut hole) as subject to a limited waiver of the privilege. But, because of the defense of reliance upon the advice of counsel, Defendants may not exclude the rest of the attorney-client privileged documents (the donut) from production. All that should remain on Defendants' plate are the sprinkles that fell off the donut—privileged communications not relevant to the parties' claims or defenses.

As support for its conclusion, the Court relies upon the analysis in *Aspex Eyeware, Inc., v. E'lite Optik, Inc.*, 276 F.Supp. 2d 1084 (D. Nev. 2003). In that case, an accused patent infringer relied upon the defense of advice of counsel. The court held that the

---

[7] Not to make light of the issue, but the donut analogy was particularly helpful in analyzing the effect of the waiver and illustrating the result.

**MEMORANDUM DECISION AND ORDER - 10**

defendant, "having *waived* the privilege by asserting the advice of counsel defense, must produce not only attorney-client communications, but also *all documents relied upon or considered by counsel in rendering the opinions relied upon*." 276 F.Supp. 2d at 1093. (emphasis added). Otherwise, a litigant may use the attorney-client privilege as a shield, and deprive the opposing party of the opportunity to test the legitimacy of the defendant's claim. *Id.* at 1092.

> A contrary result ignores the potential for litigation abuses, and erects too much of an impediment to the truth seeking process. Counsel for the opposing party should not be able to act as the gatekeeper to determine what information their adversary is entitled to have. … [P]arties should not be able to selectively disclose privileged communications they consider helpful while claiming privilege on damaging communications relating to the same subject.

*Id.* at 193. (internal citations omitted).

The court in *Aspex* cited and discussed other cases supporting the view that reliance upon the affirmative defense of advice of counsel waives the attorney client privilege. For instance, the court quoted *Hoover Univ., Inc. v. Graham Packaging Corp.*, 44 USPQ2nd 1596, 1598 1996 WL 907737 (C.D. Cal. 1996), which observed that a narrowly circumscribed waiver "creates a danger of a defendant utilizing favorable opinion letters while allowing unfavorable evidence to languish in their attorney's files." *Aspex Eyeware, Inc.*, 276 F.Supp.2d at 1093. Even if negative evidence contained in the attorney's files may not reflect upon the client's state of mind, and may not be admissible as evidence, the evidence may still lead to discovery of relevant and admissible evidence. *Id.* The plaintiff has a "right to know about such evidence in order to fully question defendants and

**MEMORANDUM DECISION AND ORDER - 11**

their counsel regarding that evidence, disclosure to the client, and other related issues." *Id.*

There are numerous other courts holding that the assertion of advice of counsel as a substantive defense renders the attorney-client privilege waived. *Trans world Airlines, Inc. v. Hughes*, 332 F.2d 602, 615 (2nd Cir. 1964), *cert. denied*, 380 U.S. 248 (1965) (attorney client privilege waived where the advice of counsel defense was raised in an antitrust case and attorney had submitted an affidavit to the Civil Aeronautics Board); *Tsai-Son Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) (executive deponents claiming during deposition that they relied upon advice of counsel to substantiate good faith defense to violation of federal law waived attorney-client privilege, and opposing counsel could depose the attorneys on whose advice deponents testified they relied); *Panter v. Marshall Field & Co.*, 80 F.R.D. 718 (N.D. Ill. 1978) (in an antitrust case, court held that defendant's reliance upon advice of counsel defense waived the attorney-client privilege with respect to all communications, written or oral, to or from counsel concerning the merger transaction for which counsel's advice was sought, and plaintiff was entitled to discovery of all relevant documents considered in forming counsel's opinion). Therefore, the privilege is waived with respect to all documents and communications touching upon these Defendants' organization under the antitrust laws, and specifically Capper-Volstead, as well as the greater universe of communications concerning Defendants' conduct for which Defendants sought counsel's advice.

**MEMORANDUM DECISION AND ORDER - 12**

To hold otherwise would, in this Court's view, deprive Plaintiffs of the broader context in which the advice was given. For example, perhaps these Defendants based their decision to organize the cooperatives in the way they did because favorable securities or income tax benefits could be realized, and perhaps they knew about some uncertainty with regard to Capper-Volstead. If counsel knew of that uncertainty, and either failed to or did communicate it to Defendants, Plaintiffs should be able to probe into the basis for the advice or lack thereof.

It would be patently unfair for a party to assert that they relied upon the advice of counsel, yet deprive the opponent of the opportunity to understand why the advice was given, what other alternatives were looked at, why certain advice was rejected, and how the advice was interrelated to other business decisions. *See Gorzengno v. Magquire*, 62 F.R.D. 617, 621 (S.D.N.Y. 1973) ("It would be manifestly unjust to allow the application to be introduced in a vacuum, totally immunized from contextual analysis."). Plaintiffs are entitled to understand and ask questions about the validity of counsel's advice, and Defendants may not use the assertion of the privilege both "as a sword and a shield." *Id.* The donut must be relinquished, and there should be no crumbs left on the plate other than the few sprinkles that fall off.

The Court's conclusion is buttressed by the content of the documents the Andersen Defendants shared with the Court in camera.[8] The Andersen Defendants are correct that the documents submitted for in camera review, and that pertain to this issue, are not necessarily snared by the waiver language. They may not relate to Defendants' good faith belief that their alleged conduct was lawful. But they belong to the universe of documents comprising the donut. Without these documents, Plaintiffs will be hard pressed to understand the underlying motivation behind counsel's advice, and why Defendants made certain decisions.

Plaintiffs' motion to compel documents from the Andersen and Orrick Defendants set forth in Appendix A, category 1, (Dkt. 540-1), will be granted. The Court did not review Appendix A, category 1, for any overlapping claims. But if documents identified in category 1 of Appendix A are claimed as privileged for additional reasons and appear in other categories of Appendix A, the Court's order to compel production of documents in category 1 overrides any other claim of privilege.

---

[8] Although the Orrick Defendants did not provide the documents they continue to withhold for in camera review, they gave examples in their brief. Orrick Defendants continue to withhold marketing agreements between growers or sheds associated with local cooperatives; internal documents about the formation of a Driscoll family cooperative; documents containing legal advice relating to how Driscoll calculates compensation to potato growers; and documents about the termination of membership in certain cooperatives. Brief at 10-11 (Dkt. 569.) Orrick Defendants claim these types of documents do not reflect upon what they believed about the applicability of Capper-Volstead, although they concede that some documents relate to Plaintiffs' claims. These documents must be produced if Orrick Defendants rely upon the advice of counsel defense. They provide context to Defendants' conduct, organization, structure, and motives. Further, Rule 26(b)(1) indicates parties may obtain discovery regarding matters "relevant to any party's claim or defense." Thus, Orrick Defendants' arguments that they need not produce privileged documents related to Plaintiffs' claims is without merit if they intend to assert the advice of counsel defense. Plaintiffs are entitled to the documents given the reliance upon the defense of advice of counsel. And, if the documents the Court was not privileged to see are anything like the Andersen Defendants' documents it did review, they should be produced.

**MEMORANDUM DECISION AND ORDER - 14**

Andersen and Orrick Defendants have fourteen (14) days to review and produce the documents, update their respective privilege logs, and determine the extremely limited set of documents, if any, to be withheld on the basis of the Court's order. If they cannot do so, and further court intervention is necessary, the Court will order all documents to be produced. Excluded, however, from the scope of the Court's order are any attorney-client privileged documents created on or after June 18, 2010, the date this case was filed.

## 2. Waiver of the Privilege by Asserting Affirmative Defenses – Offutt Defendants

Plaintiffs argue that Offutt Defendants have waived the attorney-client privilege by asserting the same affirmative defense of reliance on advice of counsel as the Andersen and Orrick Defendants. The documents Plaintiffs identified as falling within this category on Offutt's privilege log are set forth in category 2 of Appendix A. (Dkt. 540-1.) The Offutt Defendants did not sign the waiver stipulation. But Plaintiffs assert that an implied waiver of the attorney-client privilege occurred.

Offutt Defendants explained in their response brief that they are not relying upon the advice of counsel, but rather upon publicly made statements, in forming their belief that the cooperatives were qualified as cooperative organizations protected by Capper-Volstead. *See* Am. Answer at 55 (Dkt. 436); Ans. at 49-50 (Dkt. 255). Offutt Defendants were not members of the growing cooperatives, but transacted business with them. Offutt Defendants explain that their liability is premised upon the alleged conspiracy that Plaintiffs claim existed between the cooperative defendants and Offutt Defendants. They

**MEMORANDUM DECISION AND ORDER - 15**

assert in their answer, as amended, that they did not knowingly or consciously participate in a scheme designed to achieve an unlawful objective.

Plaintiffs rely upon the "at-issue" doctrine. The "at-issue" waiver theory has been recognized by courts in the Ninth Circuit. *Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326-26 (9th Cir. 1995). An implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense. *Home Indem. Co.*, 43 F.3d at 1326 (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975)). But the "at-issue" test applies only if the advice of counsel is truly at issue vis-à-vis the defendant's affirmative defenses.

Offutt Defendants explain in their memorandum that they have not, will not, and need not rely upon communications with counsel to prove their affirmative defenses. The Court has no reason to question Offutt Defendants' assertions. Because Offutt Defendants have not put the withheld documents at issue, the Court will not order production of the withheld documents.

However, based upon the reasoning above, if Offutt Defendants refer to or attempt to put into evidence any suggestion that Offutt Defendants sought, obtained or relied upon counsel's advice in determining whether to conduct business with the cooperative organizations, Offutt Defendants waive the privilege. *Lexington Ins. Co. v. Swanson*, No. C05-1614MJP, 2007 WL 2121730 *4 (W.D. Wash. July 24, 2007). Even if Offutt Defendants do not reveal the advice, if there is any suggestion that Offutt Defendants

**MEMORANDUM DECISION AND ORDER - 16**

sought, obtained or relied upon the advice of counsel, the privilege is waived. To hold otherwise would be tantamount to allowing Offutt Defendants to use the privilege both as a sword and a shield. Until the Court has reason to question Offutt Defendants' assertions that they relied upon publically available documents, and that they at no time relied upon or sought counsel's advice, then Plaintiffs' motion will be denied as it pertains to Offutt Defendants and the documents withheld in category 2 of Appendix A. (Dkt. 540-1.)

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Direct Purchaser Plaintiffs' Motion to Compel (Dkt. 539) is **GRANTED IN PART AND DENIED IN PART**.

Dated: **April 11, 2014**

Honorable Candy W. Dale
United States Magistrate Judge